UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| EDGAR REYNA, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | |
| § | Civil Action No. 3:23-CV-1005-X |
| EPIROC DRILLING SOLUTIONS, § | |
| LLC, § | |
| § | |
| *Defendant*. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Epiroc Drilling Solutions, LLC's motion to dismiss. (Doc. 22). Having reviewed the motion, the applicable law, and Plaintiff Edgar Reyna's amended complaint, the Court concludes that Reyna has plausibly alleged claims for national origin discrimination, hostile work environment, disability discrimination, and retaliation. Therefore, the Court **DENIES** Epiroc's motion to dismiss. (Doc. 22).

### I. Background

This is an alleged employment discrimination case. Epiroc has employed Plaintiff Edgar Reyna, a Hispanic male, since 2017.[1] Reyna filed the present action against Epiroc for national origin discrimination, disability discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, the Texas Commission on Human Rights Act ("TCHRA"), 42 U.S.C § 1981, and the Americans

---

[1] Doc. 21 at ¶ 9.

1

with Disabilities Act ("ADA"). In support of his claims, Reyna makes the following allegations. Beginning in 2018, Reyna's supervisor, Jackie Gudgel, singled Reyna out for getting additional tickets for a company picnic and informed Reyna that things would get worse if he reported the incident to human resources.[2] Reyna went to HR.[3] Gudgel subsequently denied Reyna training opportunities, restricted his job duties, restricted Reyna from walking in certain areas at his job location, and denied Reyna promotions in favor of other employees whom Reyna had trained.[4] Reyna was also watched and filmed on the job.[5] In 2022, Reyna injured his finger on the job and was placed on light duty.[6] The injury limited his ability to lift, bend, and work within the role of an assembler, and Reyna continues to suffer permanent loss of his finger, which will never go away.[7] Gudgel insisted Reyna work on regular duty despite being placed on light duty,[8] and another employee, Tim Choate, aggressively demanded that Reyna work on regular duty.[9] Then, Reyna's lead man, Peter Chung, told Reyna he could no longer mentor two specific employees, and delegated the mentor role to a white employee instead.[10]

---

[2] *Id.* at ¶ 10–11.
[3] *Id. at* ¶ 11.
[4] *Id. at* ¶ 12.
[5] *Id.* at ¶ 13.
[6] *Id.* at ¶ 14.
[7] *Id.* at ¶ 49.
[8] *Id.* at ¶ 15.
[9] *Id.* at ¶ 17.
[10] *Id.* at ¶ 18.

Soon after, Gudgel told Reyna he should clean his things up as he was no longer welcome on the production floor, allowed to be on the rigs, or allowed to mentor other employees.[11] After this, Reyna was taken to the emergency room, and while there, former coworkers texted Reyna that Gudgel instructed them to not help any employees, singling out Reyna, if their badge doesn't work.[12] Epiroc's vice president of operations, Brett Border, informed Reyna that his badge was deactivated and instructed Reyna to stop making complaints about his company.[13] A few days later, Reyna was brought back as an employee, but Gudgel demoted him from mentoring to cleaning beams, doors, shelves, and tables, despite his injury, and Gudgel mocked Reyna's new work conditions.[14]

The following month, Reyna's badge was deactivated again after an HR rep informed Reyna that Epiroc could no longer accommodate his restrictions and placed Reyna on FMLA leave.[15] HR subsequently contacted Reyna to return to work on a project within his restrictions but continued to threaten Reyna's worker's compensation benefits and informed him he needed a medical evaluation to return to work.[16] After a few months, while working, HR deactivated Reyna's badge and informed him they could no longer accommodate his restrictions.[17] Reyna filed an

---

[11] *Id.* at ¶ 19.
[12] *Id.* at ¶ 20.
[13] *Id.* at ¶ 21.
[14] *Id.* at ¶ 22.
[15] *Id.* at ¶ 23.
[16] *Id.* at ¶ 24–25.
[17] *Id.* at ¶ 26.

HR complaint, and Epiroc subsequently asked him to return with no restrictions.[18] One day, Gudgel yelled at Reyna for taking his safety glasses off, but did not mention the misuse of safety equipment by other, white employees.[19] Gudgel also told Reyna to be sure to not use his injured finger, falsely accused Reyna of stealing, and denied Reyna opportunities for overtime work but granted overtime to less experienced employees.[20] HR ignored Reyna when he attempted to follow up about his ongoing discrimination complaints.[21] Another lead man, Thang Nguyen, confronted Reyna for reporting to HR.[22] Then, Chung required Reyna and two trainees to complete a task normally done by six employees, and after Reyna reported the incident to HR, Chung sidestepped standard procedure in signing Reyna's time off request and stated he "didn't want his signature out of the streets."[23] Reyna continued to make discrimination reports to HR.[24]

Reyna brought suit in state court and Epiroc removed the action to this Court.[25] Epiroc then filed the present motion to dismiss for failure to state a claim.[26]

---

[18] *Id.* at ¶ 27.

[19] *Id.* at ¶ 28.

[20] *Id.* at ¶ 30–31, 33.

[21] *Id.* at ¶ 29.

[22] *Id.* at ¶ 33.

[23] *Id.* at ¶ 34–35.

[24] *Id.* at ¶ 36.

[25] Doc. 1.

[26] Doc. 22.

## II. Legal Standard

Federal Rule of Civil Procedure 8 requires a pleading to state "a short and plain statement of the claim showing that the pleader is entitled to relief."[27] The pleading standard does not require detailed factual allegations, but "[t]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice."[28] For a complaint to survive a motion to dismiss under Rule 12(b)(6), it must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[29] A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[30] For purposes of a motion to dismiss, courts must accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff.[31] "In other words, a motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's rights to

---

[27] Fed. R. Civ. P. 8(a)(2).

[28] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[29] *Id.*

[30] *Id.*

[31] *Muhammad v. Dallas Cnty. Cmty. Supervision & Corrs. Dep't*, 479 F.3d 377, 379 (5th Cir. 2007).

relief based upon those facts."[32]  "[D]istrict courts must [then] examine the complaint to determine whether the allegations provide relief on any possible theory."[33]

### III. Analysis

Epiroc moves to dismiss each of Reyna's claims.  The Court addresses each in turn.

### A. National Origin Discrimination

Under Title VII,[34] it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[35]  At the motion to dismiss stage, "there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff *because of* [his] protected status."[36]  "[A]lthough a plaintiff does not have to submit evidence to establish a prima facie case of discrimination under [the] *McDonnell Douglas* [standard] at this

---

[32] *Ramming v. U.S.*, 281 F.3d 158, 161–62 (5th Cir. 2001).

[33] *Id.* at 162.

[34] Reyna brings his discrimination claim under Title VII, Section 1981, and the TCHRA. When used as parallel causes of action, Title VII and Section 1981 require the same proof to establish liability. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999). Likewise, the law governing claims under the TCHRA and Title VII is identical. *Id.* Therefore, the Court's Title VII analysis also applies to Reyna's national origin discrimination claim brought under Section 1981 and TCHRA.

[35] 42 U.S.C. § 2000e-2(a)(1).

[36] *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 599–600 (5th Cir. 2021); *see Owens v. Circassia Pharmaceuticals Inc.*, 33 F.4th 814, 835 n.18 (5th Cir. 2022) (noting that Title VII discrimination claims are parallel under Title VII and Section 1981 and therefore require proof of the same elements).

stage, he must plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible."[37]  And it can be helpful to reference the *McDonnell Douglas* framework to determine whether a plaintiff has plausibly alleged the ultimate elements of his claim.[38]

First, Reyna alleges that he was demoted from mentorship roles to janitorial duties, denied opportunities for overtime work, and placed on leave or denied access to the workplace on multiple occasions.  The Fifth Circuit recently explained that adverse employment actions are not limited to ultimate employment decisions; rather, an adverse employment action need only affect a term, condition, or privilege of employment.[39]  But of course, "Title VII does not permit liability for de minimus workplace trifles."[40]  Adverse actions are material, objective, or tangible.[41]  The question here then is whether Reyna's allegations support the conclusion that he suffered an adverse employment action or whether they are de minimus workplace trifles instead.  Inferior responsibilities, lack of overtime opportunity, and removal from job duties, even for short periods of time, are all material and tangible financial losses or significant losses of responsibility.  Therefore, accepting Reyna's well-

---

[37] *Olivarez*, 997 F.3d at 600 (cleaned up).

[38] *Id.*

[39] *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 506 (5th Cir. 2023).

[40] *Id.* at 505; The Court left for another day the determination of the precise level of workplace harm that a plaintiff must allege and noted that the Supreme Court appears poised to address it.  *Id.* at 505 n.66.

[41] *Id.* at 504.

7

pleaded allegations as true, and viewing it in the light most favorable to him, he adequately alleged that he suffered an adverse employment action.

Second, whether Reyna has alleged that these actions were taken "because of" his protected status is a closer call. Reyna alleges that Epiroc discriminated against him under Title VII because of his Hispanic national origin. His allegations include Gudgel's stray remarks about Reyna's family's size, demotions that resulted in Reyna being replaced by a white employee, and safety policies that Gudgel enforced more harshly on Reyna than on white employees. In *Cicalese*, the Fifth Circuit concluded that allegations of derogatory remarks about the plaintiffs' protected class, combined with demotions, restrictions in job duties, and demeaning comments, were sufficient to survive the motion to dismiss.[42] Reyna's allegations are very similar to those in *Cicalese*, and therefore, Reyna has sufficiently alleged that Epiroc took adverse action against him because of his Hispanic national origin.

Accordingly, the Court **DENIES** the motion to dismiss Reyna's national origin discrimination claim under Title VII, Section 1981, and the TCHRA.

## B. Hostile Work Environment

Reyna alleges that Epiroc's conduct was severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive. The Court concludes that Reyna has plausibly alleged a hostile work environment claim. A hostile work environment claim exists when all the circumstances indicate that "the workplace is permeated with discriminatory

---

[42] *See Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 765, 768 (5th Cir. 2019).

intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[43] In analyzing a hostile work environment claim, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[44]

Here, Reyna alleges that over a nearly four year span, on multiple occasions, Epiroc has (1) restricted his job duties, (2) removed him as an employee and deactivated his badge, (3) restricted where he can go inside his job location, (4) demoted him to janitorial duties, (5) forced him to work regular duty despite having a workplace injury that prevented him from doing so, (5) demeaned him, (6) made flippant, derogatory remarks about his impairment, (7) falsely accused him of theft, (8) confronted him for reporting to HR, (9) tasked him with unrealistic assignments, (10) denied Reyna training opportunities, overtime work, and promotions, and (11) filmed him on the job. Taking the allegations as true, they indicate that Epiroc has subjected Reyna to a sufficiently severe, abusive working environment. Being removed from the job, denied access, and demoted all unreasonably interfere with Reyna's work performance by preventing him from working or having responsibility that is on par with his credentials. Likewise, forcing Reyna to work while injured, and unaccommodated, also alters work performance

---

[43] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002).

[44] *Id.*

and creates an abusive environment. And in further support, Reyna alleges that multiple superiors have demeaned him, made derogatory comments about either his family or his impairment, and confronted him for reporting these instances to HR or threatened him about going to HR. These kinds of instances are not only humiliating, but they are threatening and could tend to prevent employees from engaging in protected activity. The circumstances, in total, support the Court's conclusion that Reyna has plausibly alleged a hostile work environment claim.

Accordingly, the Court **DENIES** the motion to dismiss Reyna's hostile work environment claim under Title VII, Section 1981, and the TCHRA.

### C. Disability Discrimination

Reyna also brings a disability discrimination claim under the ADA and the TCHRA. The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of a disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[45] "Under this framework, an employee must show: (1) he has a disability, (2) he was qualified for the job, and (3) he was subject to an adverse employment decision on account of his disability."[46] A qualifying disability is an impairment that substantially limits a major life activity.[47] Major life activities include functions such as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing,

---

[45] 42 U.S.C. § 12112(a).

[46] *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 479 (5th Cir. 2016) (cleaned up).

[47] Tex. Lab. Code § 21.002(6).

lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."[48] With regard to the activity of working, "the inability to perform one aspect of a job while retaining the ability to perform the work in general does not amount to substantial limitation of the activity of working."[49] Instead, the plaintiff must be "restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes[.]"[50]

Reyna alleges that injury to his finger limited his ability to lift, bend, and work within the role of an assembler, and he continues to suffer permanent loss of his finger, which will never go away. In *Dutcher*, the Fifth Circuit first considered whether the plaintiff's impairment substantially limited a major life activity other than working.[51] Here, viewing the complaint in the light most favorable to Reyna, he alleges that his finger impairment limits his ability to lift, bend, and work. Although his ability to work within the role of an assembler alone may be insufficient to establish a qualifying disability under the ADA, Reyna alleges that the injury impairs his ability to perform at least one additional, independent major life activity contemplated by the ADA: lifting. Thus, the Court concludes that Reyna plausibly alleged that his finger impairment limits a major life activity, and therefore is a qualifying disability under the ADA.

---

[48] 29 C.F.R. § 1630.2(i).

[49] *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727 (5th Cir. 1995).

[50] *Id.*

[51] *Id.* at 726.

Second, Reyna sufficiently alleges that he is qualified for his position. A qualified employee must either (1) perform the essential functions of the job despite his disability, or (2) a reasonable accommodation would enable him to perform the essential functions of his job.[52] Reyna's complaint alleges that he was qualified for his position based on his years of experience and responsibility to train other employees. He also alleges that he could have continued working with accommodations of light duty and mentoring. Thus, Reyna has plausibly alleged that he was qualified for his position.

Finally, Reyna alleges that after he injured his finger at work, he was placed on light duty. But despite placed on light duty, Epiroc continued to make him work regular duty, withdrew his accommodations multiple times, placed him on FMLA leave, deactivated his badge, demoted him, and denied him training, mentoring and overtime opportunities. Additionally, Reyna alleges that his supervisor made derogatory, flippant comments about his injury and ability to perform tasks. Thus, Reyna has plausibility alleged that he suffered adverse employment actions on account of his disability.

### D. Failure-to-Accommodate

Reyna also alleges that Epiroc failed to accommodate his disability. An ADA discrimination claim brought under a failure-to-accommodate theory requires a plaintiff to show: (1) he is a qualified individual with a disability, (2) the disability

---

[52] *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 592 (5th Cir. 2016).

12

and its consequential limitations were "known" by the covered employer, and (3) the employer failed to make "reasonable accommodations" for such known limitations.[53]

First, for the reasons stated above, the Court concludes that Reyna plausibly alleged that he is a qualified individual with a disability. Second, Reyna plausibly alleged that his disability and limitations were known to Epiroc. The injury to his finger occurred at work and he was placed on light duty as a result, thereby indicating that Epiroc knew of the injury and knew it limited Reyna's ability to work. Finally, Reyna plausibly alleges that Epiroc failure to reasonably accommodate him. Despite knowing of the injury and limitations, Reyna alleges that Epiroc placed him on light duty in name only. His supervisor and other Epiroc employees required Reyna to work regular duty and simultaneously banned him from the rigs, production floor, and from mentoring other employees. Epiroc informed Reyna multiple times that it could not accommodate his restrictions and either placed him on FMLA leave or just deactivated his badge and told Reyna to clean up his things. In fact, after the last instance of Epiroc removing Reyna from the job, it informed him that he could only return if on regular duty. As alleged in Reyna's complaint, Epiroc did not try to engage in an interactive process to reasonably accommodate him. Instead, Reyna's complaint plausibly alleges that Epiroc essentially failed to accommodate him entirely.

---

[53] *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013).

Accordingly, the Court **DENIES** the motion to dismiss Reyna's disability discrimination claim under the ADA and the TCHRA.

### E. Retaliation

Reyna also brings claims for retaliation. Title VII also prohibits an employer from "discriminat[ing] against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[54] The TCHRA has a similar anti-retaliation provision, and it is applied in the same manner as Title VII.[55] Likewise, retaliation claims under Section 1981 are treated the same as Title VII retaliation claims.[56] To state a retaliation claim under Title VII, the THCRA, and Section 1981, a plaintiff must allege facts that tend to establish: (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there is a causal connection between the two.[57] The "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[58] But Title VII does not immunize

---

[54] 42 U.S.C. § 2000e-3(a).

[55] Tex. Lab. Code Ann. § 21.055; *Shackelford*, 190 F.3d at 403 n.2.

[56] *Owens*, 33 F.4th at 835 n.18 (explaining that retaliation claims under Title VII and Section 1981 are parallel and require the proof of the same elements).

[57] *Id.* at 835.

[58] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

employees from slight annoyances like "snubbing" by supervisors or personality conflicts at work.[59]

Here, Reyna's complaint alleges that after reporting instances of alleged discrimination to HR, he was denied training opportunities, promotions, and overtime work, his job duties were restricted, and he was prohibited from walking in certain areas at his job location. Additionally, on multiple occasions, his supervisors either expressly told him not to go to HR or confronted him about his reports to HR. Reyna can establish the "protected activity" prong by showing that he "(1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII."[60] Reyna's complaint does both—he alleges that he opposed discrimination prohibited by Title VII and made reports to HR regarding the alleged discrimination. Therefore, he satisfies the "protected activity" prong.

Additionally, regarding the second prong, these conditions constitute adverse employment actions because they are material restrictions on the conditions of Reyna's employment, as explained previously. The allegations go beyond mere personality conflicts; instead, Reyna's allegations indicate that he suffered material adverse effects in the scope of his employment responsibilities and opportunities for advancement. Moreover, he has also adequately alleged that there is a causal

---

[59] *Id.*

[60] *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996).

15

connection between the adverse actions and his protected reports to HR. The complaint alleges that Epiroc took adverse actions against Reyna soon after he reported to HR. And what's more, Reyna alleges that at least two supervisors actually confronted him about going to HR. Therefore, Reyna has plausibly stated a claim of retaliation under Title VII, Section 1981, and the TCHRA.

Reyna likewise states a retaliation claim under the ADA. The elements of a Title VII retaliation claim and an ADA retaliation claim are essentially the same, but they protect different activity. To establish unlawful retaliation under the ADA, a plaintiff must establish: (1) he engaged in an activity protected by the ADA, (2) he suffered an adverse employment action, and (3) there is a causal connection between the adverse act and the protected action.[61]

Here, Reyna satisfies all three prongs. As for the first prong, a plaintiff alleging retaliation under the ADA need only demonstrate that he had a reasonable, good faith belief that the statute was violated.[62] Then, making a request for a reasonable accommodation may constitute engaging in a protected activity.[63] After injuring his finger at work, Reyna was placed on light duty. But despite placed on light duty, Epiroc continued to make him work regular duty, withdrew the accommodation multiple times, placed him on FMLA leave, deactivated his badge, and demoted him from job responsibilities that were within the purview of his light-duty accommodation. Additionally, Reyna alleges that his supervisor made

---

[61] *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999).

[62] *Tabatchnik v. Cont'l Airlines*, 262 Fed. Appx. 674, 676 (5th Cir. 2008).

[63] *Milteer v. Navarro Cnty. Texas*, 652 F.Supp.3d 754, 766 (N.D. Tex. 2008) (Fitzwater, J.).

derogatory, flippant comments about his injury. These allegations plausibly state a claim for retaliation under the ADA: after receiving an accommodation, in name only, for a workplace injury, Epiroc significantly limited or withdrew Reyna's job responsibilities, and this occurred immediately after he was "accommodated" for the injury. And Reyna's supervisor's comments about his injury further support a causal connection between his accommodation and the adverse actions. Therefore, Reyna has plausibly stated a claim of retaliation under the ADA.

Accordingly, the Court **DENIES** the motion to dismiss Reyna's retaliation claim under Title VII, Section 1981, the TCHRA, and the ADA.

## IV. Conclusion

The Court concludes that Reyna has plausibly alleged claims for national origin discrimination, hostile work environment, disability discrimination, and retaliation. Therefore, the Court **DENIES** Epiroc's motion to dismiss. (Doc. 22).

**IT IS SO ORDERED** this 30th day of November, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE