**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **EDGAR REYNA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 3:23-cv-01005-X** |
| | § | |
| **EPIROC DRILLING SOLUTIONS** | § | |
| **LLC,** | § | |
| | § | |
| **Defendant.** | § | |

---

**BRIEF IN SUPPORT OF DEFENDANT EPIROC DRILLING**
**SOLUTIONS LLC'S MOTION FOR SUMMARY JUDGMENT**

---

EVA W. TURNER
Texas State Bar No. 24051485
eva.turner@ogletree.com
JAMIE ASHTON
Texas State Bar No. 24087211
jamie.ashton@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
8117 Preston Road, Suite 500
Dallas, Texas  75225
(214) 987-3800
(214) 987-3927 (Fax)

ATTORNEYS FOR DEFENDANT

### <u>TABLE OF CONTENTS</u>

I.      SUMMARY ................................................................................................1

II.     SUMMARY JUDGMENT EVIDENCE ........................................................ 3

III.    STATEMENT OF UNDISPUTED MATERIAL FACTS ................................ 4

        A.      Epiroc has strict policies prohibiting discrimination, harassment, and
                retaliation; Epiroc provides reasonable accommodations to qualified
                individuals with a disability. ...................................................................4

        B.      Gudgel approved hiring Reyna knowing his race and national origin;
                Reyna's issues with Gudgel began over an innocuous encounter. ........................ 5

        C.      Reyna suffered a crush fracture at work; Epiroc accommodated Reyna's
                disability................................................................................................ 6

        D.      Reyna's internal complaints and nine charges of discrimination. ......................... 9

        E.      Reyna has refused to meaningfully cooperate in Epiroc's investigations;
                Epiroc has never substantiated any of Reyna's complaints. ................................. 18

IV.     SUMMARY JUDGMENT STANDARDS ...................................................... 21

V.      ARGUMENTS AND AUTHORITIES.......................................................... 23

        A.      Summary judgment is warranted on Reyna's claims of national origin
                discrimination, harassment, and retaliation pursuant to Section 1981................. 23

        B.      Summary judgment is warranted on Reyna's failure to promote claim
                pursuant to Title VII, the TCHRA, and Section 1981. ......................................... 23

                1.      Reyna's failure to promote claim is time-barred under Title VII and
                        the TCHRA; the Court must apply the Section 1981 "but-for"
                        standard. ............................................................................................ 23

                2.      Reyna has no evidence he was qualified for Leadman, and no
                        evidence Epiroc failed to promote him because of his race...................... 25

                3.      Reyna has no evidence of pretext. ........................................................... 26

        C.      Summary judgment is warranted on Reyna's claims of national origin
                discrimination pursuant to Title VII and the TCHRA, and race
                discrimination pursuant to Title VII, the TCHRA, and Section 1981. ................. 28

                1.      Discrimination standards. ....................................................................... 28

                2.      Reyna has no evidence to establish discrimination................................... 29

          i.      Reyna has not suffered any adverse employment action. .............29

                a)      Reyna has no evidence to establish the "adversity" requirement. .......................................................30

                b)      Reyna's allegations are de minimis. .................................30

          ii.     Reyna has no evidence that he was treated less favorably than those outside of his protected class. ........................................32

          iii.    Reyna has no evidence to establish pretext by Epiroc. .................36

    D.    Summary judgment is warranted on Reyna's claims of national origin harassment pursuant to Title VII and the TCHRA, and race harassment pursuant to Title VII, Section 1981, and the TCHRA. .......................... 37

       1.    Reyna has no evidence that any alleged harassment was based on his national origin or race. ......................................................... 38

       2.    Reyna has no evidence that any alleged harassment affected a term, condition, or privilege of his employment. ............................... 39

    E.    Summary judgment is warranted on Reyna's claims of disability discrimination pursuant to the ADA and the TCHRA. .......................... 39

       1.    Epiroc did not fail to reasonably accommodate Reyna. ......................... 39

       2.    Epiroc did not discriminate against Reyna because of a disability. ......... 43

          i.      Reyna was not a qualified individual with a disability. ................43

          ii.     Reyna has no evidence to support an adverse employment action. ................................................................................44

          iii.    Reyna has no evidence he was replaced by or treated more favorably than non-disabled individuals. ......................................44

    F.    Summary judgment is warranted on Reyna's claims of retaliation pursuant to Title VII, Section 1981, the TCHRA, and the ADA. ......................................... 45

       1.    Reyna has no evidence to establish a *prima facie* case of retaliation. ................................................................................ 46

       2.    Reyna has no evidence to establish "but for" causation. .......................... 47

VI.    CONCLUSION.................................................................................. 47

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).............................................................................................22

*Anderson v. Venture Express*,
   694 F. App'x 243 (5th Cir. 2017)........................................................................34

*Appel v. Inspire Pharms., Inc*.,
   712 F. Supp. 2d 538 (N.D. Tex. 2010), aff'd, 428 F. App'x 279 (5th Cir.
   2011) .....................................................................................................................43

*Aryain v. Wal-Mart Stores Texas LP*,
   534 F.3d 473 (5th Cir. 2008) ..............................................................................37

*Autry v. Fort Bend Indep. Sch. Dist*.,
   704 F.3d 344 (5th Cir. 2013) .........................................................................25, 27

*Barber v. Nabors Drilling U.S.A., Inc*.,
   130 F.3d 702 (5th Cir.1997) ...............................................................................41

*Berquist v. Washington Mut. Bank*,
   500 F.3d 344 (5th Cir. 2007) ..............................................................................35

*Brooks v. Firestone Polymers, L.L.C.*,
   640 F. App'x 393 (5th Cir. 2016).........................................................................34

*Brown v. A.W. Brown-Fellowship Leadreship Acad.*,
   2020 WL 6889015 (N.D. Tex. Nov. 24, 2020).................................................45, 47

*Burch v. City of Nacogdoches*,
   174 F.3d 615 (5th Cir. 1999) ...........................................................................40, 41

*Burlington N. & Santa Fe Ry. Co. v. White*,
   548 U.S. 53 (2006)................................................................................................46

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..........................................................................................21, 22

*Chiari v. City of League City*,
   920 F.2d 311 (5th Cir. 1991) ...............................................................................41

*Claiborne v. Recovery Sch. Dist*.,
   690 F. App'x 249 (5th Cir. 2017) .....................................................................40, 41

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
  589 U.S. 327 (2020)....................................................................................24

*Davis v. RealPage, Inc.*,
  *No.* 3:18-CV-0986-D, 2020 WL 1325201 (N.D. Tex. Mar. 20, 2020)....................................28

*E.E.O.C. v. LHC Grp., Inc.*,
  773 F.3d 688 (5th Cir. 2014) ........................................................................40

*Edwards v. Senatobia Mun. Sch. Dist.*,
  549 F. App'x 259 (5th Cir. 2013)....................................................................34

*Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*,
  745 F. App'x 209 (5th Cir. 2018).....................................................................32

*Faragher v. City of Boca Raton*,
  524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)...........................................38

*Feist v. Louisiana*,
  730 F.3d 450 (5th Cir. 2013) .............................................................40, 45, 47

*Finch v. City of San Antonio*,
  No. SA-15-CV-521-XR, 2016 WL 4919967 (W.D. Tex. Sept. 13, 2016) ...........................46

*Fleming v. Methodist Healthcare Sys. of San Antonio, Ltd.*,
  L.L.P., 2024 WL 1055120 (W.D. Tex. Mar. 11, 2024)..................................29, 32, 46

*Forsyth v. Barr*,
  19 F.3d 1527 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994)...................................22

*Frank v. Xerox Corp.*,
  347 F.3d 130 (5th Cir. 2003) .........................................................................29

*Gibson v. Verizon Servs. Org., Inc.*,
  498 F. App'x 391 (5th Cir. 2012)....................................................................38

*Golatt v. Perot Museum of Nature & Sci.*,
  659 F. Supp. 3d 745 (N.D. Tex. 2023) (Lindsay, J.) .............................................24

*Hamilton v. Dallas Cnty.*,
  79 F.4th 494 (5th Cir. 2023) ..............................................................29, 32, 44

*Harrison v. Brookhaven Sch. Dist.*,
  82 F.4th 427 (5th Cir. 2023) (confirming that *Hamilton* applies to claims
  brought under 42 U.S.C. § 1981).......................................................29, 30, 31

*Hernandez v. Yellow Transp., Inc.*,
  670 F.3d 644 (5th Cir. 2012) ........................................................................39

*Ingram v. Papa John's Int'l, Inc.*,
    171 F. App'x 439 (5th Cir. 2006) ............................................................23

*Jackson v. Corp. Serv. Co.*,
    No. CV H-11-4404, 2013 WL 11309365 (S.D. Tex. Apr. 17, 2013) ....................28

*James v. Booz-Allen & Hamilton, Inc.*,
    368 F.3d 371 (4th Cir. 2004) ........................................................ *passim*

*Johnson v. TCB Const. Co.*,
    334 F. App'x 666 (5th Cir. 2009) ............................................................38

*Johnston v. City of Houston*,
    14 F.3d 1056 (5th Cir. 1994) .................................................................22

*Jones v. Dallas Cnty.*,
    47 F. Supp. 3d 469 (N.D. Tex. 2014) ........................................................37

*Jones v. Overnite Transp. Co.*,
    212 F. App'x 268 (5th Cir. 2006) ............................................................28

*Kathy Nguyen v. Brink's, Inc.*,
    2019 WL 130284 (N.D. Tex. Jan. 8, 2019) ..................................................23

*Lowery v. Allstate Tex. Lloyd's, Inc.*,
    No. 3:06-cv-1886-L, 2007 WL 4208476 (N.D. Tex. Nov. 29, 2007)....................22

*Lynch Props., Inc. v. Potomac Ins. Co.*,
    140 F.3d 622 (5th Cir. 1998) .................................................................21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)...........................................................................22

*McCoy v. Tex. Instruments, Inc.*,
    183 S.W.3d 548 (Tex. App.—Dallas 2006, no pet.)......................................22

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1993)..................................................................24, 28, 32

*Moore v. Cricket Commc'ns, Inc.*,
    764 F. Supp. 2d 853 (S.D. Tex. 2011) ......................................................35

*Morales-Vallellanes v. Potter*,
    605 F.3d 27 (1st Cir. 2010)..................................................................31

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)...............................24

*Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*,
    No. 05-1978, 2006 WL 2548166 (E.D. La. Aug. 31, 2006) ...................................................22

*Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*,
    245 F.3d 507 (5th Cir.2001) .................................................................................................28

*Oncale v. Sundowner Offshore Servs., Inc.*,
    523 U.S. 75 (1998)................................................................................................................31

*Patrick v. Ridge*,
    394 F.3d 311 (5th Cir.2004) .................................................................................................26

*Perez v. Texas Dep't of Criminal Justice*,
    395 F.3d 206 (5th Cir. 2004) ................................................................................................35

*Price v. Fed. Express Corp.*,
    283 F.3d 715 (5th Cir.2002) .................................................................................................25

*Raggs v. Miss. Power & Light Co.*,
    278 F.3d 463 (5th Cir. 2002) ................................................................................................45

*Ramsey v. Henderson*,
    286 F.3d 264 (5th Cir. 2002) ................................................................................................38

*Reed v. CenterPoint Energy, Inc.*,
    2018 WL 2170320 (S.D. Tex. May 10, 2018) ................................................................26, 29

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000)..............................................................................................................29

*Rutherford v. Harris County*,
    197 F.3d 173 (5th Cir. 1999) ................................................................................................28

*Salinas v. AT&T Corp.*,
    314 Fed. App'x. 696 (5th Cir. 2009) .....................................................................................44

*Sambrano v. United Airlines, Inc.*,
    No. 4:21-CV-1074-P, 2023 WL 8721437 (N.D. Tex. Dec. 18, 2023) ....................................32

*Scott v. University of Miss.*,
    148 F.3d 493 (5th Cir. 1998) ................................................................................................23

*Seaman v. CSPH, Inc.*,
    179 F.3d 297 (5th Cir.1999) .................................................................................................45

*Shackelford v. Deloitte & Touche, LLP*,
    190 F.3d 398 (5th Cir.1999) .................................................................................................37

*Solo Serve Corp. v. Westowne Assoc.*,
    929 F.2d 160 (5th Cir. 1991) ................................................................22

*Spears v. Patterson UTI Drilling Co.*,
    337 F. App'x 416 (5th Cir. 2009) ....................................................27, 36

*Stewart v. Miss. Transp. Comm'n*,
    586 F.3d 321 (5th Cir. 2009) ................................................................46

*Threat v. City of Cleveland*,
    6 F.4th 672 (6th Cir. 2021) ..................................................................31

*Turco v. Hoechst Celanese Corp.*,
    101 F.3d 1090 (5th Cir. 1996) ..............................................................40

*Walker v. SBC Servs., Inc.*,
    375 F. Supp. 2d 524 (N.D. Tex. 2005) ..................................................42

*White v. Gov't Emps. Ins. Co.*,
    457 F. App'x 374 (5th Cir. 2012) ..........................................................38

*Zimmer v. Sw. Bell Tel. Co.*,
    108 F. App'x 172 (5th Cir. 2004) ..........................................................43

**Statutes**

42 U.S.C. § 12111(8) ..................................................................................40

42 U.S.C. § 12112(a) ..................................................................................43

42 U.S.C. § 12112(b)(5) .............................................................................40

Americans with Disabilities Act ...............................................4, 39, 43, 45

FMLA ........................................................................................6, 9, 14, 42

Section 1981...........................................................23, 24, 28, 29, 37, 45

Title VII ....................................................................................... *passim*

Fed. R. Civ. P. 56(c) .................................................................................21

Texas Commission on Human Rights Act............................................ *passim*

## BRIEF IN SUPPORT OF DEFENDANT EPIROC DRILLING SOLUTIONS LLC'S MOTION FOR SUMMARY JUDGMENT

Defendant Epiroc Drilling Solutions LLC ("Epiroc") moves the Court to enter summary judgment on all claims brought by Plaintiff Edgar Reyna ("Reyna").

## I.      SUMMARY

This is an employment lawsuit. Reyna is a current employee of Epiroc. Reyna claims he was discriminated against based on his national origin (Mexican), race (Hispanic), and disability by his supervisor, Jackie Gudgel, and nearly every member of Epiroc management Reyna encountered. Reyna also contends the same group retaliated against him after he made dozens of internal complaints and filed nine charges of discrimination with the Equal Employment Opportunity Commission over the past three years.

The material facts of this case are straightforward. Gudgel made the decision to hire Reyna as an Assembler, the position Reyna holds today. Reyna and Gudgel worked well together for the first eight months of Reyna's employment. Then, in July 2018, Reyna requested additional tickets to the Epiroc company picnic, and claims Gudgel refused and laughed at him. From this point on, Reyna interpreted nearly every action by Gudgel, management, and human resources to be discriminatory and retaliatory. Even after Gudgel retired in early 2023, Reyna continued to allege others discriminated and retaliated against him, simply because these individuals "saw" Gudgel do it.

In January 2022, Reyna injured his finger at work and could not use his left hand. Epiroc created light duty projects for Reyna, which he now claims were part of the discrimination and retaliation. Immediately upon being cleared to return to work without restrictions, Epiroc placed Reyna back in his Assembler role. During the time Reyna performed light duty work, his pay and benefits remained unchanged.

Summary judgment is warranted on all of Reyna's claims. With respect to his discrimination claims, Reyna has no evidence that he has suffered any adverse employment action, including under the Court's new *Hamilton* standard. Nothing adverse—not even a write up—has ever happened to Reyna in his six years of employment. Even if Reyna did suffer an actionable adverse employment action, summary judgment is still warranted on Reyna's discrimination claims because there exists no evidence to support an inference of discrimination. That is, Reyna has no evidence that any of the actions he alleges occurred *because of* his national origin, race, or disability, or that he was treated less favorably than non-Hispanic or non-disabled workers.

Reyna's harassment claims fail for similar cause. The evidence is completely lacking to establish any harassment, much less illegal harassment based on Reyna's membership to a protected group. In addition, Reyna admitted in his deposition that Epiroc, at all times, accommodated his restrictions, affirmatively negating his failure to accommodate claim. Finally, Reyna's retaliation claims fail for the reasons identified above; he simply has no evidence of them.

As the record shows, Epiroc has gone above and beyond the requirements of the law in an attempt to help Reyna, ensure a safe workplace for him, and cure his perceived inequalities. While Reyna has repeatedly reported false and inflammatory claims against his supervisor and others, he has also refused to cooperate in investigations, refused offers to move under a different supervisor, and refused any other assistance offered by Epiroc. Despite purportedly suffering through over five years of alleged discrimination and abuse, Reyna has never once applied for a position outside of Epiroc. As demonstrated below, there exists no evidence to support any of Reyna's numerous claims.

## II.    SUMMARY JUDGMENT EVIDENCE

In support of its Motion for Summary Judgment, Epiroc relies on the pleadings on file and

the evidence contained in its Appendix ("App."), which includes the following:

**Exhibit 1** (App. 0001-0179): Transcript from the Oral and Video Deposition of Edgar Reyna taken on June 13, 2024 ("Reyna Dep."), with exhibits ("Reyna Dep. Ex.").

**Exhibit 2** (App. 0180-0268): Transcript from the Oral and Video Deposition of Jackie Gudgel taken on July 1, 2024 ("Gudgel Dep."), with exhibits ("Gudgel Dep. Ex.").

**Exhibit 3** (App. 0269-0367): Transcript from the Oral and Video Deposition of Matt Buttacavoli taken on June 28, 2024 ("Buttacavoli Dep."), with exhibits ("Buttacavoli Dep. Ex.").

**Exhibit 4** (App. 0368-0425): Transcript from the Oral and Video Deposition of Peter Chung taken on July 1, 2024 ("Chung Dep."), with exhibits ("Chung Dep. Ex.").

**Exhibit 5** (App. 0426-0495): Transcript from the Oral and Video Deposition of Alphonso Tyson taken on June 20, 2024 ("Tyson Dep.).

**Exhibit 6** (App. 0496-0502): Certified transcript of recorded meeting between Reyna, Buttacavoli, and Tyler on April 21, 2022 ("April 21, 2022 Recording").

**Exhibit 7** (App. 0503-0508): Certified transcript of recorded meeting between Reyna, Border, and Buttacavoli on June 10, 2022 ("June 10, 2022 Recording").

**Exhibit 8** (App. 0509-0512): Certified transcript of recorded meeting between Reyna, Buttacavoli, and Farnsworth on November 14, 2022 ("November 14, 2022 Recording").

**Exhibit 9** (App. 0513-0528): Certified transcript of recorded meeting between Reyna and Tyson on December 7, 2022 ("December 7, 2022 Recording").

**Exhibit 10** (App. 0529-0535): Certified transcript of recorded meeting between Reyna and Tyson on February 10, 2023 ("February 10, 2023 Recording").

**Exhibit 11** (App. 0536-0545): Declaration of Madison Brotherton (nee Farnsworth) ("Farnsworth Dec.") with exhibits ("Farnsworth Dec. Ex.").

**Exhibit 12** (App. 0546-0547): Declaration of Matt Buttacavoli ("Buttacavoli Dec.")

**Exhibit 13** (App. 0548-0550): Declaration of Thanh Nguyen ("Nguyen Dec."), with exhibit ("Nguyen Dec. Ex.").

**Exhibit 14** (App. 0551): Declaration of Whitney Norton ("Norton Dec.").

### III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

**A.    Epiroc has strict policies prohibiting discrimination, harassment, and retaliation; Epiroc provides reasonable accommodations to qualified individuals with a disability.**

Headquartered in Garland, Texas, Epiroc researches, develops, manufactures and markets a wide range of rotary drilling equipment for surface mining, deephole drilling, civil construction, waterwell, aggregate/quarry, and oil and gas markets around the world. App. 536 (Farnsworth Dec. at ¶ 3). Epiroc is an equal opportunity employer and is committed to providing equal treatment to all employees during the course of employment. App. 13, 89-91 (Reyna Dep. 48:18-49:17; Reyna Dep. Ex. 2).

Epiroc maintains strict anti-discrimination, anti-retaliation, and anti-harassment policies. App. 89-91, 92-96 (Reyna Dep. Ex. 2, 3). In relevant part, Epiroc prohibits and does not tolerate discrimination or harassment against employees because of race, national origin, disability, or any other protected characteristic. *Id*. Epiroc also prohibits "any form of discipline, reprisal, intimidation or retaliation for good faith reports or complaints of incidents of discrimination of any kind, pursuing any discrimination claim or cooperating in related investigations." *Id*. Epiroc's policies apply to "all terms and conditions of employment, including, but not limited to, hiring, training, promotion, discipline, compensation, benefits, and termination of employment." App. 89-91 (*Id.* at Ex. 2).

Epiroc "complies with the Americans with Disabilities Act" and "all applicable state or local law." *Id*. Employees who need an accommodation for a disability are referred to the human resources department, and Epiroc will "reasonably accommodate qualified individuals with a disability if such accommodation would allow the individual to perform the essential functions of the job, unless doing so would create an undue hardship." *Id*.

Epiroc also maintains a robust complaint procedure. App. 89-91, 92-96 (*Id*. at Ex. 2, 3). Epiroc requires employees who are subjected to any conduct the employee believes violates Epiroc policies to either report the conduct to the employee's direct supervisor or the human resources department. *Id*. Epiroc also requires that complaints are as "detailed as possible, including the names of all individuals involved and any witnesses" to allow Epiroc to "thoroughly investigate the facts and circumstances of all claims of perceived discrimination" in order to "take prompt corrective action, if appropriate." *Id*. Reyna acknowledged and understood these policies. App. 13-14, 89-91, 92-96 (*Id*.; Reyna Dep. 48:18-50:12).

**B.    Gudgel approved hiring Reyna knowing his race and national origin; Reyna's issues with Gudgel began over an innocuous encounter.**

Reyna identifies as a Hispanic Mexican. App. 23 (Reyna Dep. 88:5-8). After interviewing Reyna, Production Supervisor Jackie Gudgel approved the decision to hire him as an Assembler on the second shift effective November 17, 2017. App. 88, 14, 536 (*Id*. at 52:21-22; Reyna Dep. Ex 1; Farnsworth Dec. at ¶ 4). Reyna reported directly to Gudgel for many years, until January 2023 when Gudgel retired. App. 14-15 (Reyna Dep. 53:24-54:4). For a majority of Reyna's employment, Peter Chung and Thanh Nguyen worked as the Leadmen under Gudgel, meaning they assisted the Assemblers, communicated production flow, and coordinated planning to set up and run the rigs. App. 373, 17 (*Id*. at 62:10-22; Chung Dep. 15:24-16:13).

Reyna and Gudgel worked well together for the first eight months of Reyna's employment. According to Reyna, issues with Gudgel began in July 2018 when Epiroc hosted a company picnic, called Hawaiian Falls, for employees and their families. Reyna claims two employees told him they did not want to attend the picnic because Reyna requested additional tickets and wanted "to bring [his] uncles and aunts and cousins and everybody." App. 84 (Reyna Dep. 330:4-17). In response, Reyna claims Gudgel "laughed," told Reyna he was being selfish with the number of

tickets he requested. *Id*. at 330:15-21. Reyna also claims Gudgel yelled "yeehaw" when Reyna played "custom music" in his work area. *Id*. at 331:14-18. Reyna testified he does not know what "yeehaw" means, and Gudgel did not make any other comments about the music being played. *Id*. at 334:10-12, 335:2-8. These two issues form the basis of Reyna's belief that Gudgel intended to discriminate against him because of his race and national origin.

**C.    Reyna suffered a crush fracture at work; Epiroc accommodated Reyna's disability.**

As an Assembler, Reyna is responsible for installing, assembling, and connecting hydraulic controls, pumps, and other equipment. App. 97-98, 15 (Reyna Dep. Ex. 4; Reyna Dep. 55:9-17). Reyna's position requires physical labor in handling materials and tools while performing assembly and related operations, as well as the ability to climb and work at elevated heights using ladders. App. 536 (Farnsworth Dec. at ¶ 5). On occasion, Assemblers are tasked with training new hires. *Id*.

In 2020 and 2021, while reporting to Gudgel, Reyna took FMLA leave on two separate occasions to care for his back. App. 21, 99-101, 102-104 (Reyna Dep. 78:5-10, Reyna Dep. Ex. 5, 6). Reyna testified he had no issue with Gudgel or Epiroc with either leave, and returned to work without incident. App. 22 (Reyna Dep. 82:13-20, 85:15-21). After the 2020 leave, Reyna submitted restrictions to Epiroc, which Gudgel accommodated. App. 22, 99-101, 102-104 (*Id.* at 83:7-16; Reyna Dep. Ex. 5, 6).

On January 24, 2022, Reyna suffered a crush injury to his left hand index finger tip while working. App. 107-111 (Reyna Dep Ex. 8). He immediately informed Gudgel, who drove Reyna to the offsite OccuMed clinic, a third-party health facility, and then to the emergency room. App. 37, 304 (Reyna Dep. 144:22-25; Buttacavoli Dep. 136:8-16). According to health care providers, Reyna could not use his left hand at work until his injury healed. App. 64, 112-123, 132-139 (Reyna Dep. 252:11-17; Reyna Dep. Ex. 9, 16).

As an Assembler, Reyna necessarily required the use of both hands. *See* App. 97-98 (Reyna Dep. Ex. 4). When an employee, like Reyna, is unable to perform the essential functions of the job with or without an accommodation, Epiroc endeavors to "find meaningful work in that employee's existing department" to allow the employee to continue working. App. 306 (Buttacavoli Dep. 144:2-7). If the employee's department has no meaningful work available, Epiroc will "go outside that department into another department" in an attempt to find "meaningful work elsewhere." *Id*. at 144:13-17. Immediately after Reyna's injury, Epiroc was able to find light duty work in his department, which focused on training when available, and cleaning. App. 41, 45, 397, 306-307 (Reyna Dep. 158:12-20, 175:22-24; Chung Dep. 112:6-13; Buttacavoli Dep. 142:10-20, 145:5-24, 147:13-149:4). Reyna admitted that at all times, Epiroc accommodated his restrictions. App. 45 (Reyna Dep. 175: 22-24).

In April 2022, Reyna's health care provider released him back to work at full duty. App. 42, 112-123 (*Id*. at 165:2-11; Reyna Dep. Ex. 9). Reyna represented to Production Manager Matt Buttacavoli and Human Resources Manager Tanya Tyler that he was ready and able to return back to work as an Assembler. App. 44-45, 126-127 (Reyna Dep. 172:25-176:2; Reyna Dep. Ex. 11). Shortly thereafter, Reyna met with Tyler and Buttacavoli again, to discuss Reyna's injury. Reyna recorded this conversation. *See* App. 496-502 (April 21, 2022 Recording). In the recording, Buttacavoli explained they were meeting to see "how [Reyna is] doing," and to "get a better understanding as to…whether or not you resumed your full duty." App. 497 (*Id*. at 3:2-10). Reyna refused to discuss whether he could or could not perform his duties as an Assembler and stated he wanted his lawyer present during the meeting. *Id*. at 5:2-24. Buttacavoli told Reyna that "in the meantime," Epiroc would keep Reyna on light duty work. App. 499 (*Id*. at 12:4-7). Reyna also made a complaint to Epiroc that the OccuMed doctor was rude to him. App. 43 (Reyna Dep.

167:20-168:15). Epiroc offered for Reyna to see a different doctor, or a doctor of Reyna's choosing, but Reyna declined. *Id*.; App. 126-127 (Reyna Dep. Ex. 11).

Epiroc continued to provide Reyna with light duty assignments through June 2022. After Reyna missed a scheduled doctor's appointment on June 9, 2022, Epiroc was unsure of the state of Reyna's restrictions. App. 259, 315 (Gudgel Dep. Ex. 9; Buttacavoli Dep. 179:16-180:8). Senior Human Resources Business Partner Madison Farnsworth asked Gudgel to find Reyna and ask him to wait for further instructions in the lobby. App. 537 (Farnsworth Dec. at ¶ 7). Gudgel did so, which Reyna said made him feel sick, and he left Epiroc by ambulance. App. 53-54 (Reyna Dep. 209:14-25, 210:12-211:1, 212:21-24). In accordance with Epiroc policy, and for Reyna's safety, Epiroc deactivated Reyna's badge until he was cleared to return to work by a healthcare provider. App. 537, 55 (Farnsworth Dec. at ¶ 7; Reyna Dep. 215:4-8, 216:18-22). The next day, Reyna provided clearance to Epiroc from his physician, Epiroc reactivated his badge, and Reyna returned back to his light duty work. App. 56 (Reyna Dep. 218:12-24).

In the summer 2022, Epiroc scaled back its operations due to reduced production needs. App. 141, 307, 537 (Reyna Dep. Ex. 18; Buttacavoli Dep. 147:13-148:5; Farnsworth Dec. at ¶ 8). In addition, the individuals Reyna was "training were starting to work pretty self-sufficiently," eliminating the need for Reyna to mentor, a role he was performing on light duty. App. 307 (Buttacavoli Dep. 147:13-25). On July 7, 2022, Buttacavoli and Farnsworth met with Reyna about the lull in production, and informed him that as a result, Reyna's light duty position was no longer available. App. 141, 307 (Reyna Dep. Ex. 18; Buttacavoli Dep. 147:13-25). Despite the slowdown, Farnsworth also explained that "we do expect to get busy again soon, and we will need your help if you are able." App. 141 (Reyna Dep. Ex. 18). Gudgel was not involved in any decision regarding the availability of Reyna's light duty work. App. 207 (Gudgel Dep. 103:8-24). Reyna requested,

and Epiroc granted, FMLA leave beginning July 8, 2022. App. 61 (Reyna Dep. 241:10-12). Less than one month later, on August 4, 2022, Epiroc emailed Reyna about another available light duty assignment that could accommodate his restrictions beginning August 8, 2022. App. 143-145 (Reyna Dep. Ex. 20). Reyna failed to respond to this email for over one week. *Id*.; App. 63 (Reyna Dep. 246:5-18). Reyna then returned to work on August 17, 2022 on a new light duty project that required Reyna to document steps to assemble a certain type of rig. App. 64 (*Id*. at 250:15-23).

After Reyna concluded the documentation project, Buttacavoli consulted other managers, including Manufacturing Engineering Manager Whitney Norton, who managed Reyna's documentation project, to inquire about other light duty opportunities for Reyna. App. 307, 551 (Buttacavoli Dep. 148:9-149:10; Norton Dec. at ¶ 3). None were found, and as of November 14, 2022, Reyna went back out on leave. App. 66, 307 (Reyna Dep. 261:4-16; Buttacavoli Dep. 148:1-5). One week later, on November 21, 2022, Reyna's health care provider released Reyna to return to work with no restrictions. App. 66 (Reyna Dep. 261:4-16). Immediately, Epiroc placed him back in his Assembler role, where he still works today. App. 67 (*Id.* at 262:21-263:6).

Gudgel retired in January 2023, and was replaced by Chung. App. 287, 372 (Buttacavoli Dep. 66:8-10; Chung Dep. 10:12-15). As described in detail below, Reyna claimed others at Epiroc continued to discriminate and retaliate against him, simply because they saw Gudgel discriminate against him, "so [they] feel[] comfortable doing it." App. 74 (Reyna Dep. 291:5-18).

**D.     Reyna's internal complaints and nine charges of discrimination.**

The Hawaiian Falls issue precipitated Reyna's first formal complaint to Epiroc human resources in 2021. Reyna also filed his first of nine charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") a few months later, alleging the same conduct. App. 105-106 (Reyna Dep. Ex. 7). Thereafter, Reyna continued to make countless complaints to

Epiroc, all of which mirror the allegations included in his charges. For clarity and completeness, Epiroc identifies the allegations and evidence in support of Reyna's claims below.[1]

**Charge No. 1, filed October 22, 2021**

*Allegations*: Reyna complains that Gudgel "yelled" at him in July 2018 for getting more tickets to Hawaiian Falls, and Gudgel told Reyna he could "only use one restroom"; "[s]ince this incident," Reyna has been "denied training, pulled away from normal job duties, restricted from walking down certain aisles, and not hired for job positions." App. 105-106 (Reyna Dep. Ex. 7).

Restroom Incident: Reyna testified that in 2018, "after the tickets" incident, Gudgel told him he was not allowed to use a specific restroom. App. 30-31 (Reyna Dep. 117:15-118:4). When asked why he believes Gudgel restricted him from using a certain restroom because of his race or national origin, Reyna testified "I don't know," and stated Gudgel did not tell any of the other Hispanic Mexican Assembler on his team they could not use a specific restroom. App. 32 (*Id.* at 123:13-25). Reyna testified he felt a Caucasian employee on his team "was allowed to do the things [he] was not allowed to do," but Reyna could not recall the employee's name. App. 32 (*Id.* at 124:20-125:2).

Denied Training: Reyna believes Gudgel delayed him from taking electrical training, which Reyna admitted did not pertain to his job duties. App. 26-27 (*Id.* at 101:10-11, 103:10-12, 104:6-8). Reyna's belief is based on an email Reyna claims Chung showed him that had Reyna's name on a list to take the training. *Id.* at 101:18-102:10. According to Chung, Gudgel wanted the electricians to have the first opportunity to take the electrical training, which Chung communicated to Reyna and the other Assemblers who signed up. App. 379-380 (Chung Dep. 41:10-42:24, 43:13-

---

[1] Many of the charges repeat allegations. Epiroc identifies each independent allegation herein.

19). Thus, no Assemblers took the first electrical training. *Id*. Reyna eventually did take this training. App. 27 (Reyna Dep. 104:6-8).

Removed from Job Duties: Reyna claims Gudgel asked him to perform cleaning duties, which Reyna admitted is part of his job requirements, based on Reyna's belief that the two individuals with whom he worked did not like Reyna because the two employees had used the term "wetbacks" in the past—not directed at Reyna—and had "racist tattoos." App. 27-28 (*Id.* at 105:20-24, 105:7-10, 106:5-22). Reyna testified he returned to working on the rig the next day. App. 28 (*Id.* at 107:24-108:4). As Chung explained, when work slows down, "the whole team" performs cleaning duties. App. 400 (Chung Dep. 124:3-18).

Restricted from Aisles: Reyna testified that on *one* occasion, Gudgel asked him not to walk through the engine department. App. 30-31 (Reyna Dep. 115:2-17, 119:25-120:6). Reyna believes Gudgel gave this instruction because "the engine department is…known to be racist." *Id*.

Not Hired for Positions: Reyna testified he was not promoted to Leadman in 2021, and Gudgel promoted Chris Hoang instead. Buttacavoli made the ultimate hiring decision. App. 296 (Buttacavoli Dep. 105:2-4). According to Buttacavoli, Reyna was not qualified for this position. For example,[2] Reyna was not a certified tester, and he "couldn't even start [a machine] up…much less run it and test it." App. 224-225, 389 (Gudgel Dep. 173:14-174:3; Chung Dep. 80:12-20). The person Buttacavoli hired for Leadman, Chris Hoang, on the other hand, was a certified tester, knew how to how to "run the machines" and he had been "through all the training on how to operate" them. App. 228, 295-296, 389 (Gudgel Dep. 186:12-187:8; Buttacavoli Dep. 101:20-102:9; Chung Dep. 80:12-20).

---

[2] This issue is addressed in more detail in the arguments section below.

**Charge No. 2, filed May 13, 2022**

*Allegations*: Reyna contends that he was "watched on the job, filmed on the job," and his workplace restrictions were "ignored"; Gudgel wanted him to work "full duty even after [Reyna] showed [Gudgel] that [his] nail was hanging to the side and bleeding"; Gudgel wanted Reyna to work in the test pad area; and that Tim Choate, another Production Supervisor, "demand[ed]" that he work full duty. App. 129 (Reyna Dep. Ex. 13).

Watched/Filmed: Reyna testified that he believed either Gudgel or Choate took a video of him working because Reyna looked "outside the bay door" and "could see a light or something." App. 50 (Reyna Dep. 194:17-20, 195:8-17).

Workplace Restrictions Ignored: Reyna complains that Gudgel tried to send him to the test pad, but then Gudgel changed his mind because Reyna did not have his safety shoes on. App. 51 (*Id.* at 199:24-25, 200:25-201:17). On another occasion, Reyna claims Choate "yelled" at him to get off a machine. Choate then told Reyna he forgot Reyna had restrictions, so Reyna continued to do his light duty work. App. 52 (*Id.* at 202:9-20).

**Charge No. 3, filed June 15, 2022**

*Allegations***:** Reyna claims he was restricted from accompanying others to get tools and "ice pops"; after Reyna went to the hospital on July 9, 2022, Reyna's badge was deactivated and he was told by General Manager PC Garland Brett Border to stop sending complaints about Epiroc. App. 131 (Reyna Dep. Ex. 15).

Could Not Help Others: Reyna complains that Chung told him that he could not show employees where to get tools, hardware, and ice pops because Chung said "[b]y now they should already know." App. 56 (Reyna Dep. 220:19-221:19).

Border's Comments: Reyna recorded this referenced conversation with Border. In the recording, Border tells Reyna he cannot return to work following his emergency room visit until it had been confirmed by his health care provider that it was safe for him to do so. App. 504 (June 10, 2022 Recording at 5:16-20). Reyna accused Border of making this request "just because I'm— I'm Hispanic." App. 505 (*Id*. at 6:2-3). Border says to Reyna: "I am not racist, I'm not prejudiced, nobody on my team is, and you will stop accusing me of it immediately." *Id*. at 6:18-20.

## Charge No. 4, filed on June 29, 2022

*Allegations*: Reyna complains that Chung told Reyna that Gudgel told Chung that Reyna needed to clean instead of mentor, and Gudgel "enjoy[ed] the fact that he can now put [him] to clean…in front of the Caucasian workers to ridicule [Reyna]." App. 140 (Reyna Dep. Ex. 17).

Light Duty Cleaning: Epiroc assigned Reyna meaningful light duty work that was available, which included cleaning work. App. 536, 306 (Farnsworth Dec. at ¶ 5; Buttacavoli Dep. 142:10-20). According to Chung, Gudgel never instructed him to remove Reyna from mentoring duties. App. 383, 400 (Chung Dep. 56:20-23, 123:16-124:17). Further, Reyna admitted he has no evidence *Gudgel* ever instructed him to clean. Instead, Reyna said Chung was "a messenger," and the instruction "always came from [Chung]." App. 60 (Reyna Dep. 236:1-13).

## Charge No. 5, filed on July 28, 2022

*Allegations*: Reyna complains that on July 7, 2022, he was notified that Epiroc could no longer accommodate his restrictions and his badge was deactivated; and an employee named Aileen was also on restrictions but was not sent home. App. 142 (Reyna Dep. Ex. 19).

Light Duty Accommodations: Epiroc scaled back its operations due to reduced production needs, and as a result, in July 2022, Epiroc had no additional light duty work for Reyna to perform. App. 141, 307 (*Id.* at Ex. 18; Buttacavoli Dep. 147:13-25). Reyna testified he was not privy to the

business and operational needs of the company. App. 61 (Reyna Dep. 240:2-13). Epiroc deactivated Reyna's badge as a matter of "procedure," and for his safety. App. 537 (Farnsworth Dec. at ¶ 7). It is Epiroc policy to deactivate badges for employees on leave. App. 141 (Reyna Dep Ex. 18). Reyna testified he applied for, and received, FMLA leave beginning July 8, 2022. App. 61 (Reyna Dep. 241:8-12). Regarding Reyna's alleged comparator, Aileen Davaloz, Reyna testified he was unaware of her specific restrictions. App. 62, 538 (*Id.* at 244:1-15; Farnsworth Dec. at ¶ 11). Davaloz did receive light duty work relating to an injury from May 23, 2022 through June 23, 2022, when her restrictions expired. App. 538 (Farnsworth Dec. at ¶ 11). Other than Ms. Davaloz, there were no other employees on light duty at the same time as Reyna. *Id*.

**Charge No. 6, filed on October 12, 2022**

*Allegations*: Reyna states a coworker, Audrey Lee, was taken to the emergency room but "was never told her badge was restricted or deactivated"; Reyna believed light duty work was available when he was put on leave; he received an email on August 4, 2022 about another light duty assignment available, and was "forced to return to a hostile environment"; and he "learned that a new hire named Niko" replaced him. App. 146 (Reyna Dep. Ex. 21).

<u>Audrey Lee:</u> Reyna testified that Lee, who Reyna said is African American, was an Assembler who reported to a different supervisor. App. 64 (Reyna Dep. 252:15-22). According to Reyna, Lee told him that her badge was not deactivated based on the fact that Lee could return to work after she provided proper documentation. App. 65 (*Id.* at 254:10-255:3). Reyna has no knowledge of whether Lee's badge was ever actually deactivated, no knowledge of Lee's workplace restrictions, if any, and no knowledge of why she went to the emergency room. App. 65 (*Id.* at 255:4-8).

Additional Light Duty Work: Reyna claimed an employee named Simon Vargas told Reyna that he had other work for Reyna to do after his light duty assignment ended, but Epiroc placed him on a leave anyway. App. 66 (*Id.* at 261:22-24). Reyna recorded the conversation he had about this issue when he met with Buttacavoli and Farnsworth. *See* App. 509-512 (November 14, 2022 Recording). In the recording, Reyna asks about the additional work from Vargas. App. 511 (*Id.* at 6:9-23). Buttacavoli explains that he spoke to the manager of the department, Norton, who Vargas reports to, who confirmed that there was no other work for Reyna to perform. *Id.* at 6:9-23, 9:6-8. Buttacavoli then reinforced that "we want you…to come back into assembly." App. 512, 307 (*Id.* at 11:1-4; Buttacavoli Dep. 148:9-149:10).

Alleged Replacement: Reyna contends he was told by coworkers that an employee named Niko was hired to replace him. App. 66 (Reyna Dep. 259:17-20). Reyna does not know Niko's race or national origin, and admits he immediately returned to his position as an Assembler once cleared to work without restrictions. App. 66-67 (*Id.* at 260:16-25, 262:21-263:3).

**Charge No. 7, filed on November 23, 2022**

*Allegations***:** Reyna complains that on November 14, 2022, he was told Epiroc could no longer accommodate his restrictions, his badge would be deactivated, and then he was "walked out in front of everyone"; when he returned back to work, Gudgel "yelled" at him to put his safety glasses on, but Gudgel did not reprimand Caucasian employees for the same issue. App. 147 (Reyna Dep. Ex. 22).

Light Duty Work: Reyna recorded the conversation he had with Buttacavoli and Farnsworth referenced in the charge. In this recording, Buttacavoli explained to Reyna that the documentation project had ended, and that if Reyna was able, "we'd be putting you back to work on the floor," but Epiroc was unable to accommodate his current restrictions. App. 510 (November

14, 2022 Recording at 3:16-19, 5:14-20). Buttacavoli said he would contact Reyna if additional work became available, and asked Reyna to answer his phone so "we can bring you back quickly." App. 512 (*Id*. at 10:3-15). At the end of the recording, Buttacavoli said he planned to walk Reyna "out like [he] did last time." *Id*. at 11:18-22.

Comment by Gudgel: Regarding Caucasian employees who Reyna claims were spared of Gudgel's yelling, Reyna identified "[t]hat guy William from power pack" and "other Caucasian workers" who were not in the same area as Reyna when the alleged yelling occurred. App. 67 (Reyna Dep. 263:23-264:17). Reyna recorded a conversation with Human Resources Manager Alphonso Tyson in which he described this encounter. App. 523 (December 7, 2022 Recording at 39:1-10). During the conversation, Tyson asked for the names of the Caucasian employees, and Reyna could not provide them. *Id*. Tyson also asked if there were any witnesses who saw Gudgel yelling at him, and Reyna refused to provide information. *Id*. at 40:20-23.

## Charge No. 8, filed on March 6, 2023

***Allegations***: Reyna contends Gudgel "continues to harass" him "through" Chung and Nguyen; he was falsely accused of taking tools; repeatedly denied overtime; Chung assigned him to tear down a "270 Frame" on a rig mover with only two other people, when the job required six people; and Chung did not put his signature on a form requesting a day off. App. 148 (Reyna Dep Ex. 23).

Accused of Taking Tools: Reyna contends someone named Razi accused Reyna of taking tools because Razi "yelled out [his] name." App. 68 (Reyna Dep 266:24-17).

Denied Overtime: Reyna admits he was not eligible for overtime in 2022, when he was on light duty. App. 68 (*Id.* at 268:12-19). When Reyna was cleared to work as an Assembler, he testified he worked "some" overtime under Gudgel. App. 69 (*Id.* at 272:25-273:8). Other times,

Reyna said he was told that if he wanted to work overtime, he had to ask Production Supervisor Earl Lang, which Reyna testified he did not do. App. 69-70 (*Id.* at 273:5-24, 275:15-19). Reyna testified he could not recall any other time when he was denied overtime opportunities. App. 70 (*Id.* at 275:20-25). According to Buttacavoli, it was "hard" to get Reyna to work overtime, which is voluntary, but "he always denied our request to—to work overtime at the time." App. 294 (Buttacavoli Dep. 95:1-96:20).

270 Rig: Reyna claims Chung assigned him and two others to do a "tear down" project that required more than three people to safely complete in an attempt to "set" Reyna up to fail. App. 71 (Reyna Dep. 279:8-21). Chung testified tear down teams can consist of three to five people. App. 408 (Chung Dep. 155:15-17). Chung felt Reyna could successfully handle the job, which Reyna admitted he did. App. 408, 71 (Chung Dep. 155:7-21; Reyna Dep. 278:12-13).

Signature for Day Off: Reyna said Chung did not sign his request for a day off, but Chung did sign another Assembler's request. App. 72 (Reyna Dep. 283:11-19). Reyna does not recall if he actually took this day off of work. *Id*. Chung told Reyna he was approved for the vacation and that it was not necessary for Chung to sign the form. App. 408 (Chung Dep. 156:13-24). Chung said he did not sign vacation request forms for any other employee. *Id.* at 157:6-9.

## Charge No. 9, filed on June 26, 2023

*Allegations*: Reyna complains that Chung offered him a tester position instead of a Leadman position; on March 24, 2023, Nguyen said Reyna could not work overtime because he did not "have the knowledge"; and Tyson told Reyna he has had enough of his complaints in front of others. App. 149 (Reyna Dep Ex. 24).

Tester Position Offer: After Gudgel retired, Epiroc promoted Chung to replace him. App. 74 (Reyna Dep. 290:1-5). Reyna said he was interested in Chung's old Leadman position, but

instead, Chung offered him the position of a Tester, which Reyna declined. App. 395, 149 (Chung Dep. 103:23-25; Reyna Dep Ex. 24). Reyna never applied for Leadman, and according to Reyna, Epiroc promoted someone named Jamie, a "Chicano" from Mexico, as Leadman. App. 74, 73 (Reyna Dep. 290:9-10, 289:6-22).

Overtime Denial: Buttacavoli selects the rigs that need to be worked on weekends. App. 286 (Buttacavoli Dep. 64:12-21). During the time in question, March 24, 2023, Reyna was assigned Rig 91110. App. 548, 550 (Nguyen Dec. at ¶ 4, Nguyen Dec. Ex. A). Rig 91110 was not one of the rigs that needed work on that particular weekend, and accordingly, overtime work was not available to Reyna. *Id*. Reyna had no explanation as to why Nguyen would not want Reyna to work overtime, except that Nguyen has seen Gudgel discriminate against him, "so he feels comfortable doing it." App. 74 (Reyna Dep. 291:5-18).

Conversation with Tyson: Reyna complained that Tyson told him he has "had enough" of Reyna's complaints. App. 76 (*Id.* at 299:17-300:7). Explained below, Reyna has produced dozens of hours of recordings secretly taken at Epiroc, many involving conversations with Tyson. None of them come close to substantiating Reyna's claim.

**E.    Reyna has refused to meaningfully cooperate in Epiroc's investigations; Epiroc has never substantiated any of Reyna's complaints.**

Reyna made his first complaint in March 2021 to Human Resources Generalist Reagan Francis. *See* App. 332-335; 298 (Buttacavoli Dep. Ex. 1; Buttacavoli Dep. 113:13-26). Francis reported to Human Resources Manager Tanya Tyler. App. 282 (Buttacavoli Dep. 48:5-7). Francis investigated Reyna's claims and spoke to Buttacavoli and Gudgel. App. 281, 276-281, 266 (*Id.* at 44:5-8, 23-45:9; Gudgel Dep. Ex. 14). None of Reyna's claims could be substantiated. App. 283-284, 299-300; 359 (Buttacavoli Dep. 50:9-11, 56:13-16, 116:10-20, 119:3-10; *see* Buttacavoli Dep. Ex. 9). Frances left Epiroc in 2021, and was replaced by Farnsworth. App. 282 (Buttacavoli

Dep. 47:19-22). Farnsworth also investigated Reyna's complaints, and substantiated none. App. 538, 287-280, 318, 320 (Farnsworth Dec. at ¶ 10; Buttacavoli Dep. 69:15-24, 70:7-16, 192:8-15, 198:1-16; *see* App. 258-259 (Gudgel Dep. Ex. 8, 9). Tyson joined Epiroc in November 2022, and replaced Tyler, who left Epiroc in mid-2022. App. 429 (Tyson Dep. 6:6-13).

Tyson, too, investigated Reyna's complaints, although a vast majority occurred prior to Tyson's hire. App. 438-439, 390, 328 (*Id.* at 45:2-46:11; Chung Dep. 85:3-13; Buttacavoli Dep. 231:16-21). Many of the conversations between human resources and Reyna are evidenced in dozens of hours of recordings surreptitiously taken by Reyna and produced in this lawsuit. None of the recordings reveal any wrongdoing by Gudgel or anyone else at Epiroc. Instead, the recordings show that Epiroc repeatedly attempted to investigate Reyna's barrage of complaints. Reyna refused to meaningfully cooperate in these discussions. To this day, Epiroc has never substantiated any of Reyna's complaints.

For example, in one recording, Tyson repeatedly asks Reyna to provide names of individuals with knowledge of the complaints he is raising to allow Tyson "to conduct an investigation and validate what [Reyna] is saying." App. 516, 521 (December 7, 2022 Recording at 12:25-13:15, 30:6-25). Reyna refuses to cooperate, claiming he is "afraid":

> Tyson: Who—if you want me to find resolution to this, who—who harassed you or discriminated against you on the 17th?
>
> Reyna: I'm afraid.
>
> Tyson: Was it a leader?
>
> Reyna: I'm just afraid.
>
> Tyson: Well, can you tell me why you believe they harassed you? And what did— what did that look like?
>
> Reyna: I know—

> Tyson: Don't even give me the names, but what did they do that—
>
> Reyna: I—I know harassment. I know retaliation. I know—I know intimidation when people do it, you know, I—I know.
>
> Tyson: But what did they do specifically do you that day? Don't—forget the name. What did they do?
>
> Reyna: I don't know. I just been through so much, you know.

*Id*. at 31:6-25. Tyson has "spent many hours with Mr. Reyna, and in those he refused to give [Tyson] any witnesses or give [him] any information where [Tyson] could follow a lead." App. 451, 472 (Tyson Dep. 94:1-6, 179:14-17, 181:1-7). In further attempt to engage Reyna, Tyson gave Reyna his personal cellphone number and instructed Reyna to call immediately if anything happens, ensuring Reyna that he will "come back in tonight" and "we can address it tonight." App. 517 (December 7, 2022 Recording at 16:16-22). Tyson stressed, "the only reason I'm giving you my personal number is because if anybody retaliates, you have my permission to call me. That's— that's how serious I am about retaliation." App. 518 (*Id*. at 18:8-13). Reyna never called.

This pattern continued when others at Epiroc tried to resolve Reyna's issues. For instance, Buttacavoli and Tyler met with Reyna and several occasions to discuss possible solutions to his perceived mistreatment. Reyna refused to provide details of his complaints and refused efforts to fix his alleged problems with Gudgel:

> Buttacavoli: Trying to deal with this in the most positive way possible. We're trying to help you. We want to resolve this situation.
>
> Tyler:  Edgar, who should we talk to?
>
> Reyna: I don't—I mean, I don't know. I just don't want to—I'm just in fear, like I told you, you know. I don't want to talk about it to nobody.

App. 500 (April 21, 2022 Recording at 16:17-24). Buttacavoli then asked Reyna that since his issues involved Gudgel, if it would "help you at all if we were able to move you to work under

Earl in the same capacity as an assembler? You know, with the same duties and responsibilities, just working under a different supervisor?" *Id.* at 14:13-20. Reyna declined. App. 48 (Reyna Dep. 186:13-17).

In another recording, Tyson reiterated that he is unable to substantiate any of Reyna's claims. App. 530 (February 10, 2023 Recording at 3:7-10). Reyna refused to provide evidence to Tyson, and stated generally that "[t]hese guys" attack minorities, despite the fact that, as Tyson pointed out, "[a]lmost everybody out there [in the facility] is a minority." *Id.* at 3:7-22. Indeed, Reyna identified at least ten other Hispanic Assemblers on his team, none of whom ever complained to have experienced the same alleged discrimination as Reyna. *See* App. 24-25 (Reyna Dep. 92:1-94:25). Tyson explained to Reyna that he is the "only one" who has ever complained to him about Gudgel, and Tyson told Reyna to "encourage your other friends to come and speak to me too, if they're having the same experience." App. 533-534 (February 10, 2023 Recording at 14:2-7, 16:17-19, 19:4-6). None did. Despite its efforts to investigate, Epiroc has never substantiated any of Reyna's allegations. *See* App. 470, 538 (Tyson Dep. 173:23-25; Farnsworth Dec. at ¶ 10).

## IV.    <u>SUMMARY JUDGMENT STANDARDS</u>

Summary judgment is warranted if the pleadings, discovery, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact but is not required to negate elements of the nonmoving party's case. *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)). Rather, the movant may satisfy its burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S.

at 325; *see Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, No. 05-1978, 2006 WL 2548166, at *3 (E.D. La. Aug. 31, 2006) ("the nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial"), adopted by 520 F.3d 409 (5th Cir. 2008).

To show summary judgment is inappropriate, the nonmovant is required to go beyond the pleadings and designate specific facts that prove the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Only evidence – not argument, not facts in the complaint – will satisfy the burden." *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) (quoting *Solo Serve Corp. v. Westowne Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991)) (internal quotations omitted). A plaintiff must set forth *specific facts* showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Merely discrediting the movant's testimony is not sufficient. *Id*.

Unsubstantiated assertions of unlawful conduct are not summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). Most notably, conclusory allegations and subjective beliefs of discrimination and retaliation are insufficient to defeat summary judgment. *Lowery v. Allstate Tex. Lloyd's, Inc.*, No. 3:06-cv-1886-L, 2007 WL 4208476 (N.D. Tex. Nov. 29, 2007) (internal citations omitted); *see also McCoy v. Tex. Instruments, Inc.,* 183 S.W.3d 548, 555 (Tex. App.—Dallas 2006, no pet.) ("An employee's subjective belief of discrimination or retaliation, no matter how genuine, cannot serve as the basis for judicial relief."). Summary judgment should be granted "not only when the non-movant presents no evidence, but also when there is not a sufficient conflict in substantial evidence to create a jury question." *Scott v. University of Miss.*, 148 F.3d 493, 504 (5th Cir. 1998). "A mere scintilla of evidence is insufficient to present a question for the jury." *Id*.

## V.    ARGUMENTS AND AUTHORITIES

Epiroc moves for summary judgment on all of Reyna's claims.

**A.    Summary judgment is warranted on Reyna's claims of national origin discrimination, harassment, and retaliation pursuant to Section 1981.**

Reyna alleges claims against Epiroc for national origin discrimination, harassment, and retaliation pursuant to Section 1981. *See* Dkt 21 at ¶¶ 36-46, 58-63. Summary judgment is warranted on these claims because Section 1981 is "restricted to racial discrimination." *Kathy Nguyen v. Brink's, Inc.*, 2019 WL 130284, at *2 (N.D. Tex. Jan. 8, 2019) ("Section 1981 does not allow relief for national origin discrimination"); *see Ingram v. Papa John's Int'l, Inc.*, 171 F. App'x 439, 441 (5th Cir. 2006). Accordingly, Reyna's claims based on his national origin pursuant to Section 1981 must be dismissed with prejudice.

**B.    Summary judgment is warranted on Reyna's failure to promote claim pursuant to Title VII, the TCHRA, and Section 1981.**

The Court should grant summary judgment on Reyna's Title VII and TCHRA failure to promote claim as it is clearly time-barred. In addition, Reyna's Section 1981 failure to promote claim is subject to dismissal as he has no evidence to establish a *prima facie* case, and no evidence of pretext.

### 1.    Reyna's failure to promote claim is time-barred under Title VII and the TCHRA; the Court must apply the Section 1981 "but-for" standard.

Reyna claims Epiroc failed to promote him to a Leadman position in 2021. This claim is time-barred pursuant to Title VII and the TCHRA. Case law is clear that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180– or 300–day time period after the discrete

discriminatory act occurred." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061, 2072, 153 L. Ed. 2d 106 (2002).

The first six of Reyna's nine charges of discrimination were assigned Charge No. 450-2021-05571. *See, e.g.*, App. 105-106 (Reyna Dep. Ex. 7). The other three charges had a different charge number. In his first charge, filed on November 2, 2021, Reyna alleges he was "not hired for job positions." *Id*. This is Reyna's only charge that alleges a claim of failure to promote. On October 27, 2022, Reyna received a Determination and Notice of Rights on Charge No. 450-2021-05771, requiring him to file suit on or around January 25, 2023 or lose his ability to pursue these claims. App. 538 (Farnsworth Dec. Ex. A). Reyna did not file suit.

Accordingly, Reyna's failure to promote claim is foreclosed under Title VII and the TCHRA, and Reyna must proceed on his failure to promote claim pursuant to Section 1981. The "U.S. Supreme Court has ruled that a plaintiff alleging race discrimination under Section 1981 must plead and has the ultimate burden to show that race was the *but-for cause* of the plaintiff's injury." *Golatt v. Perot Museum of Nature & Sci.*, 659 F. Supp. 3d 745, 751 (N.D. Tex. 2023) (Lindsay, J.) (internal citations and quotations omitted). While the *McDonnell* burden-shifting framework is still applicable, "a plaintiff must demonstrate that, but for the defendant's unlawful conduct, [his] alleged injury would not have occurred." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327 (2020).

To establish a prima facie case of discrimination based on a failure-to-promote theory, Reyna must show that "(1) he was not promoted, (2) he was qualified for the position he sought, (3) he fell within a protected class at the time of the failure to promote, and (4) the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote the plaintiff because of his race." *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346–47 (5th Cir.

2013) (*citing Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir.2002)). If Reyna is successful, the burden shifts to Epiroc to produce a legitimate, nondiscriminatory justification for its actions. *Price*, 283 F.3d at 720. Then, the burden shifts back to Reyna to establish that Epiroc's proffered reason is not true, but is instead a pretext for intentional discrimination. *Id*. "On summary judgment, in this third step, [Reyna] must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of [Epiroc's] decision." *Id*.

### 2. Reyna has no evidence he was qualified for Leadman, and no evidence Epiroc failed to promote him because of his race.

The Leadman position is "the backbone of [Epiroc's] production organization." App. 294 (Buttacavoli Dep. 95:1-96:20). Epiroc relies heavily on Leadman to "coordinate the work effort" and assume leadership when it comes to "pushing hard to get the rigs completed." *Id*. Leadmen are responsible for testing and troubleshooting assemblies, and make any necessary adjustments, depending on the particular needs of the business. App. 546 (Buttacavoli Dec. at ¶ 3). In 2021, Leadman Mark Crotzer resigned his employment, creating a vacancy. *Id*. Crotzer was a certified tester and, in his Leadman role, he was responsible for making sure the rigs on the Flow Line completed final assembly on time and safely. *Id*. Crotzer was also responsible for rigs starting up for the first time and for leading his team to execute all of the processes from final assembly through testing. *Id*. Accordingly, Mr. Buttacavoli needed to promote a new Leadman who could perform these responsibilities in place of Crotzer. *Id*.

Reyna was not qualified for this Leadman position, nor does he have evidence that he was. Critically, Reyna was not a certified tester, and did not have the technical knowledge needed to fill the void left by Crotzer. App. 224-225, 389, 546 (*Id.*; Gudgel Dep. 173:14-174:3; Chung Dep. 80:12-20). Reyna "couldn't even start [a machine] up…much less run it and test it." App. 224-225 (Gudgel Dep. 173:14-174:3). In addition, Reyna did not possess the leadership qualities that Epiroc

needed for a team lead. App. 294 (Buttacavoli Dep. 95:1-96:20). Buttacavoli explained it was "hard" to get Reyna to work overtime, which is voluntary, but "he always denied our request to—to work overtime at to time. And that's a vital piece to—to being a team lead is to be able to come in and really push to get these rigs out the door…" *Id*. Reyna also declined several offers to take trainings to advance his knowledge, including a Tester training in 2023. App. 124-125, 380 (Reyna Dep. Ex. 10; Chung Dep. 44:7-15).

Not only does Reyna lack evidence he was qualified for the Leadman role, he certainly has no evidence that Chris Huong, the person Buttacavoli chose for the position, was not qualified or that Reyna was far more qualified than he. Hoang was already a certified tester at the time he applied for the Leadman role. App. 224-225, 389 (Gudgel Dep. 173:14-174:3; Chung Dep. 80:12-20). He knew how to "run the machines" and he had been "through all the training on how to operate" them. *Id*. Hoang, therefore, could easily transition into the Leadman as he already possessed all of the technical and leadership skills required. App. 546 (Buttacavoli Dec. at ¶ 3). According to Buttacavoli, Hoang "understood the demands of what it took to be a lead" and he was "very open to working overtime." App. 294, 295-296 (Buttacavoli Dep. 95:1-96:20, 101:20-102:9, 105:2-4). The decision to hire Hoang over Reyna was a "no brainer," and had nothing to do with Reyna's race. App. 224-225 (Gudgel Dep. 173:14-174:3). *See Reed v. CenterPoint Energy, Inc.*, 2018 WL 2170320, at *6 (S.D. Tex. May 10, 2018) (granting summary judgment because the plaintiff had no evidence that she was denied promotional opportunities based on her race).

### 3.     Reyna has no evidence of pretext.

Epiroc easily establishes a legitimate, non-discriminatory reason for passing Reyna over for promotion because there was a much more qualified candidate for the job. *Patrick v. Ridge*, 394 F.3d 311, 319 (5th Cir.2004) ("[C]hoosing some other candidate because he is the best-qualified individual for the job is generally a legitimate, nondiscriminatory reason for an adverse

employment action."). Reyna has no evidence Buttacavoli was motivated by discriminatory animus when he selected Huong for promotion. Courts have found "pretext on a showing that the unsuccessful employee was 'clearly better qualified' than the successful candidate. *Autry*, 704 F.3d 344, 347—48 (5th Cir. 2013) (granting summary judgment on the plaintiff's failure to promote claim when the plaintiff "had never met [the other candidate]" and did not know how [the other candidate] performed in her interview").

In addition to the fact that *Huong*, not Reyna, was *clearly* the better candidate for the job, logic dictates that Reyna's race played no role in the promotion decision. Reyna testified he believed Gudgel made the promotion decision, and that Gudgel intended to discriminate against him. App. 34-35 (Reyna Dep. 133:3-9, 134:14-17). Gudgel approved the decision to hire Reyna, belying a claim of discriminatory intent. *Spears v. Patterson UTI Drilling Co*., 337 F. App'x 416, 422 (5th Cir. 2009). In addition, Reyna testified he interviewed with Gudgel, and he "passed" that interview. App. 35 (*Id.* at 137:4-9). Reyna then believes, without explanation, that Gudgel had a change of heart, and decided to hire Hoang, who Reyna said is from Vietman, despite the fact that Reyna feels Gudgel discriminates against Asian employees, in addition to Hispanic employees. App. 34-35, 36, 49 (*Id.* at 133:8-9, 134:4-9, 140:14-17, 141:1-7, 192:1-9). First, Gudgel did not promote Hoang; Buttacavoli did, and Reyna has no evidence that Buttacavoli was in any way motivated to make the promotion decision out of racial animus against Reyna. Second, even if Gudgel made the decision to promote Hoang, if Gudgel was intent on discriminating against Reyna, he would not have "passed" him on the interview, or promoted a member of another minority whom Reyna claims Gudgel dislikes. Hoang was clearly more qualified for the Leadman position than Reyna, and he was selected for the promotion for that reason alone.

**C.      Summary judgment is warranted on Reyna's claims of national origin discrimination pursuant to Title VII and the TCHRA, and race discrimination pursuant to Title VII, the TCHRA, and Section 1981.**

**1.      Discrimination standards.**

In the context of employment discrimination, "direct evidence" includes any statement or document that shows on its face that an improper criterion served as a basis for the adverse employment action and evidence that the person with decision-making authority took into consideration an improper motive. *Jackson v. Corp. Serv. Co.*, No. CV H-11-4404, 2013 WL 11309365, at *8 & n. 3 (S.D. Tex. Apr. 17, 2013) ("[d]irect evidence is rare and only encompasses a small universe of evidence: 'statements or documents which show on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action are direct evidence of discrimination,' and evidence that persons with decision–making authority evince racial animus constitute direct evidence of discrimination").

Reyna has no direct evidence of discrimination of any kind. Accordingly, he must establish his claims by circumstantial evidence using the three-part *McDonnell Douglas* approach. *Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 272 (5th Cir. 2006). Pursuant to this framework, Reyna must present a *prima facie* case of discrimination, which requires him to establish that he: (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated less favorably than those outside the protected class. *Rutherford v. Harris County*, 197 F.3d 173, 184 (5th Cir. 1999); *Davis v. RealPage, Inc., No.* 3:18-CV-0986-D, 2020 WL 1325201, at *8 (N.D. Tex. Mar. 20, 2020) ("The framework applicable to Davis' race discrimination claims under § 1981 and the TCHRA is the same as applied to Title VII claims").

If Reyna establishes a *prima facie* case, then the burden shifts to Epiroc to articulate a legitimate, non-discriminatory reason for its actions. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir.2001). Once Epiroc satisfies this burden of production,

the burden shifts back to Reyna to make an "ultimate showing of intentional discrimination." *Reed*, 701 F.3d at 439. Reyna can make this showing by demonstrating that the reason stated by Epiroc was a pretext for discrimination. *See id*. If Reyna fails to make such a showing, then his claims fail. *Frank v. Xerox Corp.*, 347 F.3d 130, 137 (5th Cir. 2003). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143 (2000) (alteration in original) (internal quotations omitted).

### 2.    Reyna has no evidence to establish discrimination.

Reyna's discrimination claims fail because he has no evidence to establish the third or fourth element of his *prima facie* case, nor can Reyna establish pretext. Accordingly, summary judgment is warranted.

#### i.    *Reyna has not suffered any adverse employment action.*

In August 2023, the Fifth Circuit expanded the types of actionable adverse employment actions under Title VII and Section 1981. *See Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023); *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 429 n.3 (5th Cir. 2023) (confirming that *Hamilton* applies to claims brought under 42 U.S.C. § 1981). Shortly thereafter, the Fifth Circuit clarified in *Harrison* that an adverse employment action requires: "(1) employment discrimination—the 'adversity' requirement—that (2) causes the plaintiff a non-de minimis injury—the 'materiality' requirement." *Fleming v. Methodist Healthcare Sys. of San Antonio, Ltd*., L.L.P., 2024 WL 1055120, at *12 (W.D. Tex. Mar. 11, 2024) (*citing Harrison*, 82 F.4th at 430). The actions complained of by Reyna fail this test.

a)     **Reyna has no evidence to establish the "adversity" requirement.**

Given that Reyna is a current employee who has not even had so much as a formal write-up issued against him throughout his tenure at Epiroc, the most severe conduct claimed by Reyna is that he was denied overtime work. But Reyna cannot met the "adversity" requirement of the *Harrison* test, as he has no evidence he was actually denied any overtime opportunities.

At Epiroc, overtime is given on a voluntary basis. App. 69 (Reyna Dep. 270:24-271:8). Reyna admitted he was ineligible for overtime during the period he worked light duty, from approximately January 24, 2022 through November 21, 2022. *Id.* at 272:22-24. Then, Reyna claims Nguyen said that if Reyna wanted to work overtime, he needed to ask Lang, which Reyna testified he did not do. App. 69-70 (*Id.* at 273:5-13, 23-24; 275:15-19). On one occasion, on March 24, 2023, Reyna alleges Nguyen said he could not work overtime because he "didn't have the knowledge." App. 74 (*Id.* at 290:12-16). The record negates this claim. Buttacavoli selects the rigs that need to be worked on weekends. App. 286 (Buttacavoli Dep. 64:12-21). On March 24, 2023, Reyna was assigned Rig 91110. App. 548 (Nguyen Dec. at ¶ 4). Rig 91110 was not one of the rigs that needed work on that particular weekend, and accordingly, overtime work was not available to Reyna. *Id*. Other than this, Reyna said he could not recall any other time when he wanted to work overtime, but was denied the opportunity. App. 45 (Reyna Dep. at 175:20-25).

According to Buttacavoli, Epiroc "had a hard time getting [Reyna] to work overtime," and "he always denied [the] request to—to work overtime at the time." App. 294 (Buttacavoli Dep. 95:20-96:2). As Reyna has no evidence he actually requested to work overtime and Epiroc denied his request, his claim fails as a matter of law.

b)     **Reyna's allegations are *de minimis*.**

The materiality requirement ensures that the Fifth Circuit's relaxed definition of adversity will not "transform Title VII into a general civility code for the American workplace." *Hamilton*,

79 F.4th at 504–05 (quoting *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 80 (1998)). The challenged action must not only "involve[ ] a meaningful difference in the terms of employment" but also "injure[ ] the affected employee." *Harrison*, 82 F.4th at 431 (citing *Threat v. City of Cleveland*, 6 F.4th 672, 678 (6th Cir. 2021)).

To help define the bounds of its ruling, the *Hamilton* Court cited in a footnote a series of cases in other circuits identifying the reach of Title VII with respect to workplace issues. While the Court, in explanatory parentheticals, highlighted the language these courts used as a threshold for liability (e.g., "materially adverse" or "serious and tangible enough") a closer reading of these cases also reveal the types of *de minimis* harms that fall outside the scope of even the Court's expanded reading of Title VII. For example, in *Morales-Vallellanes v. Potter*, 605 F.3d 27, 38 (1st Cir. 2010), the court found an employer's temporary rotation of an employee's preferred distribution duties to a female clerk was not a materially adverse employment action. In *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004), the court held "the mere fact that a new job assignment is less appealing to the employee…does not constitute adverse employment action." In *Threat*, 6 F.4th at 679, the court found that employer-required shift changes from one day to the next, while not preferable, do not exceed a *de minimis* threshold.

The Court should join these courts in refraining from allowing *Hamilton* to require federal judicial supervision over routine human resource matters. The only issue that could plausibly rise to the level of being actionable is Reyna's claim that he was denied overtime work. This fails for other reasons. There are a host of other petty and trivial complaints raised by Reyna that must not be viewed as meeting the *de minimis* threshold. For example, Reyna complains he was not given popsicles; he was watched; accused of taking tools because someone yelled his name; and Gudgel

yelled at him to put his safety glasses back on.[3] None of these allegations caused Reyna injury or negatively impacted his terms or conditions of employment. *Fleming*, 2024 WL 1055120, at *12 (W.D. Tex. Mar. 11, 2024) (finding that reassignment of job duties, and removal of job duties, that had no effect on the plaintiff's title, compensation, or other terms and condition of employment); *Sambrano v. United Airlines, Inc.*, No. 4:21-CV-1074-P, 2023 WL 8721437, at *4 (N.D. Tex. Dec. 18, 2023) (internal citations omitted) (holding that while "an injury need not be an economically adverse employment action to satisfy the *de minimis* threshold…the *de minimis* standard prevents judges from supervising the 'minutiae of personnel management'").

To be sure, if a plaintiff has a federal lawsuit available to adjudicate these trivial matters, there would be no end to this type of litigation. These petty issues must be left to the company to handle instead of morphing courts into a "super personnel department[]." *Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, 745 F. App'x 209, 214 (5th Cir. 2018). Simply put, "[t]he law does not take account of trifles," and trifles are precisely what Reyna alleges here. *Sambrano*, 2023 WL 8721437, at *4.

### ii.    *Reyna has no evidence that he was treated less favorably than those outside of his protected class.*

In analyzing the text of Title VII, the *Hamilton* court reinforced that, fundamentally, a plaintiff must establish (1) an adverse employment action (newly defined above), (2) taken against a plaintiff *because of* a protected status.[4] *Hamilton*, 79 F.4th at 502 (internal citations omitted). This language has been applied to a burden-shifting test, first described in *McDonnell Douglas*

---

[3] Reyna could not recall the names of any of the Caucasian workers whom he believed were spared of Gudgel's yelling, and admitted he was working in an entirely different area as the Caucasian employees in question. App. 67 (Reyna Dep. 263:15-22; 264:15-265:3, 16-18).
[4] While the *Hamilton* decision decided issues involving a 12(b)(6) Motion to Dismiss, the principles can be, and have been, applied to motions for summary judgment. In addition, *Hamilton* did not revise the standard of proof to show that an action occurred *because of* a protected status, and only focused on the first prong identified above.

*Corp. v. Green*, 411 U.S. 792 (1993), and set out above, to determine if Title VII has been violated. The fourth prong of the test analyzes whether conduct was taken against a plaintiff *because of* a protected status. Even if the Court finds that Reyna established he suffered an adverse employment action under *Hamilton*, Reyna has no competent summary judgment evidence to support even an inference of discrimination on account of his race or national origin.

Reyna contends the discrimination against him began in July 2018, when Gudgel refused to provide Reyna with extra tickets to the company picnic. Reyna claims he informed Gudgel he wanted to bring his aunts, uncles, and cousins, and that Gudgel laughed. App. 84-85 (Reyna Dep. 330:15-17).[5] Reyna also claims Gudgel said "yeehaw" in response to Reyna playing "Spanish music" during work. *Id*. at 331:18; 334:10-12. From these two incidents, Reyna extrapolated that nearly every action taken by Gudgel against over the next several years resulted from race and national-origin based animus.

But Reyna contradicts himself. It is Reyna's belief that Gudgel discriminates against Black, Asian, and Hispanic workers. App. 49 (Reyna Dep. 192:1-9). Yet, Reyna testified Gudgel did *not* discriminate against Lang, who is Black, Chung and Nguyen, who are Asian, and he has no evidence that any of the other Hispanic Mexican employees on his team received the same alleged unfavorable treatment as he claims. *Id*. at 192:1-9; 193:20-25.

---

[5] Again, none of Reyna's complaints were ever substantiated. According to Gudgel, since he hired Reyna, Gudgel had seen Reyna out of his work area "a couple of times." App. 194-195 (Gudgel Dep. 50:19-20, 53:12-17). The day Gudgel asked his team if anyone needed extra tickets to Hawaiian Falls, Gudgel again saw Reyna out of his work area. *Id*. at 54:18-55:24. When Reyna saw Gudgel, he went into the bathroom. *Id*. at 55:2-6. After Reyna left the bathroom, Gudgel ask what Reyna was doing, and Reyna "immediately started getting real defensive" and said "Why are you asking me this," and "You're just picking on me because, you know, of my race and everything." *Id*. at 55:18-56:25. Gudgel asked Reyna why he went to the restroom 200 yards away from his work area and not the restroom right across from his work area. App. 195-196 (*Id*. at 57:17-58:10. Reyna was upset and said he could use whichever restroom he wanted. *Id*. Gudgel does not recall any conversation about Reyna bringing his family to Hawaiian Falls, and he categorically denied ever prohibiting Reyna from using the restroom. App. 197-198 (*Id*. at 62:4-63:3, 66:3-7).

Reyna certainly has no evidence that even if true, any of the conduct alleged occurred because he identifies as a Hispanic Mexican. Regarding Reyna's claim that he was denied overtime, Reyna admitted he has no knowledge of how overtime was actually assigned. App. 69 (*Id.* at 271:21-272:3). He also admitted Gudgel approved him to work "some" overtime. *Id.* at 273:5-8. When asked why Gudgel would approve some overtime for Reyna if he intended to discriminate against him, Reyna responded, "I don't know." App. 70 (*Id.* at 276:12-15). In a similar vein, the only reason Reyna believes Nguyen told Reyna to ask Lang for overtime (which, again, Reyna did not do) is because Nguyen has "seen" Gudgel discriminate against him, so "he feels comfortable doing it." App. 74 (*Id.* at 291:13-18). This purported evidence fails to defeat summary judgment.

Reyna has produced no evidence that he was "qualified for specific overtime opportunities or evidence that similarly situated, non-[Hispanic] individuals were treated differently." *Brooks v. Firestone Polymers, L.L.C.*, 640 F. App'x 393, 398 (5th Cir. 2016) (affirming summary judgment on the plaintiff's race discrimination claims because, among other reasons, the plaintiffs "failed to raise a fact issue as to whether these individuals were truly similarly situated with respect to any denial of training or overtime as compared to Plaintiffs"). According to Buttacavoli, Epiroc *wanted* Reyna to work overtime; he refused. App. 294 (Buttacavoli Dep. 95:1-96:20). Reyna has no evidence to the contrary. *Anderson v. Venture Express*, 694 F. App'x 243, 247 (5th Cir. 2017) (affirming summary judgment on the plaintiff's race discrimination claim because the plaintiff "has failed to identify any similarly situated members outside his protected class who were treated more favorably than he"); *Edwards v. Senatobia Mun. Sch. Dist.*, 549 F. App'x 259, 261 (5th Cir. 2013) (affirming summary judgment on the plaintiff's race discrimination claim because the plaintiff "has neither argued nor offered any evidence showing that the School District treated a

similarly situated non–African–American employee more favorably than [plaintiff], hence, he has not established a prima facie case of discrimination").

Next, Reyna complains that Epiroc assigned him light duty cleaning work while another employee, Eric Griffin, who is Caucasian, performed light duty office work. App. 59 (Reyna Dep. 231:15-28). But Griffin is not similarly situated to Reyna in any respect. To satisfy the "similarly situated" requirement, the circumstances of the plaintiff and her comparator must be more than similar, they must be "nearly identical." *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007). The "alleged comparator employees [must have been] similarly situated from the perspective of their employer at the time of the relevant employment decisions[.]" *Perez v. Texas Dep't of Criminal Justice*, 395 F.3d 206, 210 (5th Cir. 2004). Griffin worked in a different department, on a different shift, performed a different job, and reported to a different supervisor. App. 59 (*Id.* at 230:20-231:7). Reyna also has no knowledge of Griffin's workplace restrictions or duration, or if Griffin was ever tasked to perform any other type of light duty outside of office work. *Id*. at 231:21-25.

Nor does Reyna have evidence that his other complaints of petty slights and trivial actions—even assuming he had evidence to support they occurred in the first place, which he does not—were taken because of his protected characteristics. All of Reyna's supposed evidence of discrimination is based on assumption, hearsay, and innuendo, none of which is competent evidence to defeat summary judgment. *Moore v. Cricket Commc'ns, Inc*., 764 F. Supp. 2d 853, 857 (S.D. Tex. 2011) ("Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence.").

### iii.    *Reyna has no evidence to establish pretext by Epiroc.*

Summary judgment is clearly warranted on Reyna's discrimination claims for the reasons articulated above. In addition, the Court should grant summary judgment because Reyna cannot satisfy his burden to show pretext by Epiroc.

Reyna's allegations of discrimination target Gudgel and others in management whom Reyna believes fell under Gudgel's spell. Gudgel approved the decision to hire Reyna, knowing his race and national origin. Accordingly, a presumption exists that Gudgel was not motivated by any animus with respect to his conduct towards Reyna. *Spears*, 337 F. App'x at 422. Gudgel, at all times, "wanted the best for [Reyna]," and he "tried everything in the world to be a friend and help [Reyna] get to where he needed to be." App. 206, 226 (Gudgel Dep. 98:25, 178:2-4). In addition, Reyna identified ten other Hispanic Assemblers on his team, none of whom ever made complaints similar to Reyna's, further underscoring the fact that no one at Epiroc has treated these employees less favorably on account of their race or national origin. App. 24-25 (Reyna Dep. 92:1-94:25).

The recordings secretly taken by Reyna prove that no pretext exists for any of Epiroc's actions. For example, in a recording taken in April 2022, Buttacavoli and Tyler repeatedly told Reyna they wanted to "resolve your issues," "help you through this whole thing" and they did not want Reyna "uncomfortable at work." App. 498 (April 21, 2022 Recording at 6:8-19). They stressed that "first and foremost," Reyna's "finger[] is the most important thing" and they wanted to make sure his "wellbeing is taken care of." App. 501 (*Id*. at 18:15-20). They offered for Reyna to no longer work under Gudgel, and instead, to work for Lang "with the same duties and responsibilities…[s]ame shift, same pace, same everything." App. 500 (*Id*. at 14:15-20). Reyna declined. App. 48 (Reyna Dep. 186:13-17). They pleaded, "How can we try to resolve this issue for you? And if it exists for you, if it exists for somebody else, whoever it is, we want to be

responsive to that. That's all we're trying to do is let's—how can we fix this problem." App. 501 (April 21, 2022 Recording at 21:15-19). Reyna refused to cooperate. *See id. generally*.

Reyna's unwillingness to fix the issues he perceived does not equate to Epiroc holding discriminatory animus against him. It establishes the contrary; that Epiroc has, at all times, acted in Reyna's best interest.

**D.    Summary judgment is warranted on Reyna's claims of national origin harassment pursuant to Title VII and the TCHRA, and race harassment pursuant to Title VII, Section 1981, and the TCHRA.**

Reyna next contends Epiroc subjected him to harassment based on his national origin and race. To establish a claim of hostile work environment, Reyna must prove he: (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race or national origin; and (4) the harassment complained of affected a term, condition, or privilege of employment. *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 479 (5th Cir. 2008). Courts use the same legal framework to analyze claims brought under Title VII and Section 1981. *Jones v. Dallas Cnty.*, 47 F. Supp. 3d 469, 483 (N.D. Tex. 2014). "Similarly, the law governing claims under the TCHRA and Title VII is identical." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n. 2 (5th Cir.1999) (citation omitted).

Harassment affects a "term, condition, or privilege of employment" if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id*. (quotations and citations omitted). Workplace conduct "is not measured in isolation." *Id*. (quotations and citations omitted). In order to deem a work environment sufficiently hostile, "all of the circumstances must be taken into consideration." *Id*. This includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. (quotations and citations omitted). To be actionable, the work

environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citations omitted).

### 1. Reyna has no evidence that any alleged harassment was based on his national origin or race.

Summary judgment is warranted on Reyna's harassment claims because he has no evidence that any actions taken by anyone at Epiroc, even if considered harassing, were because of his race or national origin. Repeated above, Reyna has no actual evidence of discrimination of any kind. He simply believes that because Gudgel purportedly laughed when Reyna said he wanted to bring his aunts and uncles to Hawaiian Falls, Gudgel dislikes Mexican Hispanics. Case law is clear that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" Reyna's burden in a motion for summary judgment. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (quotation omitted). Epiroc's employee demographics are diverse, and many employees identify as Hispanic and/or Mexican, including at least ten members of Reyna's Assembly team. App. 24-25 (Reyna Dep. 92:1-94:25). It defies logic that Epiroc would harass Reyna, and just Reyna, as no one else has ever complained about harassment, only to leave the other employees who share the same protected characteristics completely unscathed.

Reyna's allegations of harassment pale in comparison to the kinds of harassment courts in this circuit have held could support a hostile work environment claim. Indeed, Courts have granted summary judgment on claims of hostile work environment even when conduct "could be characterized as race-based," such as references to the term "ghetto" and use of the "n" word, which Reyna's do not. *White v. Gov't Emps. Ins. Co*., 457 F. App'x 374, 381 (5th Cir. 2012); *Gibson v. Verizon Servs. Org., Inc*., 498 F. App'x 391, 394 (5th Cir. 2012) (granting summary judgment because the plaintiff produced no evidence of gender or race-based actions); *Johnson v.*

*TCB Const. Co.*, 334 F. App'x 666, 671 (5th Cir. 2009) (granting summary judgment on plaintiff's race-based hostile work environment claim because the plaintiff "offers no evidence that either [the supervisor] allegedly forcing him to go to the bathroom in the woods or his statement that [plaintiff] was "ugly" and "an old hermit" was based on race). The record establishes that no harassment of any kind happened to Reyna, and certainly nothing on account of his race or national origin.

### 2. Reyna has no evidence that any alleged harassment affected a term, condition, or privilege of his employment.

As detailed above, Reyna cannot identify any concrete adverse action that affected his employment. Reyna has never been subjected to a termination or reprimand, and he is still employed in the same role earning more than he did at hire. App. 13, 538 (Reyna Dep. 46:10-47:12; Farnsworth Dec. at ¶ 14). None of Reyna's allegations involve physical threats, humiliating, or offensive conduct. Even in the aggregate, the conduct does not "transform what was an otherwise insufficient case of a hostile work environment…into one that could survive summary judgment." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012). Reyna's claims of harassment clearly fail.

### E. Summary judgment is warranted on Reyna's claims of disability discrimination pursuant to the ADA and the TCHRA.

Reyna's disability discrimination claim has two parts: an allegation that Epiroc did not reasonably accommodate his disability, and an allegation that Reyna was subjected to an adverse employment action based on that disability. Epiroc is entitled to summary judgment as to both allegations.

### 1. Epiroc did not fail to reasonably accommodate Reyna.

Under the ADA, employers must make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an

applicant or employee," unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." 42 U.S.C. § 12112(b)(5). Accordingly, to recover on a failure-to-accommodate claim, Reyna must prove that (1) he is a qualified individual with a disability, (2) the disability and its consequential limitations were known by Epiroc, and (3) Epiroc failed to make reasonable accommodations for such known limitations. *Feist v. Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013). Epiroc is entitled to summary judgment because Reyna cannot establish the elements of his claim.

First, Reyna was not a "qualified individual," defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). To survive summary judgment, Reyna must show that (1) he could perform the essential functions of his job in spite of his disability, or (2) a reasonable accommodation of his disability would have enabled him to perform the essential functions of his job. *Burch v. City of Nacogdoches*, 174 F.3d 615, 619 (5th Cir. 1999) (citing *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996)). Reyna's finger injury prohibited him from using his left hand. App. 112-123 (Reyna Dep. Ex. 9). It is necessary for Assemblers to have use of both hands in order to perform the essential functions of their job. *See* App. 97-98, 536-537 (*Id.* at Ex. 4; Farnsworth Dec. at ¶ 5). *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) ("Courts owe deference to an employer's position description."). Thus, no accommodation could have allowed Reyna to perform the essential functions of his job. Accordingly, Reyna cannot show he was a "qualified individual," and summary judgment should be granted. *Claiborne v. Recovery Sch. Dist.*, 690 F. App'x 249, 255 (5th Cir. 2017) ("[A] disabled employee cannot perform her job with reasonable accommodation if the only reasonable accommodation is for the employee not to perform the essential functions of her job.").

Second, any contention that Epiroc failed to reasonably accommodate Reyna is undermined by Reyna's own testimony:

> Q:    At all times Epiroc accommodated your restrictions; correct?
>
> A:    Correct.

App. 45 (Reyna Dep. 175: 22-24). Reyna complains that Epiroc removed him from light duty work in July and November 2022, and "tried to force" him to work full duty before he was cleared to do so. As explained above, Reyna could not work as an Assembler. Under the law, Epiroc was not required to eliminate an essential job function, modify his work, or transfer him to another position. *Barber v. Nabors Drilling U.S.A., Inc*., 130 F.3d 702, 709 (5th Cir.1997) ("[T]he law does not require an employer to transfer from the disabled employee any of the essential functions of his job."); *Claiborne*, 2017 WL 2480724, at *4 (noting that reasonable accommodation does not require employer to "relieve the employee of any essential functions of the job" or "modify the actual duties"). As Reyna was not a "qualified individual," Epiroc had no duty to accommodate him at all. *Burch*, 174 F.3d at 621 (holding employer was not required to accommodate firefighter who could not fight fires); *Chiari v. City of League City*, 920 F.2d 311, 318 (5th Cir. 1991) (holding that the "City does not have to create a new job" for the plaintiff, and "therefore, it does not have to create a new part-time position for him").

Despite this, Epiroc *did* create light duty projects for Reyna to allow him to continue working. App. 41, 45 (Reyna Dep. 158:12-17, 175:22-24). In the summer 2022, Epiroc scaled back its operations due to reduced production needs, and the individuals Reyna was "training were starting to work pretty self-sufficiently," eliminating the need for Reyna to mentor. App. 307 (Buttacavoli Dep. 147:13-25). Accordingly, Epiroc informed Reyna on July 7, 2022 that as a result of the lull in work, Reyna's light duty position was no longer available. App. 141, 307 (Reyna

Dep. Ex. 18; Buttacavoli Dep. 147:13-25). Reyna requested, and Epiroc granted, FMLA leave beginning July 8, 2022. App. 61 (Reyna Dep. 241:10-12). Less than one month later, on August 4, 2022, Epiroc emailed Reyna about another available light duty assignment that could accommodate his restrictions beginning August 8, 2022. App. 143-145 (Reyna Dep. Ex. 20). Reyna failed to respond to this email for over one week. *Id*.; App. 63 (Reyna Dep. 246:5-18). Reyna then returned to work on August 17, 2022 on a new light duty project that required Reyna to document steps to assemble a certain type of rig. App. 64 (Reyna Dep. 250:15-23).

After Reyna concluded the documentation project, Buttacavoli consulted other managers, including Norton who managed Reyna's documentation project, to inquire about other light duty opportunities for Reyna. App. 307 (Buttacavoli Dep. 148:9-149:10). None were found, and as of November 14, 2022, Reyna went back out on leave. App. 66, 307 (Reyna Dep. 261:4-16; Buttacavoli Dep. 148:1-5). One week later, on November 21, 2022, Reyna's health care provider released Reyna to return to work with no restrictions. App. 66 (Reyna Dep. 261:4-16). Immediately, Epiroc placed him back in his Assembler role, where he still works today. App. 67 (*Id*. at 262:21-263:6).

Thus, the record establishes that Reyna received light duty assignments when available. Due to his substantial restrictions, Reyna was limited in the work he could perform. Yet, Epiroc strived to find projects and needs for Reyna to fulfill in order to keep him working. Reyna's claim that this somehow evidences Epiroc's failure to accommodate him is absurd.

Equally nonsensical is Reyna's claim that Epiroc tried to force him to work full duty before cleared by his doctor. Reyna's claimed evidence is refuted hearsay that cannot defeat summary judgment. *Walker v. SBC Servs., Inc.*, 375 F. Supp. 2d 524, 535 (N.D. Tex. 2005) (noting that "hearsay evidence, unless it falls within a recognized exception, is not competent summary

judgment evidence"). Specifically, Reyna claims that that Chung told Reyna that Gudgel told Chung that Gudgel wanted Reyna "to be working." App. 43 (Reyna Dep. 166:9-20). Reyna admitted he never heard this instruction from Gudgel directly. *Id*. Even if true, Gudgel's request for Reyna "to be working" does not equate to Reyna's allegation that Gudgel intended to force him to return to work at full duty prior to being cleared to do so.

### 2.    Epiroc did not discriminate against Reyna because of a disability.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). Where, as here, a plaintiff has no direct evidence of discrimination, a court analyzes the plaintiff's claim under the *McDonnell-Douglas* burden-shifting framework. Under this framework, Reyna must first establish a *prima facie* case of discrimination by showing that he (1) is disabled or is regarded as disabled, (2) is qualified for the job, (3) was subjected to an adverse employment action on account of his disability, and (4) was replaced by or treated less favorably than non-disabled employees. *Zimmer v. Sw. Bell Tel. Co*., 108 F. App'x 172, 173 (5th Cir. 2004). If Reyna can establish a *prima facie* case, the burden then shifts to Epiroc to articulate a "legitimate, non-discriminatory reason" for the adverse employment action. *Id*.  Thereafter, the burden shifts back to Reyna to show that (1) the defendant's proffered reason is a pretext for discrimination, or (2) the proffered reason is not the only reason for the defendant's conduct and that another "motivating factor" is the plaintiff's disability or perceived disability. *Id*. at 479-80.

### i.    *Reyna was not a qualified individual with a disability.*

As explained above, the Court's analysis can end here. Summary judgment is warranted on Reyna's claim of disability discrimination because he was not a qualified individual with a disability. *Appel v. Inspire Pharms., Inc*., 712 F. Supp. 2d 538, 549 (N.D. Tex. 2010), aff'd, 428

F. App'x 279 (5th Cir. 2011) (granting summary judgment because "Plaintiff is not qualified because she could not perform all of the essential requirements of Territory Manager").

> ### ii.    *Reyna has no evidence to support an adverse employment action.*

Reyna improperly refers to Epiroc's overtures to accommodate his restrictions by giving him cleaning work as a "demotion." The record establishes that Reyna, an Assembler who typically works using both hands, could not use one of his hands as a result of his injury. As a result, Epiroc created work for him to perform, which included cleaning, to allow him to continue earning his pay, which remained unchanged. App. 204, 536-537 (Gudgel Dep. 91:3-19; Farnsworth Dec. at ¶ 5). Thus, Reyna suffered no harm at all. As the Court in *Hamilton* articulated, "the mere fact that a new job assignment is less appealing to the employee...does not constitute adverse employment action." *Hamilton*, 79 F.4th at 502 (citing *James*, 368 F.3d at 376). While Reyna may *feel* that performing cleaning work was a demotion, "[a] Plaintiff's subjective beliefs are not sufficient to create an issue of fact." *Salinas v. AT&T Corp.*, 314 Fed. App'x. 696, 699 (5th Cir. 2009).

> ### iii.    *Reyna has no evidence he was replaced by or treated more favorably than non-disabled individuals.*

Reyna's disability discrimination claim fails for the additional reason that Reyna has no evidence that he was replaced by or treated less favorably than non-disabled employees. Reyna claims that while on light duty, he was told by coworkers that Epiroc hired an employee named Niko to replace him. App. 66 (Reyna Dep. 259:17-20). The record negates this claim. While Epiroc hired another Assembler at a time when Reyna was unable to perform the essential functions of that job, at all times Epiroc held Reyna's position open for him. Thus, immediately upon being cleared to return back to his position, Epiroc restored Reyna. App. 66-67 (*Id.* at 261:13-16, 262:21-263:3). To date, Reyna still works for Epiroc as an Assembler. *Id.*

Logic also contradicts Reyna's claim. In both 2020 and 2021, Reyna went out on a leave of absence to care for a back issue. App. 99-101, 102-104 (Reyna Dep. Ex. 5, 6). He was still reporting to Gudgel, and testified he had no issues taking this leave, no issues returning from the leave, and that Epiroc—including Gudgel—accommodated his restrictions. *Id.*, App. 22, 99-101, 102-104 (Reyna Dep. 82:13-20, 85:15-21, 83:7-16). It is nonsensical that Gudgel would treat Reyna in a favorable manner in 2020 and 2021, only to turn around and discriminate against him in 2022 as a result of a workplace injury. He did not; no one at Epiroc did.

**F.**   **Summary judgment is warranted on Reyna's claims of retaliation pursuant to Title VII, Section 1981, the TCHRA, and the ADA.**

To support his claims of retaliation, Reyna must bring forth evidence showing: "(1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Brown v. A.W. Brown-Fellowship Leadreship Acad.*, 2020 WL 6889015, at *3 (N.D. Tex. Nov. 24, 2020) (Starr, J.); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir.1999) (applying the above framework to ADA claims). In the Fifth Circuit, retaliation claims under Section 1981 are analyzed identically to claims under Title VII. *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002). Then, the burden shifts to Epiroc to state a legitimate, non-retaliatory reason for its decision. *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). After Epiroc states its reason, the burden shifts back to Reyna to demonstrate that Epiroc's reason is actually a pretext for retaliation, which Reyna can do by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive." *Id*.

After nine charges of discrimination filed with the EEOC and dozens of internal complaints, Epiroc does not dispute Reyna has engaged in protected activity. Reyna, however, has no evidence to support his *prima facie* case, nor does he have evidence of pretext.

1.    **Reyna has no evidence to establish a *prima facie* case of retaliation.**

For retaliation claims, an adverse employment action is one that "a reasonable employee" would find "materially adverse, which…means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). In determining whether an employment decision would have dissuaded a reasonable worker from engaging in protected activity, the Fifth Circuit has considered not only whether it changes "job title, grade, hours, salary, or benefits," but also whether it led to a diminution in the employee's duties or "in prestige or change in standing among…co-workers." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009).

As explained above, *nothing* adverse has ever happened to Reyna. He remains in the same position, earning even more than he did when Epiroc first hired him. App. 13, 538 (Reyna Dep. 46:10-23; Farnsworth Dec. at ¶ 14). Reyna's claims that he was refused popsicles; temporarily removed from his job duties; yelled at, and other allegations of trivial conduct by Epiroc fall short of establishing retaliation. *Fleming*, 2024 WL 1055120, at *16 (W.D. Tex. Mar. 11, 2024) (finding that "changes in job duties over time are not typically considered adverse employment actions in the retaliation context without a corresponding change in job title, grade, hours, compensation, or benefits"); *see Finch v. City of San Antonio*, No. SA-15-CV-521-XR, 2016 WL 4919967, at *7 (W.D. Tex. Sept. 13, 2016) (in retaliation context, changes in job duties, including removal of liaison responsibilities, "are not materially adverse, in that they would not discourage a reasonable employee from engaging in protected conduct").

Even if Reyna could identify an actionable adverse action, he has no evidence to support a causal connection to his complaints. As explained above, Epiroc repeatedly encouraged Reyna to share information relating his complaints, but Reyna refused. According to his secret audio recordings, Buttacavoli and others stressed to Reyna that their goal was to make sure Reyna felt

comfortable at work. *See generally* App. 496-502 (April 21, 2022 Recording). Clearly, these are not the statements of individuals intending to retaliate.

### 2.    Reyna has no evidence to establish "but for" causation.

"In order to avoid summary judgment, the plaintiff must show a conflict in substantial evidence on the question of whether the employer would not have taken the action 'but for' the protected activity." *Feist*, 730 F.3d at 454 (internal quotations and citations omitted). Other than his subjective belief, Reyna has no evidence to show that Epiroc would not have taken any action he alleges "but for" his complaints of discrimination. All while Reyna complained, Epiroc continued working with Reyna in an attempt to cure his perceived issues, despite the fact that none were substantiated. Reyna was given multiple opportunities to engage with Epiroc to find a resolution, but he declined to participate. As this Court has held, "Title VII's retaliation provisions don't protect feelings; they protect certain activity such as filing a charge of sex or race discrimination." *Brown*, 2020 WL 6889015, at *3. Reyna's feelings are all he has in support of his claims; that is not enough, and summary judgment is warranted.

### VI.    CONCLUSION

For these reasons, Epiroc respectfully requests that the Court enter an order: (1) granting this Motion in its entirety; (2) awarding Epiroc its costs and fees; and (3) awarding Epiroc any further relief to which it is entitled.

Respectfully submitted,

*/s/ Jamie Ashton*
EVA W. TURNER
Texas State Bar No. 24051485
eva.turner@ogletree.com
JAMIE ASHTON
Texas State Bar No. 24087211
jamie.ashton@ogletree.com
**OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.**
8117 Preston Road, Suite 500
Dallas, Texas  75225
(214) 987-3800
(214) 987-3927 (Fax)

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was filed electronically with the U.S. District Court for the Northern District of Texas, Dallas Division, this 26th day of July, 2024, with a true copy served on all counsel of record via the Court's ECF system.

*/s/ Jamie Ashton*
Jamie Ashton