**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS  DIVISION**

**EDGAR REYNA**,

    Plaintiff,

    v.

**EPIROC DRILLING SOLUTIONS, LLC.**,

    Defendant.

**Civ. Action No. 3:23-cv-01005-X**

Dated: August 29, 2024

Respectfully Submitted by:

*/s/ Lisa Ventress*
Lisa Ventress
Federal Bar No.  3471199
Texas SBN 24076751
1322 Space Park Dr. Ste C222
Houston, TX 77058
Telephone: (832) 240-4365
Facsimile: (832) 565-1752
Email: lisa@theventressfirm.com

**ATTORNEY FOR PLAINTIFF**

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ................................................................................1

ARGUMENT....................................................................................................1

I.      LEGAL STANDARD................................................................................1

II.     DEFENDANT'S COUNSEL VIOLATES DONDI AND TEX. DISC. R. PROF. COND. 3.03 ....................................................................................................2

III.    REYNA'S 42 USC § 1981 CLAIMS ARE BASED UPON HIS ANCESTRY AND ETHNIC CHARACTERISTICS ................................................................3

IV.     REYNA PRESENTS DIRECT EVIDENCE OF DISCRIMINATION AND RETALIATION ........................................................................................6

V.      REYNA ESTABLISHES GENUINE ISSUE OF MATERIAL FACT SUFFICIENT TO OVERCOME SUMMARY JUDGMENT ON HIS RACE AND NATIONAL ORIGIN DISCRIMINATION CLAIMS ................................................7

        A.    Reyna establishes his failure to promote claim under Title VII, 42 USC. § 1981 and The Texas Labor Code Chapter 21............................................9

        B.    Reyna establishes multiple additional adverse actions post Hamilton and Muldrow. ................................................................................12

        C.    Reyna suffered "some" harm in the form of adverse actions ................................14

VI.     PLAINTIFF'S EVIDENCE ESTABLISHES HOSTILE WORK ENVIRONMENT.......27

        D.    The Harassment was Based on Reyna's Race and National Origin ....................27

        E.    The Harassment was Severe or Pervasive .............................................30

        F.    The Harassment is Imputable to Epiroc .................................................33

VII.    PLAINTIFF ESTABLISHES HIS RETALIATION CLAIM ...........................................34

        A.    Plaintiff Experienced Several Materially Adverse Employment Actions ............35

        B.    The Materially Adverse Actions to Which Defendant Subjected Plaintiff are Causally Connection to His Protected Activity ...........................................39

        C.    Plaintiff Establishes But-For Causation .................................................40

              1.    Disparate Treatment........................................................................42

              2.    Statements Probative of Retaliatory Intent.................................42

              3.    Defendant Explicitly Discouraged Plaintiff from Complaining...............43

              4.    Failure to Investigate .....................................................................44

              5.    Temporal Proximity........................................................................45

VIII.   REYNA ESTABLISHES GENUINE ISSUE OF FACT TO SURVIVE SUMMARY JUDGMENT ON HIS DISCRIMINATION AND FAILURE TO ACCOMMODATE HIS CLAIMS UNDER THE ADA AND THE TEXAS LABOR CODE CHAPTER 21 ...........................................................................................46

        A.    Genuine issues of Material Fact Exist as to Whether Defendant Failed to Accommodate Reyna's Crush Fracture ...............................................47

        B.    Genuine issues of Material Fact Exist as to Whether Discriminated Against Reyna

on the Basis of Disability ............................................................. 50

    C.       Pretext ............................................................................................. 51

CONCLUSION ................................................................................................... 52

# TABLE OF AUTHORITIES

**Cases**

*Albemarle Paper Co.* v. *Moody,*
    422 U.S. 405, 425 (1975) ...............................................................................9

*Alvarado v. El Paso Independent School District,*
    445 F.2d 1011 (5th Cir. 1971).........................................................................5

*Alvarado v. Tex. Rangers,*
    492 F.3d 605, 612 (5th Cir. 2007)..................................................................20

*Anderson v. Liberty Lobby, Inc.,*
    77 U.S. 242 (1986) ...........................................................................................2

*Aryain v. Wal-Mart Stores,*
    534 F.3d 473, 485 (5th Cir. 2008)..................................................................34

*Bennett v. Total Minatome Corp.,*
    138 F.3d 1053, 1057 n. 2 (5th Cir. 1998)........................................................4

*Berquist v. Washington Mut. Bank,*
    500 F.3d 344, 353 (5th Cir. 2007)..................................................................21

*Bostock v. Clayton County,*
    140 S. Ct. 1731 (2020) ...................................................................................42

*Brooks v. Firestone Polymers, L.L.C.,*
    No. 15-40162, 4 n.5 (5th Cir. 2016) ...............................................................24

Brooks v. Firestone Polymers, LLC,
    70 F. Supp. 3d 816, 848 (E.D. Tex. 2014) ....................................................17

*Bullard v. Omi Georgia, Inc.,*
    640 F.2d 632, 634 (5th Cir.1981)....................................................................5

*Burlington Indus., Inc. v. Ellerth,*
    524 U.S. 742 (1998) ..................................................................................28, 30

*Burlington N. Santa Fe Ry. Co. v. White,*
    548 U.S. 53, 68 (2006) ...................................................................................32

*Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.,*
    482 F.3d 408 (5th Cir. 2007)..........................................................................38

*Caldwell v. Khou-TV,*
    850 F.3d 237 (5th Cir. 2017)..........................................................................38

*Cannon v. Jacobs Field Servs. N. Am., Inc.,*
    813 F. 3d 586, 590 (5th Cir. 2016)................................................................43

*Casarez v. Burlington Northern/Santa Fe Co.,*
    193 F.3d 334, 336 n. 2 (5th Cir. 1999)............................................................8

*Caswell v. Fed. Express Corp.,*
    No. CIV.A. 3:00-CV-1757-L, 2002 U.S. Dist. LEXIS 25017, 2002 WL 31927116, at *7 (N.D. Tex. 2002)........................................................................................................5

*Celestine v. Petroleos de Venezuella SA,*
    266 F.3d 343 (5th Cir. 2001)..........................................................................24

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) .........................................................................................1

*Desert Palace, Inc. v. Costa,*
    539 U. S. 90, 94-95, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003) ...................9

*Donaldson v. CDB Inc.,*

335 F. App'x 494 (5th Cir. 2009) ...........................................................................27

*Dondi Props. Corp. v. Commerce Savs. & Loan Ass'n,*
121 F.R.D. 284 (N.D. Tex. 1988) ...........................................................................3

*Durkin v. U.S. Postal Serv.,*
54 F. App'x. 794, 2002 WL 31845206, at *1 (5th Cir. 2002) ..............................8

*E.E.O.C. v. WCM,*
496 F.3d 393 (5th Cir. 2007)....................................................................................25

*EEOC v. J.M. Huber Corp.,*
927 F.2d 1322, 1326 (5th Cir. 1991) ......................................................................8

*EEOC v. LHC Group, Inc.,*
773 F.3d 688, 703 n.6 (5th Cir. 2014)....................................................................45

Esquivel v. McCarthy,
2016 U.S. Dist. LEXIS 144260, *13 (N.D. Tex. 2016)(Lindsay J.)........................5

*Evans v. Houston,*
246 F.3d 344 (5th Cir. 2001)...........................................................................7, 36

*Fabela v. Socorro Independent School Dist,*
329 F.3d 409 (5th Cir. 2003).................................................................................39

*Faragher v. Boca Raton,*
524 U.S. 775 (1998) ..................................................................................................30

*Farpella-Crosby v. Horizon Health Care,*
97 F.3d 803 (5th Cir.1996)........................................................................................28

*Fierros v. Texas Dept. of Health,*
274 F.3d 187, 192 (5th Cir. 2001)...........................................................................7

*First Nat'l Bank of Arizona v. Cities Serv. Co.,*
391 U.S. 253 (1968) ....................................................................................................2

*Foster v. Swift & Co.,*
615 F.2d 701, 702 (5th Cir. 1980)............................................................................4

*Furnco Constr. Corp. v. Waters,*
438 U.S. 567, 577 (1978) ...........................................................................................8

*Garcia v. Pro. Cont. Servs., Inc.,*
938 F.3d 236, 241 (5th Cir. 2019)..........................................................................36

*Garret v. Cornstar,*
1999 U.S. Dist. LEXIS 9361, *16-17 (N.D. Tex. May 26, 1999) ........................36

*Gee v. Principi,*
289 F. 3d 342, 346 (5th Cir. 2002).........................................................................11

*Glasmire v. Public Storage,*
2013 U.S. Dist. LEXIS 64794, *18 (N.D. Tex. May 7, 2013) ..............................16

*Godbolt v. Hughes Tool Co.,*
63 F.R.D. 370 (S.D.Tex.1972)...................................................................................4

*Graham v. City of Port Lavaca,*
Civil Action 6:20-CV-00033, 3 (S.D. Tex. Mar. 31, 2022) ...............................33

*Haire v. Bd. Of Supervisors of La. State Univ.,*
719 F. 3d 356, 368 (5th Cir. 2013)..........................................................................36

*Hamilton v. Dall. Cnty.,*
79 F.4th 494, 502 (5th Cir.2023) ...........................................................................12

*Harrison v. Brookhaven Sch. Dist.,*
82 F.4th 427, 430 (5th Cir. 2023) ..........................................................................12

*Hayden v. First National Bank,*

595 F.2d 994, 997 (5th Cir. 1979)..............................................................................4

*Haynes v. Bluecross & Blueshield of Tex., Inc.,*
2000 U.S. Dist. LEXIS 1625 (N.D. Tex. 2000)(Buchmeyer C.J.) ...........................18

*Hernandez v. Yellow Transp. Inc.,*
670 F.3d 644 (5th Cir. 2012)....................................................................................24

*Jackson v. Corp. Serv. Co.,*
No. CV H-11-4404, 2013 WL 11309365, at *8 & n. 3 (S.D. Tex. Apr. 17, 2013). .................6

*Johnson v. Manpower Prof'l Servs.,*
442 Fed. Appx. 977, 982 (5th Cir. 2011) ...............................................................17

*Johnson v. Pride Indus. Inc.,*
7 F.4th 392, 406 (5th Cir. 2021) .............................................................................9

*Johnson-Lee v. Tex. A&M Univ. - Corpus Christi,*
2024 U.S. Dist. LEXIS 80753, *9-11 (S.D. Tex. 2024). .........................................20

*Katie Ray v. Harris Cnty.,*
2023 U.S. Dist. LEXIS 222241, *10-11 (S.D. Tex. 2023) ....................................19

*Klebe v. Univ. of Texas Health Sci. Ctr. at San Antonio,*
No. 10-50458 at 2 (5th Cir. Nov 17, 2011)..........................................................37, 39

*Lawrence v. Univ. of Texas Med. Branch at Galveston,*
163 F.3d 309, 311 (5th Cir. 1999)............................................................................8

*Laxton v. Gap Inc.,*
333 F.3d 572 (5th Cir. 2003)...............................................................................7, 38

*Little v. Liquid Air Corp.,*
37 F.3d 1069, 1075 (5th Cir. 1994)........................................................................33

*Long v. Eastfield Coll.,*
88 F.3d 300 (5th Cir. 1996)...............................................................................28, 31

*Magana v. Tarrant/Dallas Printing, Inc.,*
1999 U.S. App. LEXIS 39718, *2 (5th Cir. 1999) ..................................................5

*Manaway v. Medical Center Southeast Texas,*
430 F. App'x 317 (5th Cir. 2011) ...........................................................................31

*Matherne v. Ruba Mgmt.,*
No. 14-30864, 9 (5th Cir. 2015).............................................................................30

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792, 802 (1983).........................................................................................7

*Medina v. Ramsey Steel Co.,*
238 F.3d 674 (5th Cir. 2001)..................................................................................36

*Muldrow v. City of St. Louis,*
144 S. Ct. 967, 2024 U.S. LEXIS 1816 (April 17, 2024).........................................3

*Mzyk v. North East Indep. Sch. Dist.,*
397 F. App'x 13, 16, n.3 (5th Cir. Sep. 30, 2010)...................................................44

*Nixon v. Silverado Hospice of Hous.,*
NO. H-12-0985 (S.D. Tex. Jul 31, 2013)................................................................38

*Nwoko v. Texas Dep't of Protective and Regulatory Servs.,*
2000 U.S. Dist. LEXIS 10337, 2000 WL 1006759, at *5 (N.D. Tex. 2000)(Lindsay J.)...........5

*Ocean Energy II, Inc. v. Alexander Alexander, Inc.,*
868 F.2d 740 (5th Cir. 1989)....................................................................................1

*Oncale v. Sundowner Offshore Servs., Inc.,*
523 U.S. 75 (1998) ..............................................................................................24, 26

*Pacheco v. New Life Bakery, Inc.,*

187 F. 3d 1055 (9th Cir. 1999)..................................................................42

*Paniagua v. Tex. Dep't of Crim. Justice,*
2001 U.S. Dist. LEXIS 6559, *3) (N.D. Tex. 2000) ...............................6

*Polanco v. City of Austin,*
78 F. 3d 968, 980 (5th Cir. 1996)..........................................................39

*Priya Gupta v. Qwest Gov't Servs.,*
2023 U.S. Dist. LEXIS 25565, *30 (N.D. Tex. 2023)............................33

*Quantum Chem. Corp. v. Toennies,*
47 S.W.3d 473, 474 (Tex. 2001) ..............................................................8

*Rahman v. Exxon Mobil Corporation,*
56 F.4th 1041 (5th Cir. 2023) ................................................................33

*Ray v. Iuka Special Mun. Separate School Dist.,*
51 F. 3d 1246 (5th Cir. 1996)..................................................................15

*Reeves v. Sanderson Plumbing Prods., Inc.,*
530 U.S. 133 (2000) ................................................................................38

*Reeves v. Sanderson Plumbing Products., Inc.,*
530 U.S. 133, 143 (2000) ........................................................................10

*Rowe v. Jewell,*
88 F. Supp. 3d 647, 674 (E.D. La. 2015).................................................28

*Rubinstein v. Adm'rs of the Tulane Educ. Fund,*
218 F.3d 392 (5th Cir. 2000).....................................................................2

Russell v. McKinney Hosp. Venture,
235 F.3d 219, 228 n.16 (5th Cir. 2000)...................................................12

*Sandstad v. CB Richard Ellis, Inc.,*
309 F.3d 893, 899 (5th Cir. 2002)............................................................7

*See Ramirez v. Landry's Seafood,*
280 F. 3d 576, 577-578 (5th Cir. 2002) ..................................................16

*Shackelford v. Deloitte Touche,*
190 F.3d 398 (5th Cir. 1999)...................................................................31

*Shannon v. Bellsouth Telecommunications, Inc.,*
292 F.3d 712, 716 (11th Cir. 2002).........................................................35

*Sharp v. City of Houston,*
960 F. Supp. 1164 (S.D. Tex. 1997)........................................................30

*St. Francis Coll. v. Al-Khazrali,*
481 U.S. 604, 613 (1987) ..........................................................................4

*St. Mary's Honor Center v. Hicks,*
509 U.S. 502, 507-508 (1993) .................................................................11

*Swanson v. Gen. Servs. Admin.,*
110 F. 3d 1180, 1188 (5th Cir. 1997) ......................................................36

*Taylor v. Principal Fin. Group.,*
93 F.3d 155, 165 (5th Cir. 1996), *cert denied,* 519 U.S. 1029 (1996) ......45

*Texas Dep't of Community Affairs v. Burdine,*
450 U.S. 248 (1981) ................................................................................38

*Thompson v, City of Waco,*
764 F.3d 500 at 504 (5th Cir. 2014).......................................................20

*Tisdale v. Federal Exp. Corp.,*
415 F. 3d 516, 529-30 (6th Cir. 2005) ....................................................42

*Toyota Motor Mfg., Ky., Inc. v. Williams,*

534 U.S. 184 (2002) ................................................................................43

*U.S. Airways, Inc. v. Barnett*,
535 U.S. 391, 396 (2002) ......................................................................44

*Vance v. Ball State Univ*,
570 U.S. 421 (2013) ..............................................................................30

*Wallace v. Texas Tech. Univ.*,
80 F.3d 1042 (5th Cir. 1996)....................................................................1

*Weeks v. NationsBank of Texas, N.A.*,
No. CIV.A.3:98-CV-1352M, 2000 U.S. Dist. LEXIS 4069, 2000 WL 341257, at *3 (N.D. Tex. Mar. 30, 2000) ......................................................................................36

*Willis v. Roche Biomed. Lab.,*
61 F.3d 313 (5th Cir.1995)........................................................................2

**Statutes**

42 U.S.C. § 1981, of the Civil Rights Act of 1866........................................1

Americans with Disabilities Act ("ADA") ..................................................1

Texas Commission on Human Rights Act ("TCHRA") ................................1

Title VII of the Civil Rights Act of 1968....................................................1

**Other Authorities**

Comment, Developments in the Law Section 1981,
15 Harv.C.R.-C.L.L.Rev. 29, 82-90 (1980). ............................................5

**Rules**

Fed. R. Civ. P. 56 ....................................................................................2

TEX. DISC. R. PROF. COND. 3.03............................................................2

<u>**SUMMARY OF ARGUMENT**</u>

Epiroc would have the Court believe that this case is about popsicles and adventure park tickets. Unfortunately, that is far from Plaintiff's reality. Throughout Plaintiff's tenure at Epiroc, Plaintiff's work environment has been saturated with virulent racial slurs, offensive racial comments, and an obvious double standard of treatment between how Plaintiff was treated compared to white employees. When Plaintiff opposed the discriminatory conduct, Epiroc not only refused to take any meaningful remedial action, but as a consequence of Plaintiff's complaints, he was swiftly subjected to a campaign of retaliatory conduct designed to punish him for his complaints and quell any further opposition.

Plaintiff asserts claims for hostile work environment, discrimination, and retaliation pursuant to Title VII of the Civil Rights Act of 1968 ("Title VII"), the Americans with Disabilities Act ("ADA"), and the Texas Commission on Human Rights Act ("TCHRA") and 42 U.S.C. § 1981, of the Civil Rights Act of 1866 ("Section 1981").

<u>**ARGUMENT**</u>

I.    <u>**LEGAL STANDARD**</u>

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046-1047 (5th Cir. 1996). If the nonmovant bears the burden of proof on a claim, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *See Celotex Corp.*, 477 U.S. at 325; *Ocean Energy II, Inc. v. Alexander Alexander, Inc.*, 868 F.2d 740, 747 (5th Cir. 1989).

Once the moving party has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968). When the parties have submitted evidence of conflicting facts, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Willis v. Roche Biomed. Lab.*, 61 F.3d 313, 315 (5th Cir.1995). Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party. *See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 399 (5th Cir. 2000).

Under Fed. R. Civ. P. 56, a motion for summary judgment should be granted only if from the pleadings, depositions and other evidence before the Court, the movant can demonstrate that no genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 77 U.S. 242 (1986). All inferences to be drawn from the underlying facts in the materials presented by the parties must be viewed in the light most favorable to the non-moving party. *United States v. Diebold*, 369 U.S. 654, 655 (1962), and as long as there appears to be some evidentiary support for the disputed allegations, the motion must be denied. *Anderson*, 477 U.S. at 249.

## II.    DEFENDANT'S COUNSEL VIOLATES *DONDI* AND TEX. DISC. R. PROF. COND. 3.03

Defendant's Counsel made several poor and arguably unethical choices in their summary judgment brief. First, Defendant's claim that Plaintiff's failure to promote claim is time barred under Title VII and the THCRA (Def.'s Br. at 23-24) is disingenuous and fails to inform the Court that Defense Counsel Jaime Ashton entered a tolling agreement extending the deadline. See *. Under the tolling agreement, Plaintiff's deadline to file his promotion claim was extended until March 10, 2023. Plaintiff filed his original petition in state court on March 10, 2023. (Doc. 1-A). As such, Plaintiff's failure to promote claims under Title VII and the TCHRA were timely filed.

Second, Defendant argues that Plaintiff cannot establish an adverse employment action, but fails to inform the Court on that April 17, 2024, the Supreme Court published *Muldrow v. City of St. Louis,* 144 S. Ct. 967, 2024 U.S. LEXIS 1816 (April 17, 2024) which clarified the adverse action standards applicable to this case. Third, Defendant argues that "Reyna complained that Tyson told him he has "had enough" of Reyna's complaints. App. 76 (Id. at 299:17-300:7). Explained below, Reyna has produced dozens of hours of recordings secretly taken at Epiroc, many involving conversations with Tyson. None of them come close to substantiating Reyna's claim." Yet Defendant fails to inform the Court that Tyson admitted to this comment under oath in his deposition. (SOF *). As such, Plaintiff asserts that Counsel failed their ethical obligations and the Texas Rules of Professional Conduct and *Dondi Props. Corp. v. Commerce Savs. & Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988) (en banc) (per curiam).

## III.   REYNA'S 42 USC § 1981 CLAIMS ARE BASED UPON HIS ANCESTRY AND ETHNIC CHARACTERISTICS

Reyna pleads that he is Hispanic and pleads claims for race and national origin discrimination under 42 U.S.C. § 1981 (as well as Title VII and the Texas Labor Code). *See Plaintiff's Amended Complaint,* (Doc.21).

- "Defendant's supervisors, managers and human resource personnel engaged in racially harassing and discriminatory conduct against Plaintiff in that they treated him differently than Non-Hispanic employees, singled him out and constantly threatened to remove him from his job or job duties. Defendant engaged in this conduct because of Plaintiff's national origin and race, Hispanic. *Id.* at para 39.

- Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of his national origin and race within the meaning of the statutes. *Id.* at para 42.

- Defendant, by and through Defendants agents, discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment in violation of 42 U.S.C. Section 2000e-(2)(a). The effect of these practices have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of Plaintiff's national origin (Hispanic). *Id.* at para 43.

- Defendant, by and through Defendant's agents, discriminated against Plaintiff on the basis of National Origin and race with malice or with reckless indifference to the protected rights of Plaintiff. *Id.* at para 44.

"Racial discrimination under § 1981 encompasses discrimination against 'identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics.'" *Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1057 n. 2 (5th Cir. 1998) (citing *St. Francis Coll. v. Al-Khazrali*, 481 U.S. 604, 613 (1987)). The Supreme Court analyzed § 1981's legislative intent, "[i]n the House, Representative Bingham described § 16 of the Act, part of the authority for § 1981, as declaring "that the States shall not hereafter discriminate against the immigrant from China and in favor of the immigrant from Prussia, nor against the immigrant from France and in favor of the immigrant from Ireland." *Id.*, at 3871. *Saint Francis Coll.*, at 613.

The Fifth Circuit has observed that "[w]hen dealing with employment discrimination cases, which usually necessarily involve examining motive and intent, as in other cases which involve delving into the state of mind of a party, granting of summary judgment is especially questionable." *Hayden v. First National Bank*, 595 F.2d 994, 997 (5th Cir. 1979). *Accord, Foster v. Swift & Co.*, 615 F.2d 701, 702 (5th Cir. 1980). This is particularly true when a court must decide whether defendants have discriminated on the basis of race or national origin. In some contexts, "'national origin' discrimination is so closely related to racial discrimination as to be indistinguishable." *Spiess v. C. Itoh & Co.*, 408 F. Supp. 916, 928 n.17 (S.D.Tex.1976) (holding that white Americans had stated a claim against Japanese-owned corporation under section 1981) (*quoting Godbolt v. Hughes Tool Co.*, 63 F.R.D. 370 (S.D.Tex.1972)). *Accord, Enriquez v. Honeywell, Inc.*, 431 F. Supp. 901, 904 (W.D.Okl.1977) [**6] ("[T]he line between discrimination on account of race and discrimination on account of national origin may be so thin as to be indiscernible…."). "Thus, while discrimination purely on the basis of national origin

does not create a cause of action under section 1981, this court has held that a complaint by Mexican Americans alleging racial and ethnic discrimination "clearly states a cause of action" under the statute. *Bullard v. Omi Georgia, Inc., 640 F.2d 632, 634* (5th Cir.1981), *citing Alvarado v. El Paso Independent School District*, 445 F.2d 1011 (5th Cir. 1971). *See also Manzanares v. Safeway Stores, Inc.*, 593 F.2d 968, 970 (10th Cir. 1979) (holding that plaintiff of Mexican-American descent had stated a claim of racial discrimination since the group to which he belonged is "of such an identifiable nature that the treatment afforded its members may be measured against that afforded Anglos."); Comment, Developments in the Law Section 1981, 15 Harv.C.R.-C.L.L.Rev. 29, 82-90 (1980). *See, e.g., Caswell v. Fed. Express Corp.*, No. CIV.A. 3:00-CV-1757-L, 2002 U.S. Dist. LEXIS 25017, 2002 WL 31927116, at *7 (N.D. Tex. 2002) (finding plaintiff's race and national origin claims "so closely related that a separate claim for national origin would merely duplicate his race claim.").

The Fifth Circuit has further held that an EEOC charge which stated that a Plaintiff was demoted because of his Mexican American national origin raised claims both of national origin and race discrimination. *Magana v. Tarrant/Dallas Printing, Inc., 1999 U.S. App. LEXIS 39718, *2* (5th Cir. 1999)(*citing Saint Francis College* at 613 and 29 C.F.R. §1601.1 ("defining national origin discrimination as including "the denial of equal employment opportunity ... because an individual has the physical, cultural or linguistic characteristics of a national origin group)."

This Court has ruled that a "Hispanic" Plaintiff who plead a national origin claim was really "asserting a claim of race discrimination, as neither the record nor the Petition reflects Plaintiff's country of birth or that of her ancestors." *Esquivel v. McCarthy*, 2016 U.S. Dist. LEXIS 144260, *13 (N.D. Tex. 2016)(Lindsay J.). *See also, Nwoko v. Texas Dep't of Protective and Regulatory Servs.*, 2000 U.S. Dist. LEXIS 10337, 2000 WL 1006759, at *5 (N.D. Tex. 2000) (Lindsay J.)(Nigerian/Black); *Harry v. Dallas Hous. Auth.*, 2016 U.S. Dist. LEXIS 944,

*12(N.D. Tex. 2015)(Lynn J.)(Nigerian/Black); *Lauderdale v. City of Arlington*, 2002 U.S. Dist. LEXIS 1498, *41 (N.D. Tex. 2000) (Lindsay J.)(African American); *Paniagua v. Tex. Dep't of Crim. Justice*, 2001 U.S. Dist. LEXIS 6559, *3) (N.D. Tex. 2000) (Lindsay J.)(Hispanic). Here Plaintiff only plead that he was Hispanic and relies upon the same evidence to support his national origin and race claims under all three statutes. Plaintiff describes his race as Hispanic and his national origin as Mexican. **Ex. A**, Plaintiff's Dep. at p. 88:5-8. As such, Plaintiff asserts that his 1981 claims sound in racial discrimination since the group to which he belonged is "of such an identifiable nature" and his claims are indistinguishable.

## IV.    REYNA PRESENTS DIRECT EVIDENCE OF DISCRIMINATION AND RETALIATION

Discrimination and retaliation claims can be established through direct or circumstantial evidence. "Direct evidence" includes any statement or document that shows on its face that an improper criterion served as a basis for the adverse employment action and evidence that the person with decision-making authority took into consideration an improper motive. *Jackson v. Corp. Serv. Co.*, No. CV H-11-4404, 2013 WL 11309365, at *8 & n. 3 (S.D. Tex. Apr. 17, 2013). Here Plaintiff offers the following direct evidence of discrimination and retaliation:

- Jackie's threat about going to HR = direct evidence of retaliation.
- Jokes made the day before by Scott and Kevin. Edgar is going to bring all of his Tios and Tias. Jackie heard the joke and laughed= direct evidence of discrimination.
- Jackie suggested to HR June 2, 22 that they should put Edgar out until MMA. Bates 573.
- Jackie admitted in his deposition that he suggested this because he was sick of all the complaints about him. They sent him out on leave on July 7, 22.
- Tyson admits that he told Reyna he was sick of all his complaints
- Peter verifies that Jackie asked to bring Reyna back to full duty 3 times.
- Peter testified that Jackie did discuss with Edgar that if they had too much indirect time (work not chargeable to the rig) that this would result in a lay off and that Edgar thought his job was threatened. Peter testified that he felt Jackie's comment was inappropriate.
- Tyson's investigation found a failure of interactive process.

If a plaintiff proves retaliation with direct evidence, she is "entitled to bypass the *McDonnell Douglas* burden-shifting framework . . . and proceed directly to the question of liability." *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 192 (5th Cir. 2001). If a "plaintiff presents direct evidence that the employer's motivation for the adverse action was at least in part retaliatory . . . the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." *Id.* (citing *Moore v. U.S. Dep't of Agric.*, 55 F.3d 991, 995 (5th Cir. 1995) *and Brown v. E. Miss. Elec. Power Ass'n,* 989 F.2d 858, 861 (5th Cir. 1993)).

Alternatively, "an oral statement exhibiting discriminatory animus may be used to demonstrate pretext or, as is the case here, it may be used as additional evidence of discrimination. *Laxton v. Gap, Inc.*, 333 F. 3d 572, 583 (5th Cir. 2003), *citing Russell v. McKinney Hospital Venture,* 235 F.3d 219, 225 (5th Cir. 2000). The remark must, first, demonstrate discriminatory animus and, second, be made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decision maker. *Russell* at 225, *see also Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 899 (5th Cir. 2002). Plaintiff asserts that the above remarks are direct evidence of retaliation and disability discrimination. Either way, they provide significant evidence of pretext and additional evidence of discriminatory and retaliatory motivation.

## V.  REYNA ESTABLISHES GENUINE ISSUE OF MATERIAL FACT SUFFICIENT TO OVERCOME SUMMARY JUDGMENT ON HIS RACE AND NATIONAL ORIGIN DISCRIMINATION CLAIMS

If based on circumstantial evidence Title VII claims are analyzed under the *McDonnell Douglas* framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1983). Under this framework, the Plaintiff must first create a presumption of discrimination through a prima facie case of discrimination, and the burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for its decision.  *Id; see Evans v. City of Houston*, 246 F.3d

344, 349 (5th Cir. 2001). The Plaintiff then bears the burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated due to protected status. *McDonnell,* 411 U.S. at 802. Once a Plaintiff establishes a *prima facie* case, the burden of producing some non-discriminatory reason falls upon the Defendant. *EEOC v. J.M. Huber Corp.*, 927 F.2d 1322, 1326 (5th Cir. 1991). It is necessary for the facts allegedly supporting a claim to be evaluated in their entirety. A *McDonnell Douglas* analysis "was never intended to be rigid, mechanized, or ritualistic." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978). The district court should not evaluate whether each individual event in isolation demonstrated [race] discrimination when the argument is that the events collectively prove discrimination affected his employment." *Debassi v. Motiva Enterprises, LLC.,* (5th Cir. July 16, 2024).

A Plaintiff establishes a prima facie case of race and national origin discrimination by demonstrating: (1) that he is a member of a protected class, (2) that he was qualified for the position, (3) that he suffered an adverse employment action, and (4) that others similarly situated were more favorably treated. *Durkin v. U.S. Postal Serv.*, 54 F. App'x. 794, 2002 WL 31845206, at *1 (5th Cir. 2002) (citing *LaPierre v. Benson Nissan*, 86 F.3d 444, 448 (5th Cir. 1996)).

A Section 1981 claim is analyzed under the same standard as Plaintiff's Title VII claim. *See Lawrence v. Univ. of Texas Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999) (Employment discrimination claims brought under 42 U.S.C. § 1981 are analyzed under the evidentiary framework applicable to Title VII claims); *Pratt v. City of Houston, Tex*., 247 F.3d 601, 605 (5th Cir. 2001); *Casarez v. Burlington Northern/Santa Fe Co.*, 193 F.3d 334, 336 n. 2 (5th Cir. 1999). The Texas Labor Code Chapter 21 was modeled after Title VII and Texas courts generally look to federal precedent for guidance in determining the proper interpretation of the statute. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 474 (Tex. 2001).

Defendant challenges the third and fourth elements of Reyna's prima facie case of race and national origin discrimination. *Defendant's brief at page 29*. Reyna establishes the first two elements of his prima facie case because he establishes that: (1) he is Hispanic born in Nuevo Leon,Mexico and therefore a member of a protected class. See Ex. G - EEOC Charge, Ex. GG ¶5. declaration, App. and Ex J - Def MSJ , App 586 ) ; (2) he was qualified for the position as demonstrated by his experience, the fact that he was hired and his performance.

A. **Reyna establishes his failure to promote claim under Title VII, 42 USC. § 1981 and The Texas Labor Code Chapter 21.**

1. Prima Facie Case

As explained above, Plaintiff's claims for failure to promote under Title VII and the Texas Labor Code Chapter 21 are not time barred. Neither Title VII nor the TCHRA require "but for" causation to establish a failure to promote claim. 42 U. S. C. §§2000e-2(m), 2000e-5(g)(2) (B); *see also Desert Palace, Inc.* v. *Costa*, 539 U. S. 90, 94-95, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003). Although the "but for" causation standard is no different than Title VII's motivating factor plus proof of pretext. *McDonald v. Santa Fe Trail Transp. Co*., 427 U.S. 273, 282 (1976), *see also Albemarle Paper Co.* v. *Moody,* 422 U.S. 405, 425 (1975). Regardless even under 42 U.S.C. § 1981, "at the summary judgment stage, such plaintiff only needs to present sufficient evidence to raise a genuine dispute of material fact regarding pretext to defeat the granting of summary judgment. Notwithstanding any argument to the contrary, the *McDonnell* burden-shifting framework is still applicable and in line with Fifth Circuit cases published subsequent to *Comcast*." *Golatt v. Perot Museum of Nature & Sci*., 659 F. Supp. 3d 745, 751-752 (N.D. Tex. 2023)(Lindsay J.). *See Johnson v. Pride Indus. Inc.*, 7 F.4th 392, 406 (5th Cir. 2021); *Sanders v. Christwood*, 970 F.3d 558, 561-62 (5th Cir. 2020).

To establish a prima facie case of discrimination based on a failure-to-promote theory, a plaintiff must show that (1) he is a member of a protected class; (2) he sought and was qualified

for a position; (3) he was rejected for the position; and (4) the employer either (a) hired a person outside of the plaintiff's protected class, or (b) continued to seek applicants with the plaintiff's qualifications. Next, if the plaintiff carries his burden to establish a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action. And if the employer satisfies this burden, the plaintiff must then provide adequate evidence to show the reason proffered by the employer is a mere pretext for unlawful discrimination. *Johnson* 7 F.4th at 406. Defendant does not dispute elements 1, 3, and 4. Plaintiff was Hispanic, he applied for the Leadman job, and a Non-Hispanic was chosen instead of Plaintiff. Defendant's sole argument is that Plaintiff was not qualified for the role. It is undisputed that the two Leadmen who interviewed Plaintiff recommended Plaintiff be hired and were overruled by Gudgel. SOF ¶29. The fact that two members of Defendant's interview panel recommended Plaintiff be hired when viewed in the light most favorable to Plaintiff, supports a reasonable inference that Plaintiff was qualified. *Golatt, 659 F. Supp. at 753*.

   2. Pretext

  Defendant asserts the legitimate business reason that Hoang was clearly more qualified than Reyna. A Plaintiff may establish pretext either through evidence that the employer's proffered explanation is false or "unworthy of credence." *Reeves v. Sanderson Plumbing Products., Inc*., 530 U.S. 133, 143 (2000). An employee need not present evidence of the pretextual nature of the Defendant's articulated legitimate nondiscriminatory reason for its decision *and* additional evidence of discrimination to avoid judgment as a matter of law. *Id*. at 147-48. Rather, once the employee presents evidence of the pretextual nature of the decisions, no further evidence of discriminatory animus is required because "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation...." *Id*.

  Proof of pretext can be accomplished by three different means: (1) showing that similarly situated people are treated differently; (2) showing that the employer deviated from established

procedures in dealing with the Plaintiff; or (3) simply showing that the Defendant's proffered explanation is not credible. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507-508 (1993); *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (en banc). A Plaintiff need only establish that discrimination played a role in his termination, not that it was the sole reason for the termination. *See id.* at 994. Evidence demonstrating an employer's explanation is false or unworthy of credence, taken together with the Plaintiff's prima facie case, is sufficient to support an inference of discrimination because "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation." *Reeves*, 530 U.S. at 147-48.

The fact that the two Leadmen who interviewed Plaintiff thought he was the best candidate and the fact that Reyna worked for Defendant longer than Hoang and trained Hoang when he started creating genuine issues of material fact that Defendant's asserted reason is not credible. (SOF *). Moreover, the fact that Buttacavoli claims to be the decisionmaker is disputed by the testimony of Chung who testified that Gudgel was the one who told them to not hire Plaintiff. Moreover, if Buttacavoli did make the decision, he could have been motivated by retaliation for Reyna's numerous complaints[1] or could have been the result of the discriminatory influence of Gudgel. Under the cat's-paw theory, if an employee demonstrates a manager with a discriminatory motive had influence over the ultimate decisionmakers, that motive may be imputed to the ultimate decisionmaker, thereby establishing a causal link between the animus and the adverse employment action. *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004). *See also, Gee v. Principi*, 289 F. 3d 342, 346 (5th Cir. 2002) (when the person conducting the final review serves as the "cat's paw" of those who were acting from retaliatory motives, the causal link remains intact). Here, Gudgel's animus can be transferred to Buttacavoli because it is

---

[1] Which Plaintiff asserts as evidence that the decision was retaliation.

undisputed that Gudgel was involved in the interview and hiring process. (SOF *). The Same Actor inference is not a proper basis to grant summary judgment. *Golatt*, 659 F. Supp. at 759, *citing Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 228 n.16 (5th Cir. 2000). The fact that Reyna testified he was "passed" onto the next interview is not sufficient to support summary judgment. In fact, Buttacavoli's testimony that "he wanted to be inclusive and since there were only three applicants, they were all granted an interview" could be the reason he was passed on to the next interview. (SOF *).

B.     **Reyna establishes multiple additional adverse actions post *Hamilton* and *Muldrow*.**

The adverse action element has been the subject of great change recently in the Fifth Circuit. As this Court is aware until recently, only "ultimate employment decisions" could constitute an adverse employment action giving rise to liability in the Fifth Circuit. However, the Fifth Circuit has now held that Title VII does not require an ultimate employment decision. *Hamilton v. Dall. Cnty.,* 79 F.4th 494, 502 (5th Cir.2023). Instead, a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the "terms, conditions, or privileges" of his or her employment bringing the Fifth Circuit in line with the rest of the circuits. *Id.* The language "terms, conditions, or privileges of employment" is broad; it "is not limited to 'economic' or 'tangible' discrimination," and "it covers more than 'terms' and 'conditions' in the narrow contractual sense." *Id.*

Under *Hamilton* the Fifth circuit held that to plead an adverse action under Title VII, a plaintiff must allege facts plausibly showing: "(1) an adverse employment action, (2) taken against a plaintiff because of her protected status." *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 430 (5th Cir. 2023) (quoting *Hamilton* 79 F.4th at 502). But a Title VII plaintiff must allege more than *de minimis* harm borne of the adverse actions alleged, as the Fifth Circuit stated Title VII does not permit liability for "de minimis workplace trifles." *Hamilton*, 79 F.4th at 505.

Defendant asserts Reyna fails to allege an action that is adverse and a harm that is more than *de minimis*.

Curiously, Defendant failed to mention the other major development in the context of adverse employment actions. On April 17, 2024, the Supreme Court published *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 2024 U.S. LEXIS 1816 (April 17, 2024). In that opinion, the Court held that an employee need only show "**some**" harm; he need not show any "**significant**" harm. In *Muldrow*, Sergeant Jatonya Clayborn Muldrow, works for the St. Louis Police Department. She sued the Police Department under the same anti-discrimination provision Reyna is using, Section 703(a) of Title VII. Muldrow alleged she had suffered sex discrimination with respect to the "terms [or] conditions of her employment." The trial court granted summary judgment, and the U.S. Court of Appeals for the Eighth Circuit affirmed. Both courts found that the employment action at issue, a transfer, did not cause Muldrow to suffer an employment disadvantage they considered "significant." *Id.* at 7.

Writing for the majority – there were no dissents -- Justice Kagan wrote, "**Today, we disapprove that approach** [*i.e.*, what the two Eighth Circuit courts did]. Although an employee must show **some** harm … to prevail in a Title VII suit, she need **not show** that the injury satisfies a **significance** test. Title VII's text nowhere establishes that high bar." *Id.* (emphasis added). Justice Kagan explained the Court's holding by noting first that the phrase "discriminate against," found in Section 703(a)(1) of Title VII, refers to "differences in treatment that injure employees" … or targets practices that "treat[] a person worse" because of sex or other protected trait…" *Id.* at *13. The "terms [or] conditions" phrase … is not used "in the narrow contractual sense"; it covers more than the "economic or tangible." *Id.* Still, the "terms [or] conditions" phrase circumscribes the injuries that can give rise to a suit… To make out a Title VII

discrimination claim, a transferee [like Muldrow] must show **some** harm respecting an identifiable term or condition of employment." *Id.* Justice Kagan continued:

> What the transferee does not have to show, according to the relevant text [of Section 703(a)(1) of Title VII], is that the harm incurred was **significant … [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar**. *Id.* at **13-14. "Discriminate against" means treat worse … [b]ut neither that phrase nor any other [phrase] says anything about how much worse… *Id.* To demand "significance" is to add words – and significant words, as it were – to the statute Congress enacted. *Id.* It is to impose a new requirement on a Title VII claimant, so that the law as applied demands something more of her than the law as written. *Id.* (bold font added).

Concurring in the judgment, Justice Kavanaugh observed that the Court's new, "some" harm standard "appears to be a relatively low bar." *Id.* at *29. Importantly, as least to Justice Kavanaugh, the Court's holding --emphasizes that "some harm" is less than significant harm, serious harm, or substantial harm… **Therefore, anyone who has been transferred because of race, color, religion, sex, or national origin should easily be able to show some additional harm – whether in money, time, satisfaction, schedule, convenience, commuting costs or time, prestige, status, career prospects, interest level, perks, professional relationships, networking opportunities, effect on family obligations, or the like**. *Id.* Plaintiff asserts the proper test is not the *Harrison* test but is instead the "some harm" test from *Muldrow*.

**C.  Reyna suffered "some" harm in the form of adverse actions**

Defendant's myopic assertation that only Plaintiff's claim for lack of overtime opportunity rises to the level of an adverse action is belied by *Muldrow* and the case law in this Circuit and others.   Plaintiff alleges the following adverse actions which have been found to rise to the level of an adverse action in certain circumstances:

1.  Placed on unpaid leave twice

*i.  Is Adverse*

It is undisputed that during the time that Reyna was on light duty restrictions he was

placed on unpaid[2] medical leave twice when other light duty work was available and other non-Hispanic employees on light duty restrictions were allowed to continue light duty work.   SOF ¶54, ¶55, ¶56.   This is sufficient to establish an adverse action of discrimination at the prima facia case stage.   *Sambrano v. United Airlines, Inc.,* 2023 U.S. Dist. LEXIS 224444, *15 (N.D. Tex 2023) (Pittman J.); *see also, Chancey v. BASF*, 2023 U.S. App. LEXIS 26859 (5th Cir.2023); *McNeill v. Tyson Fresh Meats, Inc*., 2023 U.S. Dist. LEXIS 219122, *14 (N.D. Tex. 2023) (Kacmaryk J.); *Dickerson v. VA*, 2023 U.S. Dist. LEXIS 159042, *19 (S.D. Tex. 2023).

### i.   *Others Treated More Favorably*

Defendant did not make an equal and committed effort to accommodate Reyna's light duty restrictions as compared with other employees, who upon information and belief were not placed on unpaid medical leave when other work was available.   Reyna testified that Simon Vargas - who was responsible for organizing work in his department - told him that there would be sufficient work until the end of year in December after he came off of light duty assignment. Ex. A Reyna Dep. 261:22-24.   Simon oversees the work assignments and thus had direct knowledge as to the amount of work available.   In addition, when Mrs. Aileen was also placed on light duty restrictions for a workplace injury, she was not sent home, nor did she have her badge deactivated.   Ex. A Reyna Dep. Ex. 19.   As such, this is sufficient to establish a prima facie case of race and national origin discrimination.   SOF, ¶9,¶10, ¶11,¶ 21, ¶22, ¶23, and ¶40

### ii.   *Pretext*

The factfinder is entitled to find witnesses who come across as lacking in credibility, appear to exaggerate complaints about the Plaintiff, or appear to be attempting to justify a predetermined decision, as lacking in credibility.   *See Laxton v. Gap, Inc*., 333 F. 3d 572 (5th Cir.

---

[2] Reyna was able to utilize a short term disability insurance policy to pay for a portion of his leave, but Plaintiff asserts that this is a collateral source that has no bearing on the analysis of whether Defendant's actions establish a prima facia case.

2003).  *See also, Ray v. Iuka Special Mun. Separate School Dist.*, 51 F. 3d 1246 (5th Cir. 1996) (in credibility dispute as to whether decisionmakers for the employer were aware of an EEOC complaint, the factfinder can find the employee's witness more credible even though he could not identify who told him that the decisionmakers had knowledge of the EEOC complaint). Questions regarding the credibility of the Defendant's witnesses therefore create genuine issues of material fact regarding pretext. "The factfinder's disbelief of the reasons put forward by the Defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination, . . . no additional proof of discrimination is required." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).

Defendant asserts that Reyna was placed on unpaid leave because there was no light duty work available to meet his medical restrictions.  However, Plaintiff presents evidence that this assertion is not credible because Jackie suggested to HR on June 2, 2022, that they should put Reyna out on leave (SOF *).  Gudgel admitted in his deposition that he suggested this because he was sick of all the complaints about him and Defendant placed Reyna on leave on July 7, 2022. (SOF *).  Moreover, Reyna testifies that there was light duty work available for him.  (SOF *). Tyson testified that his investigation found that Defendant failed to conduct a proper interactive process before they placed Reyna on leave.  Peter verifies that Jackie asked to bring Reyna back to full duty 3 times.  Peter testified that Jackie did discuss with Edgar that if they had too much indirect time (work not chargeable to the rig) that this would result in a lay off and that Edgar thought his job was threatened.  Peter testified that he felt Jackie's comment was inappropriate. Jackie denies that he said that but agrees that it would be inappropriate.

Pretext is shown by evidence that the employer treated other similarly situated individuals differently.  *See Ramirez v. Landry's Seafood*, 280 F. 3d 576, 577-578 (5th Cir. 2002).

*See, e.g., Garrison v. Tex. S. Univ.*, 2012 U.S. Dist. LEXIS 15912, at *17 (S.D. Tex. Oct. 23, 2012). Disparate treatment evidences an employer's discriminatory intent, including providing workers outside the protected class with more advantages. *Uffelman v. Lone Star Steel Co.*, 863 F.2d 404, 408 (5th Cir. 1989). *See, e.g., Glasmire v. Public Storage*, 2013 U.S. Dist. LEXIS 64794, *18 (N.D. Tex. May 7, 2013) (summary judgment improper where the Claimant presents evidence that the younger managers received more favorable treatment); *Miller v. Raytheon*, 716 F. 3d 138, 146 (5th Cir. 2013) (evidence that employer deviated from its normal policy is circumstantial evidence of discrimination). Additionally, the overall differential treatment of Reyna, Gudgel's hostile threats of termination and yelling at Reyna as well as the testimony of others that they experienced discrimination are sufficient to establish pretext. Viewing the evidence in the light most favorable to Reyna, he establishes material factual disputes regarding the unpaid medical leave to defeat summary judgment.

2.    <u>Denied overtime opportunities</u>

Jackie Gudgel, continues to harass me directly and through other supervisors such as Peter Chung, and Thang Nguyen. I have been a target following my work place injury to my finger that resulted in the need for accommodations; falsely accused of taking tools; and repeatedly denied overtime. When I complained to HR, I was confronted by Thang Nguyen about going to HR, and was told "I should not have done that." Ex. A Reyna Depo

On or around February 8, 2023, Management also began documenting how long we take in the restroom, how long employees speak with each other; how long we stay standing by the tv, or how long you take to go get parts. Jackie Gudgel, one manager, I've made repeated complaints about, is the person who fills out the form. Thang Nguyen was also going around asking for who wanted to do overtime, but he didn't come to me.

On March 24, 2023, Chris Hoang, my leadman tried sign me up for overtime work at the

rigs because I have knowledge working on it, but Thang Nguyen refused claiming I don't have the knowledge, which is false. SOF ¶13, ¶25

denying him the opportunity to work overtime, which was supposedly an opportunity open to all employees. However, in practice, Chris Hoang explained to Plaintiff that it was left up to the supervisors who they would select to be allowed to work overtime. Ex. A Reyna Dep. 168:12-19; 270:14-272:3; 291:5-18. Instead of addressing disparities in the assignment and awarding of overtime in Gudgel's department, Plaintiff was told to go ask Mr. Earl for overtime, a supervisor in another department. Plaintiff stated there was no need for ethnic minorities to seek out overtime in another supervisor's department when overtime opportunities existed in his own department. Ex. A Reyna Dep. 273:5-24; 186:13-17. Plaintiff was denied the opportunity to work overtime by Gudgel on numerous occasions prior to his retirement, altering a material condition and privilege of his employment. Ex.A Reyna Dep. 272:25-273:8. In addition, even when Hoang recommended Plaintiff for overtime working on a rig, Nguyen rejected it. Ex.A, Reyna Dep. 290:12-16.

i.      *Adverse*

Prior to Hamilton and Muldrow, the Fifth Circuit held that "[d]enial of overtime pay is an adverse employment action because it relates to [a Plaintiff's] compensation." *Johnson v. Manpower Prof'l Servs.*, 442 Fed. Appx. 977, 982 (5th Cir. 2011), *citing Pegram v. Honeywell*, 361 F.3d 272 at 282 (5th Cir.2004); *cf. Shannon v. Bell Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (holding that denial of the opportunity to work overtime is an adverse employment action under Title VII); *but see Hart v. Life Care Ctr. of Plano*, 243 F. App'x 816, 818 (5th Cir. 2007) (holding that a "denial of overtime" claim did not "constitute an ultimate employment decision."). Several district courts have also recognized that denial of overtime opportunities may constitute an adverse employment action. *See Phongsavane v. Potter*, No. CIVASA-05-

CA-0219-XR, 2005 U.S. Dist. LEXIS 12439, 2005 WL 1514091, at *3 (W.D. Tex. 2005); *Ellis v. Crawford*, No. Civ. A. 3:03-CV-2416D, 2005 U.S. Dist. LEXIS 3457, 2005 WL 525406, at *7 (N.D. Tex. 2005); *Hadad v. Am. Airlines, Inc.*, No. Civ. A. 300-CV-0041-D, 2003 U.S. Dist. LEXIS 1872, 2003 WL 292170, at *7 (N.D. Tex. 2003); *Brooks v. Firestone Polymers, LLC, 70 F. Supp. 3d 816, 848* (E.D. Tex. 2014).    As such, Reyna asserts that the denial of overtime constitutes an adverse action, and it is not necessary to conduct the *Harrison* analysis.   This is especially true given the Supreme Court's holding in *Muldrow*.   Moreover, the Fifth Circuit's finding that the denial of a $2,000 payment towards a leadership academy was an adverse employment action because the loss of the payment was the loss of a benefit provides further support that the loss of some overtime opportunity (no matter how small) is sufficient to state an adverse employment action.  *Harrison*, 82 F.4th at 431.

ii.      *Others treated more favorably.*

Reyna was repeatedly denied the opportunity to work overtime, which was purportedly an opportunity open to all employees.   However, Chris Hoang explained to Reyna that in practice it was left up to the supervisors who they would select to be allowed to work overtime.  Ex. B (168:12-19; 270:14-272:3; 291:5-18).   Instead of addressing disparities in the assignment and awarding of overtime in Gudgel's department, Reyna was told to go ask Mr. Earl for overtime, a supervisor in another department.   Reyna stated there was no need for ethnic minorities to seek out overtime in another supervisor's department when overtime opportunities existed in his own department. Ex. B (273:5-24; 186:13-17).  Reyna was denied the opportunity to work overtime by Gudgel on numerous occasions prior to his retirement, altering a material condition and privilege of his employment.   Ex. B (272:25-273:8).   In addition, even when Hoang recommended Plaintiff for overtime working on a rig, Nguyen rejected it.   Ex. B (290:12-16). SOF, ¶9, ¶10, ¶11, ¶21, ¶22, and  23

As such, this is sufficient to establish a prima facie case of race and national origin

discrimination.

*iii.* *Pretext*

Contrary to Defendant's assertions, both Gudgel and Chung testified that there were no overtime opportunities that Reyna was not qualified to work. (SOF \*). \*\*\* Viewing the evidence in the light most favorable to Reyna, he establishes material factual disputes regarding the unpaid medical leave to defeat summary judgment. This coupled with the overall differential treatment of Reyna, Gudgel's hostile threats of termination and yelling at Reyna as well as the testimony of others that they experienced discrimination are sufficient to establish pretext.

3. Denied electrical training

Ryna was also denied electrical training. On or around June 2018, Reyna expressed an interest in attending Electrician Training. Ex. N Reyna 120, App. 638. Ex. GG Reyna Declaration ¶20. Peter Chung, Reyna's leadman put Reyna's name on the list of interested employees, and submitted it to Gudgel. Ex. C Chung Depo 41:19-23, App. 376. Ex. GG Reyna Declaration ¶20, Ex. G, EEOC charge, App. 538-547. Gudgel removed Reyna's name from the List.Ex. C, Chung Depo, Ex. N Reyna 120. Ex. D, Reyna Declaration ¶20, Ex. H HR complaint, App.548-574, Ex. G EEOC complaints, App. 538-547. Reyna again reported Gudgel to Reagan Francis ("Francis") in HR.Ex. D, D Reyna Dec ¶20, Ex. G EEOC charge,App. 538-547 Ex. H Reyna 2021 HR complaint., App. 548-550. Francis informed Reyna that the Electrician class was open to everyone. Ex. G EEOC, App. 538-547 Ex. H 2021 HR Complaints, App. 548-550 . Ex. GG Reyna Declaration ¶21. As a recipient of a state funding grant for education, Epiroc has no policy that restricts who can attend training. Ex. D, , Matt B. Depo. 89: 23-25, 90:1-5; 20-22; 91: 2-4, App. 423,424. Following Reyna's Complaint to HR, Francis added Reyna's name to the list, and he was able to attend electrical training on February 25, 2019. Ex. N, Reyna 120. Ex. H, 2021 March HR complaint., App. 548-550

*i.      Adverse*

Prior to *Hamilton,* the Fifth Circuit held "that an inadequate training theory can satisfy the adverse action prong of *McDonnell Douglas* if the training is directly tied to the worker's job duties, compensation, or benefits." *Rahman v. Exxon Mobil Corporation*, 56 F.4th 1041 (5th Cir. 2023).  This Court further found that a denial of training opportunities was a sufficient adverse employment action to establish a prima facie case. *Haynes v. Bluecross & Blueshield of Tex., Inc.*, 2000 U.S. Dist. LEXIS 1625 (N.D. Tex. 2000)(Buchmeyer C.J.), *Priya Gupta v. Qwest Gov't Servs.*, 2023 U.S. Dist. LEXIS 25565, *30 (N.D. Tex. 2023)(Lindsay J.). Prior to *Muldrow,* the Fifth Circuit found that denial of a $2,000 payment towards a leadership academy was an adverse employment action because the loss of the payment was the loss of a benefit.  *Harrison*, 82 F.4th at 431.  Post *Muldrow*, the electrical training denied to Reyna would have benefited him in performing his assembler job, and would have benefited him for promotion **. As such, Plaintiff asserts that this training denial is sufficient to establish an adverse event.

*ii.      Others treated more favorably*

Part of Defendant's pattern of refusing Reyna opportunities for advancement included denying him access to training that in theory was open to all employees, but in practice, supervisors cherry picked those they wanted to attend, knowing that additional training and knowledge in areas like electrician training is either a requirement or a significant advantage for those seeking eventual promotions.  In March 2018 when Reyna wanted to take an Electrician training that was open to all employees according to Reagan Francis, Gudgel alone took Reyna off of the training list after Peter had put him there, removing him from a potential pipeline for

advancement. It was only after complaining that his name eventually got added back on. Upon information and belief, Gudgel did not remove other names that Peter had suggested for the training. As such, this is sufficient to establish a prima facie case of race and national origin discrimination.

<em>iii.</em>       <em>Pretext</em>

** EEOC position statement training for electricians only? Additionally, the overall differential treatment of Reyna, Gudgel's hostile threats of termination and yelling at Reyna as well as the testimony of others that they experienced discrimination are sufficient to establish pretext.

4.     <u>Removed from mentoring new employees</u>

<em>i.</em>       <em>Adverse</em>

Reyna asserts that he was removed from mentoring new employees and this duty was assigned to non-Hispanic employees. SOF *. Removal of job duties has been found to be sufficient to establish an adverse action. *Katie Ray v. Harris Cnty.*, 2023 U.S. Dist. LEXIS 222241, *10-11 (S.D. Tex. 2023). As Reyna testifies in his declaration, the removal of the mentoring duty caused some harm in the form of loss of satisfaction, interest level and prestige. Ex. GG ¶21. Reyna testified that the mentoring was re-assigned to non-Hispanic employees (SOF ¶16, ¶45). This is sufficient to establish a prima facie case of race and national origin discrimination.

<em>ii.</em>       <em>Others treated more favorably<br>and Pretext</em>

Reyna testified that his mentees were assigned to a White employee to mentor. This testimony satisfies the element of the prima facie case that others be treated more favorably. Additionally, since Defendant asserts that the reason the mentees were removed from Reyna was because they no longer needed training, this provides evidence of that such assertion lacks

22

credibility. (Def.'s Br. at 41). Additionally, the overall differential treatment of Reyna, Gudgel's hostile threats of termination and yelling at Reyna as well as the testimony of others that they experienced discrimination are sufficient to establish pretext.

5. Forced to clean for light duty rather than desk work: \

i. *Adverse*

The Southern District of Texas denied a motion to dismiss finding that allegations that a Plaintiff was assigned "domestic chores" like cleaning the facility and restrooms because she was Black was sufficient to allege an adverse action. *Johnson-Lee v. Tex. A&M Univ. - Corpus Christi, 2024 U.S. Dist. LEXIS 80753, *9-11* (S.D. Tex. 2024). "One of the judges in Hamilton, citing the Department of Justice, suggested that job assignments happening on the basis of race are actionable under Title VII. *Id.* at 509 (Ho, J., concurring). Additionally, the Supreme Court has held that job reassignments can be materially adverse actions in a Title VII retaliation claim. *Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 70-71, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)*.

Even before *Hamilton*, the Fifth Circuit found "a change in or loss of job responsibilities" may still amount to "the equivalent of a demotion" if it is "so significant and material that it rises to the level of an adverse employment action." *Thompson v, City of Waco*, 764 F.3d 500 at 504 (5th Cir. 2014)(removing a detective's duties to the point that he functioned as an assistant). To be "equivalent to a demotion," the action need not "result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007) (denial of transfer to Texas Rangers was adverse action due to lack of prestige even though the pay was identical). Here Renya alleges that while he was on light duty restrictions, other light duty workers were allowed to do desk work or special assignments in other departments while he was forced to clean. SOF¶17. Reyna further alleges that he found

the cleaning assignment to be because of his race and to be demeaning and humiliating which is more than sufficient to establish some harm requirement of *Muldrow*. SOF¶16,¶17, ¶5, ¶49, ¶55,¶56.

. Reyna was targeted for particular harassment because of his complaining, in addition to his race. Even if other workers of color were placed on some type of cleaning duty, it wasn't as long/severe/extensive as Reyna's because of his combo of factors.

> ### ii. *Reyna is not required to show "nearly identical" employees were assigned more favorable light duty assignments.*

Defendant asserts that Reyna cannot meet his prima facia case for the unfavorable light duty assignments because he cannot show that "nearly identical" similarly situated individuals received more favorable treatment in the assignment of light duty work. (D.'s Br. at 35). The nearly identical standard is not appropriate in the prima facie phase of this case. As Defendant concedes, the prima facie requirement is: "was [Reyna] treated less favorably than those outside the protected class." (D.'s Br. at 28). Defendant attempts to sneak this higher requirement into the prima facie case for the unfavorable light duty assignments but doesn't cite a single case where this standard was applied to analyze disparate treatment in job assignments. In *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007) (D.'s Br. at 35) the court utilized the nearly identical standard to determine job duties and qualifications in analyzing whether Plaintiff was included in a reduction in force because of his age. *Id.* The court was specifically analyzing the element of "otherwise discharged because of his age." *Id.* at 351. *Perez v. Texas Dep't of Criminal Justice*, 395 F.3d 206, 210 (5th Cir. 2004) the court found "plaintiff-employee's burden of proof in disparate treatment cases involving separate incidents of misconduct and have explained consistently that for employees to be similarly situated those employees'

circumstances, including their misconduct, must have been 'nearly identical.'" *Id.* at 213.

In race discrimination cases the nearly identical standard is used in three contexts. First, in hiring/promotion cases. *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Second, to analyze work rule violations or work misconduct. *See Turner v. Kan. City Southern Ry. Co.*, 675 F. 3d 887, 892-893 (5th Cir. 2012). Third, at the pretext stage as one option to show a genuine issue of material fact as to whether the defendant's proffered reason for termination was pretextual. *Noble v. Lear Siegler Services, Inc., 554 Fed. Appx. 275, 276 (5th Cir. 2014).* There, the Court recognized that the plaintiff had two ways to establish a prima facie case: (1) a showing of similarly situated comparators treated more favorably, or (2) a showing that plaintiff "was otherwise terminated because of a protected characteristic". *Id. In McDonnell Douglas,* the Court suggested that it would be "especially relevant" if there was "evidence that white employees involved in acts against petitioner of comparable seriousness to the 'stall-in' were nevertheless retained or rehired." 411 U.S. at 804. As such, there is no requirement that Reyna must show Griffin is "nearly identical" at the prima facie stage and that is only one option available to show that Defendant's asserted business reason is pretextual. *See section *, infra.* A variety of different types of evidence other than comparator evidence—biased remarks, statistics, etc.—from which a court could infer discrimination under the *McDonnell Douglas* standard, are foreclosed by imposing a comparator requirement at the prima facie stage. Reyna's evidence indicates other similarly situated employees were treated more favorably than he in that ** they were assigned administrative light duty work that did not involve cleaning. As such, this is sufficient to establish a prima facie case of race and national origin discrimination.

### iii.    Pretext

Plaintiff presents evidence that this assertion is not credible because Peter verifies that Jackie asked to bring Reyna back to full duty 3 times. Peter testified that Jackie did discuss with Edgar that if they had too much indirect time (work not chargeable to the rig) that this would

result in a lay off and that Edgar thought his job was threatened. Peter testified that he felt Jackie's comment was inappropriate. Jackie denies that he said that but agrees that it would be inappropriate. Here other employees on light duty were allowed to do desk work and not assigned to clean. Pretext is shown by evidence that the employer treated other similarly situated individuals differently. Additionally, the overall differential treatment of Reyna, Gudgel's hostile threats of termination and yelling at Reyna as well as the testimony of others that they experienced discrimination are sufficient to establish pretext. Reyna Badge Deactivated and picture sent to security. He was threatened with termination/screamed, ddEric Griffin, white, was on restrictions at the same time as Reyna was not assigned to clean. Cleaning tasks were assigned due to Reyna's race, national origin and disability. Ex. A Reyna Depo 230:7-25; 235:22 - 236:13 , App. 214, 219-220. Jackie Gudgel was repeatedly reported to HR. SeeEx. F, Lonnie R Statement at App. 531. Ex. H Reyna HR complaints App. 526-537; Ex. G Reyna EEOC complaints, App.538-547. Ex. GG Reyna Declaration ¶7 & Ex. F witness statements App. 526-537. It was well known that Gudgel created a hostile workplace for minorities.Ex. A, Reyna Depo 190: 19-25. App. 176

Given the new "some harm" standard and Justice Kavanaugh's laundry list of items that can establish some harm, including, satisfaction, prestige, status, professional relationships, and networking opportunities, it seems that each of these items may be sufficient to establish an adverse action in the right circumstances. Here the fact that Reyna's co-workers knew his badge was deactivated, his picture was sent to security as someone to not let in, and the ** met him at the door would all be sufficient to demonstrate some harm. The Western District of Texas found that a pleading that alleged that the employee was threatened was sufficient to support a *prima facie* claim at the pleading stage. *Chih-Kai Liao v. Univ. of Tex. at San Antonio*, 2024 U.S. Dist.

<u>LEXIS 150470, \*30</u> (W.D. Tex. Aug. 20, 2024), citing *Muldrow,* 144 S. Ct. 967. Thus, being threatened with termination and being yelled at in front of one's co-workers should be sufficient to establish some harm.

Drawing all reasonable inferences in Reyna's favor, he produced sufficient evidence to raise a genuine issue of material fact that the harassing conduct was because of race and national origin which also creates a genuine issue of fact as to pretext.

## VI.    <u>PLAINTIFF'S EVIDENCE ESTABLISHES HOSTILE WORK ENVIRONMENT</u>

A workplace is unlawfully hostile when (1) the employee belongs to a protected group, (2) was subjected to unwelcome harassment, (3) based on a protected characteristic, (4) that affected a term, condition, or privilege of employment, and (5) there is a basis for employer liability. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001) The same test applies to claims under Title VII, 42 U.S.C. §1981, and the TCHRA.[3]

Epiroc only moves for summary judgment as to the based on a protected characteristic and severe or pervasive elements of Plaintiff's hostile work environment claim.

### D.    The Harassment was Based on Reyna's Race and National Origin

Whether harassment is based on a protected characteristic "depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998). Harassment need not be explicit or even directed at a plaintiff[4] in order to cause a hostile work environment. *See id.* The element is met when the harassment occurs in specific and derogatory terms such that it is evident the

---

[3] *Brooks v. Firestone Polymers, L.L.C.*, No. 15-40162, 4 n.5 (5th Cir. 2016) (§1981); *Shackelford v. Deloitte Touche*, 190 F.3d 398, 404 n.2 (5th Cir. 1999) (TCHRA).

[4] *Donaldson,* 335 F. App'x at 502; *Hernandez v. Yellow Transp. Inc.*, 670 F.3d 644, 653 (5th Cir. 2012).

harassment was motivated by "general hostility to the presence" of Hispanic employees in the workplace. *Id.* A plaintiff may show that employees outside his protected class were treated better or that non-explicit harassment was based on a protected characteristic from the context of the harassment. *Id.; E.E.O.C. v. WCM*, 496 F.3d 393, 397, 400-01 (5th Cir. 2007).

For example, in *WCM* the court held that even though the harasser did not specifically refer to the plaintiff's protected characteristics when he banged on a glass partition to startle the plaintiff, "a factfinder could easily infer" that it was on account of the plaintiff's protected characteristics because the harasser engaged in prior explicit harassment. *See id.*

Here, there is a direct nexus between the harassment Plaintiff experienced and his race and national origin. Plaintiff was called a "wetback" by employees who openly displayed racial tattoos. XXReyna Dep. 105:20-24. Racial slurs and comments were commonplace in the work environment, such as the open use of the terms nigg*r, wetback, "most Black people are sub-human", "you can take the Nigger out of the hood but you can't take the hood out of the Nigger", XXBrent Matern. "Border patrol would not let a Hispanic employee back into the United States of America, following his vacation, XXGustavo Onassis. On another occasion, Scott O'leske approached Reyna and told him to "keep your freaking woman from stopping work early or else [I'm] going to tell Jackie," referring to Glenda Randall and Aileen. Scott described used a racially offensive stereotype to described them as "lazy as fuck" and said they don't do anything, instructing Mr. Reyna to ensure they worked because he was watching them. Ex A. Reyna Depo 203:16-204:16. Black and Hispanic employees were cornered, out of the view of camera and witnesses, to intimidate and scare them, placed in "5's which is clean up following HR complaints.Joey Khammane statement.

Against the backdrop of this regular explicit harassment, the other mistreatment that Plaintiff experience can also be readily understood to be based on his race and ethnicity. For

example, Gudgel laughed at Plaintiff when he reported that two white employees used racially offensive language to refer to Plaintiff's "tios and tias" when Plaintiff wanted to bring his family to a company picnic. Ex. A Reyna Dep. 91:6-10 ), (E. Reyna 000009). Then Gudgel confronted Plaintiff about getting extra tickets and threatened him not to report the incident to HR.3/24/21 complaint to HR _ Reyna 121 - 123. Gudgel was fixated on how many family members Plaintiff brought to the picnic, but did not question any of his white coworkers about their guests. *Id.* When Plaintiff demanded that he be treated equal to his white coworkers, Gudgel told him "its up to me how I treat you." . Gudgel constantly monitored Plaintiff's daily movements, including his bathroom usage or what supplies he needed to perform his job. . Gudgel frequently berated Plaintiff, yelled at him, warned him not to forget who was in charge, arbitrarily moved him from assignment to assignment, refused to provide him the same opportunities as his white coworkers, such as interviewing for a lead person position, denied training, pulled away from his normal job during, and restricted from walking down certain aisles, surveilled Plaintiff, recorded him, ignored Plaintiff's medical restrictions, ignored harassment that Plaintiff experienced from other supervisors and coworkers, removed Plaintiff's mentees, assigned him the worst jobs, such as cleaning, mocked and questioned the severity of his injuries; pressured him to perform work outside of his restrictions; deactivating his badge; denied him overtime; and frequently threatened termination, among other harassment. . Gudgel often punctuated his harassment of Plaintiff with verbal and physical threats. For example, on May 17, 2022, Gudgel grabbed a one inch wide strap, folded it in half, and swung it around menacingly as if it were a whip while he walked around the rig where Plaintiff worked. Gudgel stared directly at Plaintiff while repeatedly doing this and did not do it to the rigs where white workers were located.

There is simply no legitimate question whether the N word, wetback, derogatory racial comments, and obviously disparate treatment towards Hispanic workers is based on race and

national origin. *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81-82 (1998). This conduct directly informs the day-to-day mistreatment that was not always explicitly race-based, but which was nonetheless reserved specifically for Plaintiff and other Hispanic employees. E.E.O.C. v. WCM, 496 F.3d 393, 397, 400-01 (5th Cir. 2007). When viewed in the totality of circumstances and in context, a reasonable juror could easily conclude that the harassment that Plaintiff endured was on account of his Hispanic ethnicity. Defendant's arguments to the contrary are simply not enough to support dismissal as a matter of law.

### E.    The Harassment was Severe or[5] Pervasive

To establish the fourth element, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998). (addressing sex discrimination) (citation omitted); *see also Johnson v. Uncle Ben's Inc.,* 965 F.2d 1363, 1372 (5th Cir. 1992) (addressing race-based harassment). To determine whether an environment was objectively offensive, courts consider the totality of the circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance. *Faragher*, 524 U.S. at 787-88; *Ramsey*, 286 F.3d at 268 (same). This totality of the circumstances inquiry relies on "[c]ommon sense[ ] and an appropriate sensitivity to social context." *Oncale* 523 U.S. at 82.  It is not a "mathematically precise test." *Id*. There is no specific number of harassing acts required; rather, the focus is on the cumulative effect of the harassment. *Donaldson v. CDB Inc.,* 335 F. App'x 494, 503 (5th Cir. 2009).

Here, Defendant argues that Plaintiff cannot establish that he experienced severe or pervasive harassment because it claims that he was not fired or disciplined and "[n]one of

_____

[5] It need not be both. *Harvill v. Westward Commc'ns*, L.L.C., 433 F.3d 428, 434-35 (5th Cir. 2005).

Reyna's allegations involve physical threats, humiliating, or offensive conduct." *See* Dkt. 44 at 39. Its argument misses the mark.

As an initial matter, severe or pervasive harassment, by its very nature, alters the terms and conditions of the employment. *See Rowe v. Jewell*, 88 F. Supp. 3d 647, 674 (E.D. La. 2015) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764–65 (1998)). The harassment need not also culminate in discrete adverse action such as termination or discipline. *Id.*

Moreover, Defendant assertion that the harassment Plaintiff endured was not threatening, humiliating, or offensive is simply untenable. *See* Dkt. 44 at 39. As described above, some of the most vile and offensive racial slurs were part of the regular vocabulary of white employees at Epiroc. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001) ("Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as "nigg*r" by a supervisor in the presence of his subordinates."). Plaintiff was regularly threatened with termination, was physically threatened with a make shift whip by Gudgel, and Plaintiff and other Hispanic and Black employees were cornered by a group of white employees to threaten them against any further opposition to the hostile work environment. This harassment, on its own, could constitute sufficiently severe harassment to support a hostile work environment. *See generally Lenoir v. SGS N. Am., Inc.*, CIVIL ACTION NO. 1:16-CV-58-SA-DAS, 15 (N.D. Miss. Sep. 18, 2017). But taken together, in addition to the day-to-day, ongoing nature of other explicit and humiliating harassment, it leaves little doubt as to the hostility of the work environment. To be sure, Plaintiff experienced some form of harassment on a daily or near daily basis. . Conduct that occurs on a near-daily basis is the epitome of pervasive. *See, e.g., Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir.1996) (two to three times per week is pervasive); *C.f. Long v. Eastfield Coll.*, 88 F.3d 300, 309 (5th Cir. 1996) (a single joke about a condom was not severe or

pervasive). Moreover, supervisory harassment, by its very nature, is more humiliating, threatening, and severe that coworker harassment. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763 (1998) ("[A] supervisor's power and authority invests his or her harassing conduct with a particular threatening character."). And the supervisory harassment that Reyna experienced directly interfered with his ability to perform her job, such as, *inter alia,* being arbitrarily moved from assignment to assignment, denied overtime, denied promotion, and having his access to the facility restricted. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).

The harassment Plaintiff experienced was not harmless, isolated, or sporadic. It certainly was not just about popsicles as Defendant asserts. It was objectively offensive, humiliating, threatening, frequent, and directly complicated Plaintiff's ability to perform his job. It had a profound and lasting impact on Plaintiff. For instance, after being told to leave the work floor and that he could no longer be in the production area, Reyna was so concerned that he was going to be fired that he had a panic attack and left the facility in an ambulance. (SOF *) Reyna has been diagnosed with PTSD and OCD because of the discrimination and harassment he experienced by Defendant. (SOF *). The Supreme Court has held, "Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." *Harris*, 510 U.S. at 23. Drawing all reasonable inferences in Reyna's favor, he has produced sufficient evidence to raise a genuine dispute of material fact that the harassing conduct caused him to experience fear, anxiety, stress, chest pains, PTSD and OCD that unreasonably interfered with his work performance.

This is squarely the sort of harassment that courts consider severe or pervasive. Defendant has failed to meet its burden at summary judgment.

### F. The Harassment is Imputable to Epiroc

Defendant does not move for summary judgment as to liability. Therefore, it has waived its argument and should not be permitted to raise them for the first time in Reply.

To be sure, "an employer will always be liable when its negligence leads to the creation or continuation of a hostile work environment." *Vance v. Ball State Univ*, 570 U.S. 421, 446 (2013). Accordingly, when an employer knows or should know about harassment but fails to take effective action to stop or prevent it, the employer is liable for the harassment. *Celestine,* 266 F.3d at 353. Given Reyna's numerous and explicit complaints of harassment, it is simply implausible to suggest Epiroc did not have actual notice, which is likely why it chose not to move on summary judgment in the first instance. *See, e.g., Sharp v. City of Houston,* 960 F. Supp. 1164, 1170 (S.D. Tex. 1997) (holding the employer had actual notice of the harassment when it was perpetrated by a supervisor, the plaintiff reported at least one incident, and sought a transfer "due to her expressed discomfort with the situation.").

Moreover, an employer is automatically liable for a hostile work environment created by a supervisor. *Ellerth*, 524 U.S. at 765; *Faragher v. Boca Raton*, 524 U.S. 775, 780 (1998). When a supervisor creates a hostile environment, as is the case here, the employee does not have to show the employer had notice of the harassment or that it failed to take prompt remedial action. *Id.* The employer may only avoid liability by availing itself to the *Faragher-Ellerth* affirmative defense, which requires it prove both that (1) it exercised reasonable care to prevent harassment and (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities. *Id.* However, as a threshold issue, the affirmative defense is unavailable when supervisory harassment culminates in a tangible employment action. *Id. at 765*; *Matherne v. Ruba Mgmt.,* No. 14-30864, 9 (5th Cir. 2015); *Vance,* 570 U.S. at 435.

Here, again, Defendant does not move on liability element at all, let alone assert the *Faragher/Ellerth* affirmative. Even if Defendant could raise the affirmative defense, it would be

futile. Plaintiff was subjected to harassment from *Vance* supervisors, which culminated in several tangible employment actions. *Vance*, 570 U.S. at 435. Thus, the *Faragher/Ellerth* affirmative defense is unavailable, and Epiroc is automatically liable for the hostile work environment caused by its supervisors.. *Ellerth,* 524 U.S. at 765. And Even if the affirmative defense were available, Epiroc could not meet its burden to show Reyna unreasonably failed to take advantage of preventive or corrective opportunities because he repeatedly reported the harassment to his supervisors, members of management, and human resources.

Defendant has not carried its burden as to Plaintiff's hostile work environment claim. It Motion should be denied.

## VII.    PLAINTIFF ESTABLISHES HIS RETALIATION CLAIM

A plaintiff establishes a *prima facie* case of retaliation by showing: (1) he engaged in protected activity; (2) a materially adverse employment action occurred; and (3) that there was a causal connection between the protected activity and the adverse employment decision. *Long,* 88 F.3d at 304; *Jones v. Flagship International*, 793 F.2d 714, 724 (5th Cir. 1986); *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 298 (5th Cir. 1994).

Retaliation may be proved with direct or circumstantial evidence. *Manaway v. Medical Center Southeast Texas,* 430 F. App'x 317, 324 (5th Cir. 2011). When a Plaintiff relies on circumstantial evidence, the burden shifting framework set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) applies. *Fierros,* 274 F.3d at 191. In this framework, the initial burden rests with the plaintiff to establish his *prima facie* case. *Long,* 88 F.3d at 304. Once the plaintiff establishes her *prima facie* case, the burden shifts to the defendant to advance a legitimate explanation for the adverse action. *Shackelford v. Deloitte Touche*, 190 F.3d 398, 408 (5th Cir. 1999). If the employer meets its burden, it shifts back to the plaintiff to show that the employer's explanation is pretext for retaliation. *Id.*

Defendant does not dispute that Plaintiff engaged in protected activity; rather, it moves

for summary judgment on the adverse action and causal connection elements. Nor does Defendant advance a legitimate non-retaliatory explanation for the adverse actions at issue. For the reasons discussed below, Defendant's Motion should be denied.

### A. Plaintiff Experienced Several Materially Adverse Employment Actions

The scope of the anti-retaliation provision is broader than the discrimination provision and an adverse employment decision in the retaliation context is not limited to actions that affect employment or alter the conditions of the workplace, such as firing, failing to promote, or reassignment with significantly different responsibilities. *See Burlington N. Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64, 68 (2006).

> An adverse employment action is one that a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. In determining whether an adverse employment action occurred, we focus on the final decisionmaker. The actions of ordinary employees are not imputable to their employer unless they are conducted in furtherance of the employer's business. There must, however, be a direct relationship between the allegedly discriminatory conduct and the employer's business. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (quotation marks and citation omitted).

Applying this lesser standard the court in *Jumbo v. Dolgencorp of Tex. Inc.*, No. 4:15-CV-1451, 2017 U.S. Dist. LEXIS 165502, at *32 (S.D. Tex. Sep. 30, 2017) explained that "the plaintiff must simply show that the action taken by the employer would dissuade a reasonable worker from complaining of discrimination. The Fifth Circuit has recognized that 'even the threat of discharge can be a potent means of chilling the exercise of constitutional rights.' *Any reasonable employee would hesitate before making a complaint of discrimination if he thought*

*that he would lose his job for speaking out.*" (Emphasis added.) As the Supreme Court recognized in *Burlington*, what might seem trivial to some might in fact deter others from complaining of discrimination depending on the specific facts. "*Context matters.*" *Burlington* at 69 (emphasis added).

Here, Defendant's argument that Plaintiff did not experience any materially adverse actions hinges entirely on an incomplete accounting of Plaintiff's evidence. *See* Dkt. 44 at 46-47. Defendant simply cannot meet its burden at summary judgment to inform the Court of the basis for its motion and identifying the evidence it believes demonstrates why Plaintiff's claim should be dismissed by ignoring or not accounting for Plaintiff's evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Graham v. City of Port Lavaca*, Civil Action 6:20-CV-00033, 3 (S.D. Tex. Mar. 31, 2022) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

When viewing Plaintiff's evidence in its totality, Plaintiff establishes that after he complained of discrimination, he experienced several materially adverse actions, including:

1. Reyna was denied at least two promotions, including one as a Tester and the other as a Lead person. XX. Epiroc 000 001 (October 2021 EEOC Charge); Reyna Depo, 126:3 - 128:16; 128:17-131:19; 131:20-132:5; 132:24-135:1; 132:24 - 135:1; 138:3 -139:20; 139:22 - 141:7.

2. It is undisputed that during the time that Reyna was on light duty restrictions he was placed on unpaid medical leave twice when other light duty work was available and other non-Hispanic employees on light duty restrictions were allowed to continue light duty work. . *See, e.g., Sambrano v. United Airlines, Inc.*, 2023 U.S. Dist. LEXIS 224444, *15 (N.D. Tex 2023) (Pittman J.); *Chancey v. BASF*, 2023 U.S. App. LEXIS 26859 (5th Cir.2023); *McNeill v. Tyson Fresh Meats, Inc.*, 2023 U.S. Dist. LEXIS 219122, *14 (N.D. Tex. 2023) (Kacmaryk J.); *Dickerson v. VA*, 2023 U.S. Dist. LEXIS 159042, *19 (S.D. Tex. 2023).

3. Reyna was denied overtime on several occasions, resulting in lost wages that he would have earned but-for his protected activity. XXEpiroc 000 001 (October 2021 EEOC Charge) XXReyna 121-123 _ (March 2021 HR complaint). XXReyna Depo 291: 5-18; 290: 12- 291:16; 273:5-13; 101:10 - 102:5 ; 102:6-16; 102:17 - 103:14. *See, e.g., Magiera v. City of Dallas*, 389 F. App'x 433, 438 (5th Cir. 2010); *Johnson v. Manpower*

*Prof'l Servs.*, 442 Fed. Appx. 977, 982 (5th Cir. 2011) ("[d]enial of overtime pay is an adverse employment action because it relates to [a Plaintiff's] compensation.") (citing *Pegram v. Honeywell* , 361 F.3d 272 at 282 (5th Cir.2004).

4.      Reyna was denied training opportunities that would have provided for advancement opportunities. XXEpiroc 000 001 (October 2021 EEOC Charge)  XXReyna 121-123 _ (March 2021 HR complaint). XXReyna Depo 291: 5-18; 290: 12- 291:16; 273:5-13; 101:10 - 102:5 ; 102:6-16; 102:17 - 103:1. *See, e.g., Rahman v. Exxon Mobil Corporation*, 56 F.4th 1041 (5th Cir. 2023); *see also Priya Gupta v. Qwest Gov't Servs.*, 2023 U.S. Dist. LEXIS 25565, *30 (N.D. Tex. 2023) (Lindsay J.); *Harrison*, 82 F.4th at 431.

5.      Reyna was removed from his role of mentoring new employees and instead was assigned jobs with diminished responsibilities, such as cleaning shelves and machines, which was not part of his job in the first instance, while a non-Hispanic employee who did not report discrimination was assigned the mentorship role instead. Ex. _____  Reyna Depo 235:22 - 236:13. Another employee who had not engaged in protected activity, Eric Griffin (white) was on restrictions at the same time as Reyna but was not made to clean. 230:7-25. Ex_____Reyna Depo 104: 18 - 107:22, 236:13;  228:25 - 229:14. Ex_____  E. Reyna 000013 (Reyna June 29, 2022 EEOC complaint). Epiroc was known to punish employees by assigning them "5s". See Ex. _____ E. Reyna 000116 (Joey Khammanee statement). Removal of job duties has been found to be sufficient to establish an adverse action.  *Aryain v. Wal-Mart Stores*, 534 F.3d 473, 485 (5th Cir. 2008); *Katie Ray v. Harris Cnty.*, 2023 U.S. Dist. LEXIS 222241, *10-11 (S.D. Tex. 2023).

6.      Epiroc refused to accommodate and honor Reyna's light duty work, but accommodated and honored the restrictions of other employees who did not engage in protected activity. Ex. _____ EEOC Complaints. Ex_____ Epiroc 000525 (Reyna HR complaints), and Ex. _____ Reyna Depo 241:15- 242:19; 244:16 - 245:7; 249:20-251:1; 306:6 - 307:2; 261:4 - 262:7; 232:13 - 233:19; 233:20- 235:2, 236:14 - 237:1. *See, e.g., Burlington,* 548 U.S. at 70-71.

In addition to the adverse actions described above, Reyna was subjected to increasingly

hostile harassment and other distinct adverse actions after he complained of harassment, which

Defendant allowed to continue without any recourse against the perpetrators to punish Plaintiff

for his complaints. By way of example and not limitation:

1.      Reyna was continuously surveilled (watched), filmed, threatened with termination, and yelled and screamed at by management. See Ex.____ Reyna Declaration. Ex. ___ Reyna Depo: 194:17-20;  195:8-17;  197:7. Ex____ E. Reyna 000009 (May 13, 2022 EEOC complaint). Ex. _____ Chung Depo 140:19 - 141:4; 152: 11-18 (Chung testified he was instructed to "document and report back). See also Ex. _____ E. Reyna 000001 (EEOC Charge - 10-22-2021).

2.      Reyna was denied access to certain areas of the facility and was restricted from using specific restrooms. This conduct was not only humiliating but impacted Reyna's

ability to perform his job. See also Ex. _____ E. Reyna 000001 (EEOC Charge - 10-22-2021). Ex. _____ Reyna Depo at 100:15 - 10:19. Ex.____ Reyna Declaration. Ex. _____ Internal Complaint, and Ex. ____ E. Reyna 000128 (Patrick Alexander Bouton Statement).

3.      Human Resources refused to submit Reyna's FMLA application and he was not paid for a month, and as a consequence, he had to cancel his FMLA leave prematurely. Ex. _____ Reyna Depo 245:8-246:3; 246:4 - 247:2; 256:5 - 257:1.

4.      Defendant deactivated Reyna's Badge and circulated his picture as if he was an assailant so that he could not enter the building. Ex. _____ E. Reyna 000011 (6/15/22 EEOC Charge), Ex.____ E. Reyna 000015 (7/28/22 EEOC Charge),  See Ex. _____ Reyna 251:18 - 252:23 , Ex.____ See Gudgel Depo 155:10 - 156:12. Ex. _____ Chung Depo, 130:21-131-21; See Ex. _____E. Reyna 000113 (Simmons Witness Statement)

5.      Defendant walked Reyna out of the building on two separate occasions in June of 2022 and November of 2022. Ex_____ Reyna Depo. 233:20 - 235:2; 23719 - 238:15; 304:4 - 305:10.

6.      Defendant placed Reyna in unsafe work conditions, for example, by placing him on a job with two trainees for a task that required three to five or six experienced employees.  Ex_____  EPIROC000087 (6/26/2023 Reyna EEOC complaint) , Ex._____ Chung Depo 60:11-16; 60:17-61:2; 61:3 - 63:7; 154:23 - 155:17. See Ex._____ Reyna ____ Recording with Tyson, where Reyna again states the he is being placed in unsafe conditions, and management knows what they are doing.  By way of further example, Gudgel assigned Reyna to  the Tower Department, which required crane operation, although Reyna did not have the proper training. Ex._____ Reyna Depo 104:18 - 107:22.

When several adverse employment actions are present, courts consider the acts "both individually and in the aggregate." Shannon v. Bellsouth Telecommunications, Inc., 292 F.3d 712, 716 (11th Cir. 2002). Here, taken together, Plaintiff's evidence establishes an ongoing campaign of retaliatory conduct designed to punish Plaintiff for his complaints and quell further opposition by Plaintiff or any other employees. While Plaintiff asserts that each of these actions were sufficient to establish an adverse action under the Muldrow and Hamilton standards, they are more than sufficient to meet the lowered Burlington standard for retaliation.  Each of these actions are  "one that a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Id. at 64.

Given these cumulative facts and circumstances, a reasonable employee in Reyna's position would be dissuaded from complaining of discrimination. Rather than specifically address the adverse actions that Plaintiff experienced, Defendant merely concludes that they were trivial. See Dkt. 44 at 46-47. It cannot meet its burden at summary judgment with vague, conclusory arguments void of evidentiary support. Its Motion should be denied.

**B.** **The Materially Adverse Actions to Which Defendant Subjected Plaintiff are Causally Connection to His Protected Activity**

To establish *prima facie* casual connection, need only show the "employment decision and h[er] protected activity were not wholly unrelated." *Medina v. Ramsey Steel Co.*, 238 F.3d 674 (5th Cir. 2001). Plaintiff's burden to show a causal link at the *prima facie* stage is "much less stringent" than her burden to show ultimate causation. *Long,* 88 F.3d at 305 n.4; *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001). At the *prima facie* stage, close timing between protected activity and adverse action, without more, is sufficient to establish a causal connection. *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019) (4 months is sufficient). *Swanson v. Gen. Servs. Admin.*, 110 F. 3d 1180, 1188 (5th Cir. 1997), *cert. denied*, 529 U.S. 948 (1998); *accord Garret v. Cornstar*, 1999 U.S. Dist. LEXIS 9361, *16-17 (N.D. Tex. May 26, 1999) (four months) *Haire v. Bd. Of Supervisors of La. State Univ.*, 719 F. 3d 356, 368 (5th Cir. 2013) (four-month period); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir.2001) (citing *Weeks v. NationsBank of Texas, N.A.*, No. CIV.A.3:98-CV-1352M, 2000 U.S. Dist. LEXIS 4069, 2000 WL 341257, at *3 (N.D. Tex. Mar. 30, 2000)) (four-month period); *Wallace v. Seton Family of Hosps.*, 777 Fed. Appx. 83, 91 (5th Cir.2019) (four-month period); *Wooten v. McDonald Transit Assocs.*, 788 F.3d 490 (5th Cir.2015) (four-month period).

Here, Plaintiff's evidentiary timeline establishes that the protected activity and adverse actions were inextricably linked. The adverse actions Plaintiff experienced always followed soon after he engaged in protected activity—within the timeframe that the 5th Circuit has held

establishes causal connection at the *prima facie* stage. Between 2021 and 2023, Plaintiff engaged in some form of protected activity at a rate of approximately less than every two months.[6] During this time, Defendant repeatedly subjected Plaintiff to the adverse actions discussed above. Given the frequency of Plaintiff's complaints and the adverse actions at issue, there is simply no way to attenuate temporal proximity beyond a matter of two months. Defendant's own briefing illustrates the direct cause and effect relationship between Plaintiff's complaints and the adverse actions to which Defendant subjected him. *See* Dkt. 44 at 9-18. On Plaintiff's temporal proximity evidence, alone, he establishes *prima facie* causal connection.

In addition to close temporal proximity, it is not in dispute that the relevant decision makers responsible for the adverse actions at issue were aware of Plaintiff's protected activity. *Klebe v. Univ. of Texas Health Sci. Ctr. at San Antonio*, No. 10-50458 at 2 (5th Cir. Nov 17, 2011). Defendant does not argue the decision makers were not aware; rather, Defendant seeks an inappropriate credibility determination at summary judgment by claiming evidence shows some of the decision makers were apparently trying to help Plaintiff. Dkt. 44 at 46-47. This argument misses the mark. All that is required of Plaintiff at the *prima facie* stage is that he establish protected activity and the adverse actions were not unrelated, which Plaintiff does.

### C. Plaintiff Establishes But-For Causation

Once a plaintiff establishes the *prima facie* case, it raises an inference of retaliation,

---

[6] Protected Activity: March 14, 2021---Internal Complaint; October 22, 2021-First EEOC filing; November 2, 2021-Amended EEOC filing; April 6, 2022---Internal Complaint ; April 8, 2022---Internal Complaint ; April 21, 2022---Internal Complaint ; April 25, 2022---Internal Complaint; April 27, 2022---Internal Complaint ; April 29, 2022---Internal Complaint ; May 4, 2022---Internal Complaint; May 9, 2022---Internal Complaint; May 13, 2022-Amended Charge; May 23, 2022---Internal Complaint; June 8, 2022---Internal Complaint; June 15, 2022-Amended Charge; June 29, 2022-Amended Charge; July 7, 2022-Internal Complaint; July 8, 2022-Internal Complaint -; July 28, 2022-Amended Charge; August 16, 2022---Internal Complaint; August 29, 2022---Internal Complaint; October 12, 2022-Amended Charge; October 27, 2022-EEOC issues New NORTs; November 23, 2022-New charge filed; March 6, 2023-Amended Charge; May 22, 2023---Internal Complaint ; June 26, 2023-Amended Charge; October 12, 2023  -EEOC issues NRTS.

which the employer may rebut by producing evidence of a legitimate, non-retaliatory reason for the adverse action. *Parker*, 323 F. App'x at 327; *see also Burdine,* 450 U.S. at 254. Defendant <u>did not</u> advance a legitimate non-retaliatory explanation for the adverse actions that Plaintiff experienced. Dkt. 44 at 55. While it asserted an alleged legitimate explanation for Plaintiff's disparate treatment claims, it did not make any such argument or incorporate the same for its briefing as to Plaintiff's retaliation claim. Thus, the inference of retaliation established by Plaintiff's *prima facie* case carriers through to his ultimate burden to establish that but-for his protected activity, he would not have experienced the adverse actions at issue. *Sherrod*, 132 F.3d at 1122. Even had Defendant asserted the same explanations it did for Plaintiff's disparate treatment claims to his retaliation claims (it did not), its argument would fail for the reasons discussed in the context of Plaintiff's disparate treatment claims, above.

While it is Plaintiff's ultimate burden to establish but-for causation, only in "rare instances" will a showing of pretext not establish but-for causation, as "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.,* 482 F.3d 408, 415 (5th Cir. 2007) (quoting *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 147 (2000); *accord Laxton v. Gap Inc.*, 333 F.3d 572, 585 (5th Cir. 2003); *EEOC v. LHC Group, Inc.,* 773 F.3d 688, 694 (5th Cir. 2014). This is not the rare case where the record conclusively reveals an additional non retaliatory reason that explains the adverse actions or where "abundant and uncontroverted independent evidence" shows no retaliation occurred. *Reeves,* 530 U.S. at 148. Moreover, even if the Court were to determine Defendant's explanation was *a* but-for cause of the adverse actions, Plaintiff's evidence raises material disputes about whether protected activity was *another* but-for cause. *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739 (2020).

But-for causation may be proved with any evidence that establishes retaliatory animus

caused the adverse actions at issue. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Causation evidence is viewed cumulatively and in its totality. *See, e.g., Caldwell v. Khou-TV,* 850 F.3d 237, 244 (5th Cir. 2017); *Nixon v. Silverado Hospice of Hous.*, H-12-0985 (S.D. Tex. Jul 31, 2013). Evidence probative of causation may include evidence of disparate treatment,[7] "harassment from a supervisor following the protected activity,"[8] expression of animus following protected activity,[9] "warnings from other employees not to engage in the protected activity,"[10] inadequate or biased investigations[11] and suspicious timing,[12] among other evidence.[13]

Plaintiff's evidence establishes a substantial basis from which a reasonable fact finder could find that Plaintiff's protected activity caused the adverse actions, he experienced.

### 1.    Disparate Treatment

As discussed in detail in the context of Plaintiff's disparate treatment claims, he was routinely treated worse than similarly situated white employees who did not engage in protected activity, which is probative of pretext and but-for causation. *Brown v. Wal-Mart Stores E.*, 969 F.3d 571, 581 (5th Cir. 2020).

### 2.    Statements Probative of Retaliatory Intent

Several of the decision makers at issue, telegraphed their retaliatory intent when they

---

[7] *Brown v. Wal-Mart Stores E.*, 969 F.3d 571, 581 (5th Cir. 2020).

[8] *Id.*

[9] *See Klebe v. Univ. of Texas Health Sci. Ctr. at San Antonio*, No. 10-50458 (5th Cir. Nov 17, 2011) (holding "Dr. Walter's animus toward Klebe after he filed the age discrimination claim" was probative of causation).

[10] *Brown,* 969 F.3d at 581.

[11] *Polanco v. City of Austin*, 78 F. 3d 968, 980 (5th Cir. 1996).

[12] *Fabela v. Socorro Independent School Dist*, 329 F.3d 409, 418 n.9 (5th Cir. 2003).

[13] *Brown,* 969 F.3d at 581 (providing various pretext evidence).

learned Plaintiff complained or intended to complain. By way of example and not limitation, Gudgel explicitly warned Plaintiff that "things would get worse" if Plaintiff reported the racial remarks that his white workers made. Ex. _____ March 24, 2021 Complaint to HR (Reyna 121-123). Ex._____ Reyna Dep., Ex. _____ Reyna 000001 -000002 EEOC Charge - 10-22-2021. Gudgel antagonized Plaintiff after denying him a promotion, asking him: "when are you going to move up?" and telling him how much other employees who did not report discrimination were making in the position to which they were promoted. Ex._____ Declaration, and Ex._____ . On June 14, 2022, Scott Oleski told Plaintiff that he heard Plaintiff was being punished, which was the reason why Gudgel had Plaintiff cleaning the beams, doors, shelves and tables. On June 24, 2022, when Plaintiff asked Peter Choung if he could go back to his mentoring duties, Choung told him that Gudgel said "no" because he was "enjoying" that Plaintiff was made to clean. Plaintiff's coworker, Joey Khammane, attested that following several HR complaints, Black and Hispanic employees were cornered, out of the view of camera and witnesses, to intimidate and scare them and thereafter assigned to cleanup tasks. Ex. _____ Joey Khammane statement   Human resources warned Plaintiff in response to one of his complaints: "this company takes really good care of its supervisors." Defendant vice president told Plaintiff on June 10, 2022, that he deactivated Plaintiff's badge and warned him to stop sending complaints about his company. And one of Plaintiff's coworkers told Plaintiff in late-2022, that Defendant was using him as an example to employees to dissuade other employees from reporting harassment or discrimination.

3.     <u>Defendant Explicitly Discouraged Plaintiff from Complaining</u>

In addition to statements bearing directly on retaliatory intent, Defendant refused to investigate Plaintiff's complaints and discouraged further reporting. For example, Human Resources staff called Plaintiff into meetings to dissuade him from feeling discriminated against (because "everyone there was a minority"), to tell him to stop saying he was being retaliated

against, and to tell him no one else had complained about Gudgel, even though in the case of Tyson, he admitted he had never reviewed his personnel file or record to confirm that. Ex. --- (00180). Chung himself told Plaintiff to stop filing complaints with Human Resources because nothing would be done to address them. Ex. --- (00177). Despite Human Resources' refusal to take Plaintiff's complaints seriously and address them, even Tim Choate recognized his unlawful behavior and error and eventually apologized to Plaintiff on May 4, 2023, for engaging in discriminatory and retaliatory conduct against him. Ex. --- (00201). Choate's admission constitutes direct evidence of Defendant's discriminatory conduct and retaliation, even when other supervisors and Human Resources dismissed Plaintiff's complaints – including those about Choate - as illegitimate and frivolous.

On February 10, 2023, Tyson told Plaintiff that he could no longer say he was being retaliated against while admitting that investigating Plaintiff's complaints had caused him problems, meaning it caused retaliatory conduct by his supervisors. Ex. --- (00179). Plaintiff specifically mentioned that Nguyen had approached him right after Plaintiff November 2022 and Tyson acknowledged that retaliation occurs. Ex. --- (00180). On May 10, 2023, instead of helping Plaintiff resolve his complaints, Tyson approached him in an aggressive one and said he was tired of him complaining and that instead of Human Resources investigating and speaking with his supervisors, Plaintiff would need to work it out directly with them. Ex. --- (151120-1). Instead, Tyson suggested to Plaintiff that he speak directly to Gudgel, Thang and Choate and ask them "why they do what they do to [him]." *Id*.

4.    Failure to Investigate

Defendant's failure to investigate Reyna's complaints and EEOC charges provide additional evidence of Pretext. Defendant's policy requires investigation of discrimination complaints (SOF *). Defendant admits that Reyna made numerous internal complaints and filed nine EEOC charges. (Def.'s Br. at 45). Although Defendant falsely claimed that Reyna refused

to provide information to support his complaints, Defendant failed to properly investigate any of the complaints and by ignoring the information Reyna provided. SOF ** An inadequate or biased internal investigative process can indicate discrimination. *Polanco v. City of Austin*, 78 F. 3d 968, 980 (5th Cir. 1996). *See, e.g., Sociedad Espanola De Auxilio v. NLRB*, 414 F.3d 158, 163 (1st Cir. 2005) (lack of an adequate investigation, including not performing a thorough review of the paper record and not talking with employees likely to have knowledge of the matter, can evidence pretext); *Pacheco v. New Life Bakery, Inc.,* 187 F. 3d 1055 (9th Cir. 1999) (inadequate investigation, including not interviewing employees likely to have knowledge and making findings in the investigation contrary to information solicited in the investigation, evidence pretext); *Tisdale v. Federal Exp. Corp.*, 415 F. 3d 516, 529-30 (6th Cir. 2005) (failure to speak to important witnesses and collect relevant evidence in an investigation of misconduct evidences pretext). Here, no adequate investigation was conducted regarding Reyna' numerous complaints, ** SOF . Instead, the Defendant either claims they were unable to substantiate Reyna's complaints or that Reyna did not provide enough information to investigate. This failure to adequately investigate by making no effort to gather relevant facts and then make a determination that the complaint was unsubstantiated, indicates discriminatory and retaliatory animus.

5.   Temporal Proximity

Finally, while temporal proximity alone will not establish pretext, it is nevertheless relevant to a pretext inquiry. *Shackelford,* 190 F.3d at 409-10. For example, it is probative of pretext when despite a history of positive performance, an employee is suddenly deemed to be under performing or subjected to abusive conduct shortly after protected activity. *See id.* Such is the case here. As discussed in detail *supra* Section XX, Plaintiff was routinely subjected to adverse actions shortly after he engaged in protected activity. This close timing informs the motivation for the adverse actions and makes Plaintiff other pretext evidence more compelling.

Even if the Court were to determine that there were some other but-for cause of the adverse actions at issue, Plaintiff's evidence raises material disputes about whether protected activity was *another* but-for cause. *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739 (2020).

## VIII. REYNA ESTABLISHES GENUINE ISSUE OF FACT TO SURVIVE SUMMARY JUDGMENT ON HIS DISCRIMINATION AND FAILURE TO ACCOMMODATE CLAIMS UNDER THE ADA AND THE TEXAS LABOR CODE CHAPTER 21

Reyna asserts a claim of disability discrimination based on the "TCHRA" and ADA." To establish disability discrimination, Reyna must show that (1) has a disability; (2) was qualified for the job; and (3) she was subject to an adverse employment decision due to disability. *Cannon v. Jacobs Field Servs. N. Am., Inc*., 813 F. 3d 586, 590 (5th Cir. 2016).

Reyna presents direct evidence of disability discrimination in that

* Jackie suggested to HR June 2, 22 that they should put Edgar out until MMA. Ex. _____ Bates 573.

* Jackie admitted in his deposition that he suggested this because he was sick of all the complaints about him. They sent him out on leave on July 7, 22.

* Peter verifies that Jackie asked to bring Reyna back to full duty 3 times.

* Peter testified that Jackie did discuss with Edgar that if they had too much indirect time (work not chargeable to the rig) that this would result in a lay off and that Edgar thought his job was threatened. Peter testified that he felt Jackie's comment was inappropriate.

* Tyson's investigation found a failure of interactive process.

As such, the burden shifts to Defendant to prove that the same employment decision would have been made absent any discriminatory intent.

Using circumstantial evidence the employee has the threshold requirement of establishing that he is a qualified individual with a disability. A disability is defined under the ADA as: (1) a physical or mental impairment that substantially limits one or more major life activities of an individual; (2) a record of such an impairment; or (3) being regarded as having an impairment. 42 U.S.C. § 12102(2). "Substantially limited" means being "[u]nable to perform a major life activity that the average person in the general population can perform that same major life

activity." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002), quoting 29 C.F.R. §

1630.2(j). If Reyna establishes a prima facie case, the burden shifts to the employer to articulate

a legitimate, non-discriminatory reason for the termination. *St. Mary's Honor Ctr. V. Hicks*, 509

U.S. 502 (1993). A plaintiff may raise a genuine issue of fact that the employer's stated reasons

for its decisions with respect to his employment were untrue and thus a pretext for

discrimination. *See id*. Defendant does not challenge that Reyna's hand crush fracture qualified

as a disability for the first prong of the prima facie case. The inability to use one's hand would

substantially limit a major life activity.

### A. Genuine issues of Material Fact Exist as to Whether Defendant Failed to Accommodate Reyna's Crush Fracture

The ADA prohibits discrimination, defined as including an employer "not making

reasonable accommodations to the known physical or mental limitations of an otherwise

qualified ... employee, unless [the employer] can demonstrate that the accommodation would

impose an undue hardship on the operation of [its] business." 42 U.S.C. § 12112(b)(5)(A); *U.S.

Airways, Inc. v. Barnett*, 535 U.S. 391, 396 (2002). The Act defines reasonable accommodation

as including job restructuring. 42 U.S.C. § 12111(9)(B). The plaintiff's burden on reasonableness

is simply to show that the accommodation "need only show that an 'accommodation' seems

reasonable on its face, *i.e.*, ordinarily or in the run of cases." *Barnett*, *supra*, 535 U.S. at 401.

"Modifications or adjustments that enable a covered entity's employee with a disability to enjoy

equal benefits and privileges of employment as are enjoyed by its other similarly situated

employees without disabilities." 29 C.F.R. § 1630.2(o)(1).

To prevail on a claim of discrimination based on a failure to accommodate a disability, the

plaintiff must show that: (1) the employer is covered by the statute; (2) she is an individual with

a disability; (3) she can perform the essential functions of the job **with or without reasonable

accommodation**; and (4) the employer had notice of the disability and failed to provide

accommodation. *Mzyk v. North East Indep. Sch. Dist.*, 397 F. App'x 13, 16, n.3 (5th Cir. Sep. 30, 2010)(emphasis added). The law requires a "flexible, interactive process" between the employer and employee to determine appropriate reasonable accommodations. 29 C.F.R. Pt. 1630 App., § 1630.9; *Taylor v. Principal Fin. Group.*, 93 F.3d 155, 165 (5th Cir. 1996), *cert denied,* 519 U.S. 1029 (1996) ("once an accommodation is properly requested, the responsibility for fashioning a reasonable accommodation is shared between the employee and employer"). Reyna's initial request for accommodations triggered Defendant's obligation to engage in the flexible interactive process. *Taylor, supra,* 93 F.3d at 165.

Notably, the enumerated elements above do not include proof of an adverse employment action, such as a demotion or a termination—an adverse employment action is not a required element of an ADA failure to accommodate claim. Rather, a failure to accommodate claim provides a mechanism to combat workplace discrimination even when the employee in question has not suffered an adverse employment action. *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 703 n.6 (5th Cir. 2014). The "adverse" conduct by the employer that triggers an ADA failure to accommodate claim is the employer's denial of the employee's reasonable accommodation request. *Bright v. Martin*, 2022 U.S. Dist. LEXIS 201711, *6-8 (E.D.LA 2022). *See Windhauser v. Bd. of Supervisors*, 360 Fed. Appx. 562, 566 (5th Cir. 2010).

Contrary to Defendant's claims in their motion. Defendant never told Reyna that he was not qualified for his position and that they could not accommodate his requested restrictions. Indeed, this is not a case where Defendant has a blanket no light duty policy or refused to accommodate Reyna's crush fracture during the entire period of restriction. Instead, Defendant allowed Reyna to work using only one hand for more than three * months. During this time, Reyna performed the duties he could perform with a single hand which included essential duties such as maneuvering cranes (a significant portion of an Assembler's duties require the use of a

crane) hooking up wires and cables and mentoring new employees. (SOF *). The fact that Defendant was able to accommodate Reyna's work restrictions and allowed him to work as an assembler without using his left hand for a period of ** should create a fact issue on whether or not Reyna was qualified to do his job with reasonable accommodations.

- Walk through timeline of restrictions/ projects
- Peter's testimony about the 3 times and the threat
- Jackie's direct evidence of send him home
- They sent him home twice.
- Tyson's finding that they did not conduct a proper reasonable accommodation analysis

The fact that Tyson's investigation found that Defendant failed to engage in the interactive process before sending Reyna out on medical leave is prima facie evidence that the employer may be acting in bad faith. *Minnihan v. Mediacom Commc'ns Corp.*, 779 F.3d 803, 813 (8th Cir. 2015) (quoting *Cravens v. Blue Cross and Blue Shield of Kansas City*, 214 F.3d 1011, 1021 (8th Cir. 2000)). An employer's failure to engage in the interactive process "is actionable 'if it prevents identification of an appropriate accommodation for a qualified individual.'" *Spurling v. C & M Fine Pack*, 739 F.3d 1055, 1062 (7th Cir. 2014) (quoting *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013)); *see also Humphrey v. Memorial Hospitals Ass'n*, 239 F. 3d 1128, 1137-38 (9th Cir. 2001) (citations omitted).

Numerous courts have found that the fact that employer allowed a disabled employee to avoid a job duty in the past is some evidence that the duty is not an essential function. *Carmona v. Southwest Airlines Co.*, 604 F.3d 848, 860 n.3 (5th Cir. 2010) ("Southwest's decision to grant Carmona intermittent FMLA leave, despite the fact that he was frequently unable to give Southwest notice of his absences in advance, and without transferring him to a different position in the company, suggests that attendance was not in fact an essential requirement of his job.)". *See also, Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1183 (11th Cir. 2019); *Camp v. BI-LO, LLC*, 662 Fed. Appx. 357  (6th Cir. 2016); *Shell v. Smith*, 789 F.3d 715 (7th Cir. 2015);

*Miller v. Illinois Dept. of Transp.*, 643 F.3d 190, 198–200 (7th Cir. 2011) (in the past, other team members were available and assigned tasks that plaintiff could not do); *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 121 (2d Cir. 2004); *Blockel v. J.C. Penney Co., Inc.*, 337 F.3d 17, 26 (1st Cir. 2003); *Fromm v. MVM, Inc.*, 371 Fed. Appx. 263, 269 (3d Cir. 2010); *Calvo v. Walgreens Corp.*, 340 Fed. Appx. 618, 623 (11th Cir. 2009) (supervisor testified that plaintiff was "working fine" despite inability to lift); *Presta v. Omni Hotels Management Corporation*, 2018 WL 1737278 (S.D. Tex. 2018); *Molina v. DSI Renal, Inc.*, 840 F. Supp. 2d 984, 998–999 (W.D. Tex. 2012).

Additionally, numerous courts have found that a past accommodation may be evidence that the accommodation was reasonable. *Hill v. Associates for Renewal in Education, Inc.*, 897 F.3d 232, 240 (D.C. Cir. 2018) ("[E]very teacher but Hill had a classroom aide and ARE had given Hill such an aide in the past."); *Miller v. Illinois Dept. of Transp.*, 643 F.3d 190, 200 (7th Cir. 2011) ("A jury should be permitted to consider Miller's actual work environment and IDOT's past flexibility in delegating tasks amongst the bridge team members in deciding whether Miller's request for accommodation was reasonable."); *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008) (past supervisors made no complaints about productivity when plaintiff was allowed to use a stool).

### B. Genuine issues of Material Fact Exist as to Whether Discriminated Against Reyna on the Basis of Disability

As detailed above, Reyna was qualified to work as an assembler with accommodation and in fact did do that work for over 4 months. Plaintiff asserts that his reassignment to cleaning duties and the two forced unpaid medical leaves are adverse actions. See sections ** above. As such, Reyna raises a genuine dispute of material fact as to the third prong of the prima facie case for disability discrimination.

Contrary to Defendant's analysis a plaintiff is not always required to prove that they were treated less favorably than a non-disabled employee to establish a prima facie case. The "precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'" *Swierkiewicz v. Sorema N.A*, 534 U.S. 506 at 512, (quoting *Furnco Constr. Corp. v. Waters* , 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978) ). The fourth element is not universal. In *E.E.O.C. v. LHC Group, Inc.*, the Fifth Circuit declined to require such pleadings or proof in an ADA disability termination case. 773 F.3d 688, 695–97 (5th Cir. 2014) (stating that requiring employees to prove termination was because of disability and to prove disfavored treatment requires employees to prove causation twice, which is inconsistent with *McDonnell Douglas* and underlying purpose of anti-discrimination legislation— "namely, to remove 'artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification'") (quoting *McDonnell Douglas* , 411 U.S. at 801, 93 S.Ct. 1817 ).

Plaintiff establishes a prima facie case of disability discrimination. Additionally, the fact that Defendant admits they hired an assembler, Nico, to fill in for Plaintiff during his disability and also that they were forced to remove Plaintiff's mentoring duties, put Plaintiff on cleaning duty and send him on unpaid medical leave twice establishes a question of fact as to whether Plaintiff was treated less favorably than non-disabled employees, including Nico. A jury may believe that the decision to demote and send Plaintiff on unpaid leave when there was not enough work as opposed to Nico or other Assemblers equates to treating Plaintiff less favorably.

## C. Pretext

Plaintiff creates a genuine issue of material fact regarding pretext for his reassignment to cleaning duties and the two forced unpaid leaves. See sections ** above

- Reyna establishes that he was subjected to adverse actions because of his disability through, Peter's testimony about the 3 times and the threat
- Jackie's direct evidence of send him home

- They sent him home twice.
- Tyson's finding that they did not conduct a proper reasonable accommodation analysis

## CONCLUSION

WHEREFORE PREMISES CONSIDERED, Plaintiff Edgar Reyna respectfully requests this Honorable Court deny Defendant's Motion for Summary Judgment in its entirety.

## CERTIFICATE OF SERVICE

I certify that on the date indicated herein, I caused a copy of the foregoing to be served, via the Court's electronic case filing system, upon all counsel of record.

Dated: August 29, 2024

**ATTORNEYS FOR DEFENDANTS**

*/s/Lisa Ventress*
Lisa Ventress