UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



EDGAR REYNA,                           §
                                       §
        *Plaintiff,*                   §
                                       §
v.                                     §        Civil Action No.  3:23-CV-1005-X
                                       §
EPIROC DRILLING SOLUTIONS,             §
LLC,                                   §
                                       §
        *Defendant.*

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Epiroc Drilling Solutions, LLC's (Epiroc) motion for summary judgment (Doc. 43), Epiroc's motion to strike (Doc. 70), Epiroc's motion to exclude the testimony of Julia Bickerstaff (Doc. 46), and Epiroc's motion to stay pending a ruling on this motion (Doc. 80).  Having considered the parties' briefs and the evidence presented, the Court **GRANTS IN PART** and **DENIES IN PART** the motion for summary judgment, **GRANTS IN PART** and **DENIES IN PART** the motion to strike, **DENIES** the motion to exclude, and **FINDS AS MOOT** the motion to stay.  At the end of the day, here is what is left for trial: Reyna's loss-of-mentorship discrimination claim, his retaliation claim, and his failure to accommodate claim.

## I. Factual Background

This is an employment discrimination case.  Edgar Reyna was born in Mexico and is Hispanic.  Since 2017, Reyna has worked as an assembler at Epiroc.  Today, he is still employed at Epiroc.  His supervisor was a man named Jackie Gudgel, until

Gudgel retired. Since 2021, Reyna has filed nine discrimination charges with the Equal Employment Opportunity Commission (EEOC) largely resulting from Gudgel's purported conduct.

The first complaint arose while Reyna tried to get tickets to the company picnic in 2018. Reyna wanted to bring his extended family to the company picnic. What happened is a bit unclear: Reyna alleges that two coworkers said they did not want to go to the picnic if Reyna's "tios and tias" were going to be there and Gudgel laughed. But the only evidence of the comment comes when in Reyna's deposition the *questioner* asked about Reyna's "[tios] and your uncles and aunts."[1] Whatever happened that day, it apparently set off a firestorm of complaints and allegations of discrimination and retaliation. Whether hero or villain, tickets to the company picnic are Reyna's origin story.

Eventually, Reyna sought a promotion to become a Leadman. Three people interviewed Reyna: Gudgel in one round and Peter Chung and Thang Nguyen in the next.[2] Apparently both Chung and Nguyen recommended Reyna for the position, but ultimately, Epiroc did not grant Reyna the promotion. Epiroc says it did not hire Reyna because he was less qualified than the person it did select: Chris Hoang.

According to Reyna, Epiroc seems like a less-than-stellar place to work. For one, Reyna alleges that racial slurs are commonplace.[3] He alleges he was surveilled,

---

[1] Doc. 45 at App. 84.

[2] Doc. 45 at App. 35.

[3] Doc. 66 at 30–31.

recorded, mocked, and threatened with termination.[4] And Reyna suffered an injury on the job in January of 2022.[5] He severely crushed his finger in an accident with a hammer.[6] As a result Reyna brought several disability-based claims. He alleges that Epiroc discriminated against him and failed to accommodate his condition. He claims that he continued working as an assembler for more than three months until he was reassigned to cleaning duty and "forced" onto unpaid medical leave twice.[7] As for Reyna's failure to accommodate claim, he alleges that Epiroc did not fashion a reasonable accommodation for him.

Reyna also alleges he experienced multiple other adverse employment actions while at Epiroc. He was apparently denied overtime opportunities, denied electrical training, removed from mentoring new employees, and was forced to clean for his "light duty" rather than perform desk work. Reyna also has a retaliation claim. Reyna submitted numerous complaints—averaging about one every two months—and out of frustration, Gudgel admitted to asking if Human Resources had considered placing Reyna on unpaid leave. Based on these facts, Reyna brings claims under Title VII, the Texas Commission on Human Rights Act (TCHRA), 42 U.S.C. § 1981, and the Americans with Disabilities Act (ADA).

The procedural history, while less circuitous than the underlying facts, warrants some recollection. Epiroc filed a motion for summary judgment, a motion

---

[4] Doc. 45 at App. 30–32.

[5] Doc. 45 at App. 36.

[6] Doc. 45 at App. 11, 112.

[7] Doc. 66 at 49.

to exclude the testimony and report of Reyna's treating psychiatrist Julia Bickerstaff, a motion to stay, and a motion to strike portions of Reyna's briefing.  Now, all outstanding motions are ripe.

## II. Legal Standards

Although there are three motions before the Court, the motions to strike and to exclude contain standards within their analysis sections.  Therefore, the Court only lays out the employment discrimination and retaliation summary judgment standards here.

District courts can grant summary judgment only if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8]  A dispute "is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."[9]

A plaintiff can show his discrimination or retaliation claims through either direct or circumstantial evidence.  "Direct evidence is evidence which, if believed, proves the fact without inference or presumption."[10]  While "a plaintiff can rely on direct evidence, . . . it is rare in discrimination cases."[11]  "That is because it will be the rare case where statements or documents will show on their face that an improper

---

[8] Fed. R. Civ. P. 56(a).

[9] *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) (cleaned up).

[10] *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005).

[11] *Rutherford v. Harris County*, 197 F.3d 173, 180 n.4 (5th Cir. 1999) (cleaned up).

criterion served as a basis—not necessarily the sole basis, but *a* basis—for the adverse employment action."[12]

If the plaintiff does not rely on direct evidence, then the plaintiff's claims must undergo the Supreme Court's *McDonnell Douglas* burden-shifting framework.[13] Under *McDonnell Douglas*, the plaintiff must make a *prima facie* showing of discrimination.[14] *Prima facie* cases differ depending upon the kind of claim asserted.

For a Title VII disparate treatment claim, a plaintiff's *prima facia* case must show that he (1) "is a member of a protected class," (2) "was qualified for [his] position," (3) "suffered an adverse employment action," and (4) "others similarly situated were more favorably treated."[15]

For a Title VII retaliation claim, a plaintiff's *prima facia* case must show that (1) he "engaged in protected activity," (2) he "suffered an adverse employment action," and (3) "a causal link exists between the protected activity and the adverse employment action."[16]

For a Title VII failure to promote claim, the plaintiff's *prima facia* case must show that "(1) he was not promoted, (2) he was qualified for the position he sought,

---

[12] *Wilkinson v. Pinnacle Lodging, L.L.C.*, No. 22-30556, 2023 WL 6518142, at *3 (5th Cir. Oct. 5, 2023) (cleaned up).  In the retaliation context, the direct evidence must establish that the "protected activity was a but-for cause of the alleged adverse action by the employer."  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

[13] *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015); *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) ("The analysis of discrimination claims under Section 1981 is identical to the analysis of Title VII claims.").

[14] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[15] *Rutherford v. Harris County*, 197 F.3d 173, 184 (5th Cir. 1999).

[16] *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021).

(3) he fell within a protected class at the time of the failure to promote, and (4) the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote the plaintiff because of his race."[17]

Under the Americans with Disabilities Act, the plaintiff's *prima facia* case must show that "(1) he has a disability or was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision because of his disability."[18]

If the plaintiff successfully raises a *prima facie* discrimination case, that raises a presumption of discrimination, which the defendant may rebut by "articulat[ing] some legitimate, nondiscriminatory reason" for the employer's actions.[19] If the defendant produces evidence that the perceived discriminatory treatment was justified by a "legitimate, nondiscriminatory reason," the burden then "shifts back to the plaintiff, who must show the articulated reason is pretextual."[20]

Lastly, for the plaintiff to succeed on a hostile work environment claim, he must show five elements: "(1) the victim belongs to a protected group; (2) the victim

---

[17] *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346–47 (5th Cir. 2013).

[18] *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 341 (5th Cir. 2019). Notably, as an action laying in tort, section 1981 claims also have a strict but-for causation requirement. By contrast, traditional Title VII lawsuits only require a showing that discriminatory factors played some role in the decision. *Compare Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 341 (2020) ("To prevail, a [Section 1981] plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right.") *with id.* at 337 ("In the Civil Rights Act of 1991, Congress provided that a Title VII plaintiff who shows that discrimination was even a motivating factor in the defendant's challenged employment decision is entitled to declaratory and injunctive relief. A defendant may still invoke lack of but-for causation as an affirmative defense, but only to stave off damages and reinstatement, not liability in general." (cleaned up)).

[19] *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 408 (5th Cir. 2016) (cleaned up).

[20] *Thomas*, 788 F.3d at 179.

was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action."[21]

### III. Motion to Strike

Epiroc filed a motion to strike certain portions of Reyna's amended appendix. Epiroc asks that the Court strike the entirety of Doc. 68, which contains 267 pages of appendix material categorized as 33 additional exhibits. The Court imposed a deadline but Reyna blew it by six days.

Federal Rule of Civil Procedure 6(b)(1) allows "district courts, for good cause, to extend deadlines with or without motion if the court acts before the original time or its extension expires, or on motion made after time has expired if there was excusable neglect."[22] To determine whether the neglect is excusable, courts consider four factors: (1) "the danger of prejudice" to the opposing party, (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith."[23] The Court finds little danger of prejudice to Epiroc, as it had eight days between Reyna's supplemental filing and its reply and Epiroc could have sought an extension to account for the supplemental filing but did not. The length of the delay was six days. Not great. The proffered

---

[21] *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007).

[22] *Kitchen v. BASF*, 952 F.3d 247, 254 (5th Cir. 2020) (citing Fed. R. Civ. P. 6(b)(1)).

[23] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 395 (1993).

reason for the delay is that counsel did not know the appendix had been broken up into two chunks and thought she filed all of them on time.[24] The same day she learned of the mistake, she corrected it[25]—indicating good faith.

The Court does not welcome blown deadlines and a tsk-tsk or two is in order, but, in the end, this neglect is excusable—especially in light of the Fifth Circuit's preference to adjudicate cases on the merits, rather than on procedural mishaps. Mistakes happen and this was a good faith mistake that took some time away from Epiroc to see the underlying documents, but it could have been resolved between the parties or with an extension. The Court finds that this is an instance of excusable neglect, **DENIES** the motion to strike all of Doc. 68, and sternly reminds the parties to be aware of their calendars and docket entries going forward—a double-check never hurts.

Alternatively, Epiroc argues that the Court should strike (1) several previously stricken exhibits, (2) Reyna's audio files, (3) Reyna's declaration, and (4) witness statements.

As for the previously stricken exhibits, here's what happened: Reyna filed a motion and brief that did not comply with the Court's local rules.[26] The brief was incomplete and missing citations, and contained several drafting errors, and counsel had issues attaching exhibits.[27] Reyna then filed amended briefs by his proposed

---

[24] Doc. 75 at 5.

[25] Doc. 75 at 5.

[26] *See* Docs. 51–53.

[27] Doc. 54 at 2.

deadline, but without leave of the Court.[28]  Reyna's counsel stated they needed a few extra days to correct those issues.[29]  The Court, holding Reyna's counsel to their word that the brief merely needed editing, gave Reyna an additional week to edit and refile the brief and appendix but prohibited substantive changes, *e.g.*, new arguments.[30] The Court also struck the amended documents Reyna filed without leave.  Epiroc takes issue with the exhibits Reyna attached to his amended filing that the Court struck.  These procedural quibbles are not the sort of thing the Court will keep information out for—especially when the information may prove helpful.  The fact that Reyna's counsel submitted a filing saying counsel had trouble attaching attachments[31] and included those in the filing, when if wholly diligent, they would have been there in the first place, is of no concern for the Court.  Therefore, the Court **DENIES** the motion to strike the previously stricken exhibits.

Epiroc also asks the Court to strike several of Reyna's audio files.  Epiroc is concerned that it does not know the contents of the flash drive submitted to the Court. To mitigate this, the Court **ORDERS** that Reyna provide to Epiroc an exact copy of the contents of the flash drive submitted to the Court within 3 days of this Order. Epiroc also takes issue with authentication.  The question is not whether those audio files are admissible right now, but whether they are admissible at trial.[32]  Because

---

[28] *See* Docs. 57–59.

[29] Doc. 54 at 2.

[30] Doc. 61.

[31] Doc. 54 at 2.

[32] *See Miller v. Michaels Stores, Inc.*, 98 F.4th 211, 218 (5th Cir. 2024) ("Hearsay is not competent summary judgment evidence unless its proponent can show that the statement can be presented in an admissible form at trial." (cleaned up)).

Epiroc provides no reason why they cannot be authenticated at trial, the Court **DENIES** the motion to strike the audio files.

Epiroc asks that the Court strike Reyna's declaration. Rather than striking the whole document, the Court will look to each statement in context to determine if it is inapplicably conclusory, vague, or lacking in personal knowledge. As a result, the Court **DENIES** the motion to strike the entire declaration.

Finally, Epiroc requests that the Court strike Reyna's witness statements. The Court declines to strike these on the grounds that they contain hearsay, are conclusory, and lack a basis in personal knowledge. Rather, the Court is concerned that the statements are unsworn, which generally forecloses the Court's ability to rely on those statements at the motion for summary judgment stage. The longstanding rule in the Fifth Circuit is that "an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment."[33] There is a small statutory exception for this rule when the statement is made under penalty of perjury, verified as true and correct, provides the date, and contains a signature.[34] None of the witness statements contain any such indicators to comply with the statute.

Reyna's counsel did sign a declaration pursuant to 28 U.S.C. § 1746 that the witness statement exhibit is a "true and correct" copy.[35] But this is insufficient to transform others' unsworn statements into material that the Court can rely on at the summary judgment stage. The question is whether the person making the statement

---

[33] *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988).

[34] 28 U.S.C. § 1746.

[35] Doc. 68 at App. 688.

10

swears to it—not that someone else swears to it.  Therefore, the Court cannot rely on the witness statements at the summary judgment stage, and the Court **GRANTS** the motion to strike the witness statements and **STRIKES** the witness statements contained at Doc. 68 Exhibit F from the record.

*    *    *

Therefore, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to strike.  Additionally, it **ORDERS** Reyna to provide to Epiroc a copy of the flash drive materials Reyna sent to the Court.

### IV. Motion to Exclude the Testimony and Report of Julia Bickerstaff

Julia Bickerstaff is Edgar Reyna's treating psychiatrist.  Reyna seeks to introduce her testimony at trial, but Epiroc argues it should be excluded for several reasons: (1) Reyna did not timely disclose Bickerstaff, (2) Reyna failed to comply with Federal Rule of Civil Procedure 26 so Bickerstaff's testimony should be excluded pursuant to Rule 37, and (3) her testimony is inadmissible under Rule 702.

Epiroc complains that Bickerstaff cannot testify as an expert witness under Rule 702 and *Daubert*.  There's one problem: she's not testifying as an expert. Instead, she's testifying as a fact witness under Rule 701.  While she treated Reyna as his psychiatrist, it does not appear she will testify as an expert.  Instead, she will testify "about her treatment and assessment of [Reyna's] mental health."[36]

The principle is clear: "[A] treating physician's testimony is based on the physician's personal knowledge of the examination, diagnosis and treatment of a

---

[36] Doc. 49 at 10.

patient."[37]   Bickerstaff can testify as to questions that "implicate [her] expertise."[38] For instance, she "can be asked about the degree of injury in the future, or about anything else that was a necessary part of the patient's treatment."[39]   On the other hand, she cannot testify "about medical issues not involved in [her] diagnosis and treatment."[40]

While she will testify as to "her past and future treatment of Plaintiff and her testimony and the opinions derived therefrom,"[41] so long as this means she will testify to matters of personal knowledge of her examination, diagnosis, treatment, she is not considered an expert witness.  As a result, the Court need not resolve any *Daubert* issues, because Bickerstaff won't testify as an expert witness.[42]

Although decently clear here, "[w]hether to consider treating physicians as fact witnesses under Rule 26(a)(1) or as expert witnesses under Rule 26(a)(2) has been a topic of much discussion among courts."[43]   "Yet, 'where physicians' testimony was prepared in anticipation of litigation by the attorney or relies on sources other than those utilized in treatment, courts have found that the treating physician acts more

---

[37] *Young v. United States*, 181 F.R.D. 344, 346 (W.D. Tex. 1997).

[38] *Id.*

[39] *Id.*

[40] *Id.* at 346–47.

[41] Doc. 46 at 5.

[42] *Young v. United States*, 181 F.R.D. at 347, contains a helpful list of acceptable questions that the parties may find helpful in preparation for trial.

[43] *Bowman v. Cheeseman, LLC*, No. 3:13-CV-3865-N, 2014 WL 11515575, at *2 (N.D. Tex. Dec. 9, 2014) (Godbey, J.).

like an expert.'"[44]  Here, it's quite the opposite.  Not only was Bickerstaff not retained for this lawsuit, but she also relies only on sources exclusively used in treatment.

As for Epiroc's argument that Bickerstaff should be excluded, or alternatively that Epiroc be afforded the opportunity to have a rebuttal expert, conduct discovery, and move for an independent medical examination, the Court is not convinced.  Under Rule 26(a)(1)(A)(i), parties need to initially disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses."  But not everyone is going to have all that information at the outset of litigation.  That's why we have Rule 26(e) that requires parties to supplement their initial disclosures when additional information comes to light.  When a party fails to supplement those disclosures, under Rule 37(c), that party cannot "use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Reyna contends that he timely disclosed Bickerstaff.  Even if he didn't, he still meets the test for non-disclosed witnesses.  The Court considers four factors in evaluating whether expert testimony should be excluded: "(1) the importance of the excluded testimony, (2) the explanation of the party for its failure to comply with the court's order, (3) the potential prejudice that would arise from allowing the testimony, and (4) the availability of a continuance to cure such prejudice."[45]

---

[44] *Id.* (quoting *Rea v. Wisconsin Coach Lines, Inc.*, No. 12-1252, 2014 WL 4981803, at *2 (E.D. La. 2014)).

[45] *E.E.O.C. v. Gen. Dynamics Corp.*, 999 F.2d 113, 115 (5th Cir. 1993).

Here, the testimony is important. It goes directly to damages.[46] Reyna's explanation is decent. Reyna explains that he disclosed Bickerstaff after the expert deadline because he did not seek treatment from her until after the deadline.[47] He did not receive his PTSD assessment until June of 2024.[48] Then, twelve days later, and before the close of discovery, Reyna provided the treatment summary to Epiroc.[49]

As for prejudice, Epiroc has been generally aware of Bickerstaff since Reyna's deposition when he admitted he was seeing a psychiatrist named Julia (although he could not remember her last name).[50] That deposition was taken on June 13, 2024.[51] Epiroc could have sought more information but chose not to. Any prejudice caused to Epiroc is from its own lack of diligence in pursuing a lead in a deposition.

Putting these together, Bickerstaff can testify even though she was not disclosed.

\* \* \*

As a result, the Court **DENIES** the motion to exclude.

## V. Motion for Summary Judgment

Reyna asserts five claims against Epiroc: (1) national origin and race discrimination, (2) retaliation, (3) failure to accommodate disability, (4) disability

---

[46] Doc. 49 at 7.

[47] Doc. 49 at 8.

[48] Doc. 49 at 8.

[49] Doc. 49 at 8.

[50] Doc. 49-4 at App. 16.

[51] Doc. 45 at App. 1.

discrimination, and (5) hostile work environment. The Court takes each claim in turn.

## A. National Origin and Race Discrimination

### i. Direct Evidence (Discrimination)

Reyna invokes several pieces of what he categorizes as "direct evidence" in support of his claims. "A statement or document which shows on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action is direct evidence of discrimination."[52] "Statements that do not meet this standard without inference or presumption are considered only 'stray remarks.'"[53]

Reyna provides one statement that could be considered as direct evidence of discrimination: "The day before Gudgel attacked Reyna for getting extra picnic tickets, two White co-workers told Gudgel that they were not going to attend the picnic because Reyna was going to bring all his uncles and aunts and Gudgel laughed at their racist joke."[54] Even taking this as true this is entirely disconnected from any adverse employment action. Reyna provides no information as to which adverse employment action this could possibly be connected to. This cannot serve as direct evidence.

---

[52] *Price v. Valvoline, L.L.C.*, 88 F.4th 1062, 1065 (5th Cir. 2023) (cleaned up).

[53] *Id.* (cleaned up).

[54] Doc. 66 at 13.

*ii. Failure to Promote*

To start, there is a dispute over a tolling agreement as to Reyna's failure to promote claim. Reyna argued that his counsel entered into a tolling agreement with opposing counsel that extended his time to file his promotion claims until March 10, 2023.[55] Epiroc responds that the tolling agreement only extended Reyna's time to file suit, not that it permitted Reyna to bring new claims in his amended complaint, even if they were approved the by the EEOC.[56] Under Texas law, a tolling agreement is a contract is interpreted as such.[57]

The agreement is nice and simple. The first paragraph states: "Edgar Reyna . . . hereby agrees not to file a lawsuit based on any claim of discrimination encompassed by the EEOC Charge Number 450-2021-05771 before the parties' agreed mediation on February 24, 2023."[58] It goes on to read: "Epiroc . . . agrees that the deadline for Mr. Reyna to bring a civil action shall be tolled until March 10, 2023. At the expiration of the newly agreed deadline, Mr. Reyna's right to sue based on Charge No. 450-2021-05771, will be lost."[59] Reyna mentioned the failure to promote in his original petition in state court, which was filed on March 10, 2023.[60] As a result, the claim is not time-barred.

---

[55] Doc 66 at 10.

[56] Doc. 69 at 2.

[57] *Chapoy v. Union Pac. R.R.*, No. 22-40791, 2023 WL 6461252, at *3 (5th Cir. Oct. 4, 2023) (per curiam).

[58] Doc. 68 at 695.

[59] Doc. 68 at 695.

[60] Doc. 1-1 at 15–20.

To make a *prima facie* case of a failure to promote, the plaintiff must show "(1) he was not promoted, (2) he was qualified for the position he sought, (3) he fell within a protected class at the time of the failure to promote, and (4) the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote the plaintiff because of his race."[61]

No party disputes that Reyna is Hispanic, that he applied for the Leadman job, and that Epiroc ultimately filled the position with someone who is not Hispanic.[62] Accordingly, the only element that is in dispute is whether he was qualified for the position.  Reyna relies on a statement by one of the interviewers who said that he believed "Edgar is a good candidate because he knows the builds from Station 0 to 1."[63] He represented that he thought one of the other interviewers also recommended Reyna.[64]  The interviewer also represented that the third and final interviewer believed Reyna to be a "top candidate."[65]

For its part, Epiroc argues that Reyna was not qualified to be a Leadman because "Reyna was not a certified tester, and did not have the technical knowledge needed to fill the void left by [the former Leadman]."[66]  In addition, Epiroc argues that Reyna lacked leadership qualities that Epiroc sought in a Leadman, that it was

---

[61] *Autry*, 704 F.3d at 346–47.

[62] Doc. 66 at 16.

[63] Doc. 67 at App. 386.

[64] Doc. 67 at 392.

[65] Doc. 67 at 392.

[66] Doc. 44 at 25.

17

difficult to get Reyna to work overtime, and that Reyna had declined trainings.[67] What Epiroc did not argue, however, is that there were objective and necessary qualifications that Reyna failed to meet. The interviewer's statements are enough to create a fact dispute as to whether Reyna was qualified for the position. As a result, the Court looks to Epiroc's reasons for not promoting Reyna.

At this second step, Epiroc needs to articulate some legitimate and nondiscriminatory reason for not promoting Reyna. Essentially, Epiroc argues the individual it did hire, Chris Huong, was more qualified than Reyna.[68] For support Epiroc, musters evidence that Huong was already a tester,[69] and "already possessed all of the technical and leadership skills."[70] Additionally, Epiroc claims Huong was open to overtime work and "understood the demands" of the job.[71] The Court finds the reasoning that another candidate is more qualified is a legitimate, non-discriminatory reason not to promote an employee.[72] This means the burden of production shifts to Reyna to explain that Epiroc's reason is merely pretext.

As to pretext, Reyna argues that two of the interviewers believed Reyna to be the best candidate.[73] This, Reyna argues, creates a genuine dispute of material fact

---

[67] Doc. 44 at 25–26.

[68] Doc. 69 at 5.

[69] Doc. 45-7 at App. 389.

[70] Doc. 45-9 at App. 546.

[71] Doc. 45-4 at App. 296.

[72] *See Patrick v. Ridge*, 394 F.3d 311, 318 (5th Cir. 2004) ("We acknowledge that choosing some other candidate because he is the best-qualified individual for the job is generally a legitimate, nondiscriminatory reason for an adverse employment decision.").

[73] Doc. 66 at 16.

18

as to whether Epiroc's reason for not promoting Reyna is credible. The key deposition transcript is excerpted here for simplicity:

> Q: Did you make a recommendation as to who you wanted to hire?
> A: I tell the opinions at the end of all the candidates. Jackie came to me and [Thang] asking opinions about all the candidates.
> Q: And what opinions did you give Jackie?
> A: I said probably Edgar is a good candidate.
> Q: Why did you think Edgar was a good candidate?
> A: I think Edgar is a good candidate because he builds from Station 0 to 1.
> Q: And what did the other lead man . . . – who did he recommend, if you remember?
> A: I think he recommends also Edgar.[74]

When the employer's proffered reason is that another candidate is more qualified, the plaintiff can show pretext either by showing that he is "clearly better qualified" or that the employer's explanation is "false or unworthy of credence."[75]

Reyna argues that "[t]he fact that the two Leadmen who interviewed Plaintiff thought he was the best candidate creates genuine issues of material fact that Defendant's asserted reason is not credible."[76] Hence, Reyna does not argue that he is "clearly better qualified" than Huong; rather, he argues that Epiroc's explanation is not credible. Accordingly, Reyna must show Epiroc's reason "is not the real reason for the adverse employment action."[77] In general, plaintiffs can use the "false or unworthy of credence" route, showing that the employer's proffered reason is no good,

---

[74] Doc. 67 at App. 386.

[75] *Churchill v. Tex. Dep't of Crim. Just.*, 539 F. App'x 315, 319 (5th Cir. 2013) (per curiam) (cleaned up).

[76] Doc. 66 at 16.

[77] *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

by showing subjective hiring criteria, derogatory comments by decisionmakers, or other evidence showing that the real reason the plaintiff wasn't hired was racism.[78]

Plaintiffs bringing failure-to-promote claims are not limited to a strict qualification comparison with the employee who was hired for the position.[79]  But Reyna basically repackaged the evidence of his qualification as if it was evidence of falsity or incredulity.  This repackaging can work in some circumstances when the proffered reason is based largely on something like experience.  For instance, in *Burrell v. Dr Pepper/Seven Up Bottling Group*, Burrell alleged that Dr Pepper's reason for not promoting him (that Dr Pepper wanted someone with more purchasing experience) was false because the person who was hired had less purchasing experience than he did and because Dr Pepper's explanation kept changing.[80]  There, the court held that there was a genuine issue as to what the basis of Dr Pepper's hiring decisions was.[81]

Quite differently here, Reyna attempts to bolster his qualifications by way of the interviewer's testimony but falls short of creating a dispute as to whether Epiroc made its hiring decision based on something other than qualification.  Since the only evidence Reyna has is most appropriately characterized as strict qualification

---

[78] *See Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 882–83 (5th Cir. 2003).

[79] *See, e.g.*, *Employment Discrimination Coordinator Analysis of Federal Law* § 44:15 (discussing shifting explanations, misstated qualifications, sham consideration, and qualification inflation in the context of proving pretext).

[80] 482 F.3d 408, 412–13 (5th Cir. 2007).  Westlaw, being less familiar with Dr Pepper than the Fifth Circuit, egregiously inserted a period after "Dr" in the case caption.  As the Fifth Circuit knows, there is no such period.  *See Burrell v. Dr Pepper/Seven Up Bottling Group*, No. 06-10267 (5th Cir. Apr. 3, 2007).

[81] *Id.* at 413.

evidence and he has not attempted to show he is clearly more qualified than Huong, his failure to promote claim fails. If it were otherwise, every "close call" in hiring would give way to pretext for a Title VII suit, which would unfortunately convert the federal judiciary into a hiring-decision-appeals board.

Reyna provides another argument that Gudgel may have influenced the decisionmaker in the decision not to promote Reyna.[82] This argument entirely speculative. Moreover, this argument also proceeds from an unsupported premise: that Gudgel had discriminatory animus at all. That premise is not supported in Reyna's briefing on the failure to promote claim and cannot serve as a basis to avoid summary judgment.

Therefore, the Court **GRANTS** the motion for summary judgment on the failure to promote claim.

### iii. Other Discrimination Claims

Reyna lists other particular adverse actions based on national origin and race that he claims qualify as such under adverse employment action precedents. Those are: placement on unpaid leave, denial of overtime opportunities, denial of electrical training, being assigned to clean for his light duty work rather than desk work, and being removed from mentoring new employees.

To determine whether discrimination is material to trigger the various employment discrimination laws, a plaintiff need not show "discrimination with respect to an 'ultimate employment decision'" but instead only "that [he] was

---

[82] Doc. 66 at 17.

discriminated against, because of a protected characteristic, with respect to . . . the 'terms, conditions, or privileges of employment'—just as the statute says."[83]  *Hamilton v. Dallas County* recognized that Title VII "does not permit liability for de minimis workplace trifles" but declined to address "the precise level of minimum workplace harm" necessary to sustain a discrimination claim.[84]  Then, in *Muldrow v. City of St. Louis*, the Supreme Court held that "[a]lthough an employee must show some harm . . . to prevail in a Title VII suit, [he] need not show that the injury satisfies a significance test."[85]  In particular, the plaintiff needs to show that he was left "worse off" because of the employment action taken.[86]  Indeed, even if one's pay remains the same and he retains advancement opportunities, if someone is left in a worse position than when he started, that is a materially adverse employment action.[87]  But, of course, not every minor slight, deviation from social norms, or weird occurrence counts—as the Supreme Court has instructed, Title VII is not a general civility code[88] and judges should not turn it into one.  Allegations that John cut Jane in line for coffee, that Jane interrupted John at a team meeting, or that John asked Jane to clean up a coffee spill generally don't count.  But allegations that John relocated Jane's spacious office to a utility closet does make her condition of employment worse

---

[83] *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 506 (5th Cir. 2023) (quoting 42 U.S.C. §2000e-2(a)(1)).

[84] *Id.* at 505.

[85] 601 U.S. 346, 350 (2024).

[86] *Id.* at 359.

[87] *Id.*

[88] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

off. That being said, the Court turns to analyze each of the alleged adverse employment actions in turn.

*Placement on Unpaid Leave.* Assuming, without deciding, that this counts in the discrimination context,[89] Reyna cannot succeed on his claim. To succeed on this theory, Reyna has the burden to show that others were treated more favorably.[90] To show this, he alleges that Mrs. Aileen (first name unknown) was placed on light duty after an injury, she was not sent home, and Epiroc did not deactivate her badge.[91] But Reyna alleged Mrs. Aileen is Hispanic.[92] To have an adequate comparator, the comparator must be similarly situated but outside of the plaintiff's protected class.[93] But Mrs. Aileen is Hispanic and so is Reyna. As a result, Reyna has not shown a *prima facie* case as to placement on leave.

*Denial of Overtime Opportunities.* Denial of the chance to work is an adverse employment action. This opportunity, shared by other employees at Epiroc, once denied to Reyna meant he could not partake in an opportunity, or a privilege, of employment. Reyna recalls that the way Epiroc did overtime: essentially, Epiroc

---

[89] Later on, the Court will conclude that Reyna's disability discrimination claim in the ADA context lacks sufficient support for a showing of harm. *Infra* p. 48. The reason is that in disability claims, unpaid leave can be either an accommodation or a harm—it's very context dependent. Rather than confuse the findings in this opinion, the Court elects to resolve the unpaid leave in the discrimination context on alternative grounds.

[90] *Rutherford v. Harris County*, 197 F.3d 173, 184 (5th Cir. 1999).

[91] Doc. 66 at 20.

[92] Doc. 68 at App. 541.

[93] *See Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990, 998 (5th Cir. 2022) ("To satisfy the 'similarly situated' prong [of a *prima facie* disparate treatment claim], the employee carries out a comparator analysis . . . establish[ing] that she was treated less favorably than a similarly situated employee outside of her protected class in nearly identical circumstances").

would choose people to work overtime by going around and asking employees, rather than allow signups for overtime work.[94]  Reyna says no one ever stopped by his station to ask if he wanted overtime.[95]  But he never points to a specific comparator to show that he was treated less favorably on the basis of race.  As a result, his *prima facie* case fails.

*Denial of Electrical Training*.  The chance to train and improve one's own skills is likewise a privilege of employment.  If the employer denies an employee the opportunity to do so, then it is a materially adverse employment action.  Even if Reyna was denied the opportunity to take electrical training, his claim still fails.  Here, Reyna sought electrical training and Chung put Reyna's name on the list.[96]  In attempting to prove that other similarly situated workers were allowed the opportunity, Reyna's deposition states that "it was assemblers going there, too."[97]  But his brief says, "[o]ther assemblers of different races attended the training Reyna was denied."[98]  This is woefully below the threshold to show discrimination by similarly situated individuals, and it's misleading.  At summary judgment, some evidence showing a comparator should exist.  But Reyna musters none.  Therefore, his *prima facie* case based on the trainings fails.

---

[94] Doc. 45 at App. 70.

[95] Doc. 45 at 74.

[96] Doc. 66 at 24.

[97] Doc. 45 at App. 27.

[98] Doc. 66 at 25.

24

*Assigned to clean for light duty instead of desk work.*  It may well be the case that sometimes being assigned to clean for light duty, rather than desk work, is actionable under Title VII.  Unfortunately for Reyna, he has failed to show how he was made worse off by engaging in cleaning as opposed to desk work.  Reyna merely provided a conclusory statement in a declaration that he found the work demeaning and humiliating.[99]  After Reyna was removed from mentoring work, he alleges that he was made to clean for his light duty assignment instead.[100]  In any event, Reyna musters no evidence that a comparator was treated better.  Even if moving to cleaning duty were actionable, there is no indication that he was reassigned on the basis of his race or national origin.  Accordingly, Reyna's *prima facie* case on this point fails.

*Removed from Mentoring New Employees.*  Removal from mentorship opportunities can count as an adverse employment action.  Mentoring was a part of his job,[101] therefore making it a condition of employment under Title VII.  Reyna testified that he was removed from his job duty and that the two individuals he mentored were moved to a White mentor named Jamie Tamez.[102]  Tamez was in the same department as Reyna and also worked as an assembler.[103]  Because both are so similar, and Tamez is White and American,[104] Tamez is a similarly situated person for purposes of national origin and race discrimination.  Reyna has shown a *prima*

---

[99] Doc. 68 at App. 685.

[100] Doc. 68 at App. 685.

[101] Doc. 45 at App. 59.

[102] Doc. 45 at App. 56.

[103] Doc. 45 at App. 56–57.

[104] Doc. 45 at App. 24.

*facie* case of discrimination and the burden of production shifts to Epiroc to proffer a legitimate, non-discriminatory reason for the change.

Epiroc claims that Reyna's mentees were so self-sufficient they no longer required mentorship.[105]  Epiroc also argues that it scaled back production during the time Reyna was removed from mentorship.[106]  But the mentees did require mentorship, because Reyna states in his deposition that they were moved to a new mentor.[107]  Therefore, Reyna has shown that Epiroc's proffered reason is merely pretextual.  Therefore, Reyna's discrimination claim may proceed to trial.

\* \* \*

Considering the foregoing, the Court **DENIES** summary judgment on Reyna's national origin and race discrimination claim based on removing Reyna from mentoring new employees.

## B. Retaliation

### i. Direct Evidence (Retaliation under Title VII, TCHRA, Section 1981)

"Direct evidence is evidence which, if believed, proves the fact without inference or presumption."[108]  "A plaintiff's ultimate burden in the retaliation context is to prove that but-for the employer's improper retaliatory motive, the allegedly retaliatory employment action would not have occurred."[109]  In general, to prove

---

[105] Doc. 69 at 16.

[106] Doc. 69 at 16.

[107] Doc. 45 at App. 56.

[108] *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir.1993).

[109] *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 547 F. App'x 484 (5th Cir. 2013) (citing *Nassar*, 133 S. Ct. at 2533).

retaliation by direct evidence, a statement or document would take the form of "I did [adverse employment action] to you because [protected activity]." If a plaintiff can show retaliatory animus "then it becomes the employer's burden to prove by a preponderance of the evidence that the same decision would have been made regardless of the [retaliatory] animus."[110]

In the context of retaliation, the "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."[111] In particular, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[112] Direct evidence is rare.[113] But rare does not mean impossible. The Court will walk through each piece of direct evidence Reyna claims he has.

First: In 2018, Gudgel purportedly told Reyna that he could only use one restroom, Gudgel told Reyna to only worry about himself, and Gudgel told Reyna that if Reyna went to Human Resources, "it will get worse."[114] Here, Reyna got extra tickets for the company picnic from Human Resources.[115] Gudgel then confronted Reyna about the extra tickets asking him why he went to Human Resources.[116] When

---

[110] *Jones*, 427 F.3d at 992.

[111] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).

[112] *Id.* at 68 (cleaned up).

[113] *Jones*, 427 F.3d at 992.

[114] Doc. 45 at App. 26.

[115] Doc. 68 at App. 548.

[116] Doc. 68 at App. 548.

Gudgel continued to question Reyna, Reyna asked why Gudgel was questioning him and not four other coworkers who also got tickets from Human Resources.[117]   Reyna suggested going to Human Resources to resolve the matter, Gudgel said "I'm going to make it [worse]."[118]  Reyna asked to be treated "equal" and Gudgel replied that "[It's] up to me how I treat you."[119]

Again, direct evidence of retaliation "is evidence which, if believed, proves the fact of intentional retaliation without inference or presumption."[120]  That is, it must reveal that the "protected activity was a but-for cause of the alleged adverse action by the employer."[121]  This evidence cannot operate as direct evidence of retaliation because Gudgel's statement, if believed, needs more information to be direct evidence. For one, when Gudgel said "it will get worse" we do not know what "it" means without an inference that it refers to Reyna's working conditions.  For two, it is unknown whether Gudgel made his statement in response to an attempt at making a charge of illicit discrimination, rather than a complaint that he was not treated the same as some of his coworkers.  That is not apparent from the statement itself.  Accordingly, this cannot serve as direct evidence of retaliation.

Second: Gudgel asked Human Resources why they had not placed Reyna on leave until he was medically cleared to return, and Gudgel admitted he did so in part

---

[117] Doc. 68 at App. 548.

[118] Doc. 68 at App. 548.

[119] Doc. 68 at App. 548.

[120] *Fierros v. Texas Dep't of Health*, 274 F.3d 187, 195 (5th Cir. 2001) (cleaned up).

[121] *Nassar*, 570 U.S. at 362.

because of all the complaints from Reyna.[122]  The problem is this involves an inference between what Gudgel said and what Human Resources did.  This is not direct evidence.

Third: Reyna says HR Manager Alphonso Tyson apologized to him for having a conversation about Reyna's complaints on the production floor.[123]  This is not direct evidence that ties to an adverse action.

Fourth: Reyna alleges that "Leadman Chung verifies that Gudgel asked to bring Reyna back to full duty 3 times."[124]  Even if that is true, it is direct evidence of nothing retaliatory or discriminatory.

Fifth: Reyna alleges that Chung testified that Gudgel told Reyna that "if they had too much indirect time (work not chargeable to the rig) that this would result in a lay off and that Reyna thought his job was threatened.  Chung testified that he felt Gudgel's comment was inappropriate."[125]  As with the others, this is not direct evidence of retaliation or discrimination.

Sixth: "When Reyna complained about Gudgel to HR, Leadman Thang Nguyen told Reyna that he 'should not have done that.'"[126]  This does not, in itself, show any kind of retaliation.

   *ii. Indirect Evidence (Retaliation under Title VII, TCHRA, and Section 1981)*

---

[122] Doc. 45-3 at App. 213.

[123] Doc. 66 at 13.

[124] Doc. 66 at 13.

[125] Doc. 66 at 13.

[126] Doc. 66 at 13; Doc. 68 at App. 546.

A plaintiff can still prove retaliation with circumstantial evidence. To state a retaliation claim under Title VII, the TCHRA, and Section 1981 with circumstantial evidence, the employee must first establish a *prima facie* case, which entails showing (1) he "engaged in protected activity;" (2) he "suffered an adverse employment action;" and (3) "a causal link exists between the protected activity and the adverse employment action."[127]

Reyna engaged in protected activity when he complained of unlawful discrimination against him to Epiroc[128] and to the EEOC.[129] But Reyna cites only to his EEOC charges of discrimination as protected activity.[130] His charges of discrimination were filed on October 22, 2021; May 13, 2022; June 15, 2022; June 29, 2022; July 28, 2022; October 12, 2022; November 23, 2022; March 6, 2023; and June 26, 2023.[131] Reyna sent complaints to Human Resources on no less than fourteen occasions, including March 14, 2021; April 6, 2022; April 8, 2022; April 25, 2022; April 27, 2022; April 29, 2022; May 23, 2022; June 8, 2022; July 7, 2022; August 16, 2022; August 29, 2022; and on three other occasions without an ascertainable date.[132]

Reyna argues that he suffered twelve adverse employment actions that support his *prima facie* case. Those are: (1) he was denied two promotions; (2) he was

---

[127] *Wright*, 990 F.3d at 433.

[128] *See* Doc. 68 at App. 548–77.

[129] *See Rodriquez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 328 (5th Cir. 2013) ("An employee that files an internal complaint of discrimination engages in a protected activity.").

[130] Doc. 66 at 40.

[131] Doc. 68 at App. 538–47

[132] Doc. 68 at App. 548–74.

placed on unpaid medical leave; (3) he was denied overtime; (4) he was denied training opportunities; (5) he was removed from mentoring; (6) he was denied accommodations for light duty work; (7) he was surveilled, threatened, and yelled at; (8) he was denied access to certain areas of Epiroc; (9) Human Resources did not submit his FMLA application; (10) Epiroc deactivated his badge; (11) he was walked out of the building twice; (12) and Epiroc did not provide safe working conditions for him.[133]

*Denied Promotions.*  Reyna presses only his Leadman promotion claim in his brief, so the Court will focus on that one.[134]  His brief never discusses when the interview occurred or when Epiroc made the decision not to hire him.  Digging through the record, it appears he applied for the position in July of 2021,[135] which is before any of the EEOC charges, but comes four months after his initial complaint to Human Resources.  Even a three-month lapse in time is insufficient to establish the requisite temporal proximity in a retaliation case.[136]  Therefore, there can be no causation here between Reyna's protected activity and the employment action.

*Unpaid Leave.*  Epiroc placed Reyna on leave in July of 2022, which was less than a month after his June 28, 2022 complaint.[137]  Reyna took leave starting in early

---

[133] Doc. 66 at 37–38.

[134] Doc. 66 at 15–17.

[135] Doc. 68 at App. 691.

[136] *See Yancy v. U.S. Airways, Inc.*, 469 F. App'x 339, 344 (5th Cir. 2012) (noting that the Supreme Court approvingly cited cases holding that a three-month and four-month periods were not enough to show causation in *Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)).

[137] Doc. 69 at 21.

31

July 2022.[138]  Then on August 4, 2022, Epiroc reached out to Reyna about another light duty position that might accommodate his restrictions.[139]  Reyna then returned to work on August 17, 2022.[140]  Once that project ended in November, Reyna was sent back out on leave again.[141]  On November 21, 2022, Epiroc asked Reyna to return to work with no restrictions.[142]

For its legitimate, non-discriminatory reason, Epiroc asserts that Reyna was "*not* placed on leave until his light duty work was completed and there was no additional work available."[143]  Accordingly, the burden then shifts to Reyna and he "must show that the adverse action would not have occurred but for the employer's retaliatory motive."[144]  That is, Reyna "must show a conflict in substantial evidence as to but-for causation to avoid summary judgment."[145]  "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions."[146]

Reyna purportedly musters evidence showing that (1) "Gudgel suggested to HR on June 2, 2022, that they should put Reyna out on leave," because Gudgel was "sick

---

[138] Reyna asserts he was placed on leave on July 7, 2022, Doc. 66 at 21, and Epiroc asserts he was placed on leave on July 8, 2022, Doc. 69 at 23.

[139] Doc. 45-2 at App. 143.

[140] Doc. 45 at App. 64.

[141] Doc. 45 at App. 66.

[142] Doc. 68 at 545.

[143] Doc. 69 at 7–8.

[144] *Shahrashoob v. Tex. A&M Univ.*, No. 23-20618, 2025 WL 47503, *7 (5th Cir. Jan. 8, 2025) (cleaned up).

[145] *Id.* (cleaned up).

[146] *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020), *as revised* (Aug. 14, 2020).

of all the complaints about him;" (2) Tyson's investigation found a failure of the interactive process before putting Reyna on leave; (3) Gudgel asked to bring Reyna back to full duty three times; and (4) Gudgel told Reyna that if Reyna did not charge enough time to the rig then it would result in a layoff.[147]

None of these displace Epiroc's legitimate, non-retaliatory reason for placing Reyna on leave. As for Gudgel's testimony about being upset about the complaints against him, Gudgel merely asked Human Resources why they had not placed Reyna on leave until he was medically healthy.[148]

The uncontroverted testimony reflects that Gudgel did not direct Human Resources to do anything; rather, he was simply asking a question.[149] Reyna does not press a cat's paw liability theory on this claim, but the facts are simply too close that the Court should analyze it anyway. Under this theory, Reyna must show that Gudgel "used the decisionmaker to bring about the intended retaliatory action."[150] Specifically, Reyna must show that (1) Gudgel "motivated by retaliatory animus, took acts intended to cause an adverse employment action; and (2) those acts were a but-for cause of his [adverse employment action]."[151] As to the first point, the real issue is whether or not Gudgel took actions that intended to cause an adverse employment

---

[147] Doc. 66 at 21–22.

[148] Doc. 45-3 at App. 213.

[149] Doc. 45-3 at App. 213.

[150] *Wantou v. Wal-Mart Stores Texas, L.L.C.*, 23 F.4th 422, 436 (5th Cir. 2022) (cleaned up).

[151] *Zamora v. City of Houston*, 798 F.3d 326, 333 (5th Cir. 2015).

action.  The sole act is asking why Reyna had not been sent home until Reyna reached "maximum medical improvement."  Here, a jury could reasonably infer Gudgel intended to induce Human Resources into placing Reyna on leave by asking the question.  A jury could reasonably conclude that Gudgel's question was actually a suggestion—more along the lines of a recommendation than a genuine question.

As for the second element, a jury could not reasonably infer that Gudgel's statement was the but-for cause of Reyna's leave.  Here, Reyna has shown another cause (Gudgel's retaliatory animus), but has not shown that it was the but-for cause of the purportedly retaliatory act of placing him on leave.  In fact, the most Reyna gets is showing that retaliation played *a* role, but fell short in showing played *the* role.  To show but-for causation Reyna needed to present a conflict in substantial evidence that other light duty work was available for Reyna at the time.  While Reyna states that someone named Mrs. Aileen was placed on light duty after an injury,[152] he has not shown she is any kind of comparator for Reyna's injury.  Different people can have different injuries which give them different workplace restrictions.  Reyna has failed to show any such comparator or any other evidence suggesting that when Reyna was sent home that light duty work was available for him.  Therefore, this evidence cannot serve as a basis for denying summary judgment on the retaliation claim.

---

[152] Doc. 45-1 at App. 142.

As for Tyson's finding that the interactive process failed, it is merely a conclusion.[153]  Reyna made no effort to support or substantiate Tyson's findings independent of reasserting his conclusion.  This is insufficient to displace the notion that Epiroc did not have light work available for Reyna.

Additionally, the fact Gudgel asked to bring Reyna back three times does not show any retaliatory animus whatsoever.  Instead, it shows that Gudgel wanted Reyna back at Epiroc on full duty and not out on leave.[154]  Moreover, Gudgel asking about and seeking Reyna's return says nothing about the availability of light duty work for Reyna at the relevant time.

Finally, Gudgel purportedly told Reyna that if he charged too much "indirect time,"—that is, work not chargeable to the rig—then it would result in a layoff.[155]  Even if this is true, this has absolutely nothing to do with the availability of light duty work—nor does it counter the claim that there was not enough.  As a result, Reyna failed to show pretext as to his claim based on unpaid leave.[156]

*Denial of Overtime.*  While denial of overtime can be an adverse employment action, the only date Reyna provides in connection with this claim is March 24,

---

[153] Doc. 66 at 21.

[154] Doc. 45-7 at App. 405–06.

[155] Doc. 66 at 21–22.

[156] Reyna does not press that Simon Vargas's statement to Reyna is evidence of pretext, but even if he did, it would not carry the day.  Reyna testified that "Simon had told me we have work all the way to December."  Doc. 45 at App. 66.  "Hearsay is not competent summary judgment evidence, unless its proponent can show that the statement can be presented in an admissible form at trial."  *Miller v. Michaels Stores, Inc.*, 98 F.4th 211, 218 (5th Cir. 2024).  Reyna has not provided a reason how this statement being offered to prove the truth of the matter asserted could be admissible at trial.  In fact, Reyna disavowed having any personal knowledge of Epiroc's workload, so all he knew on this point came from Vargas.  Doc. 45 at App. 67.  Therefore, it is not competent summary judgment evidence.

35

2023.[157]  Epiroc proffers that Reyna was not offered overtime work because he was assigned to Rig 91110 and Rig 91110 did not need any work, so he was not eligible for overtime on that day.[158]  Reyna has not provided any evidence that displaces this legitimate, non-retaliatory reason for denying him overtime on the date in question.

*Denial of Training Opportunities.*  Reyna alleges he was denied electrical training in June of 2018.[159]  It is undisputed that Reyna was first put on the list to train in June of 2018, was removed from the list, and then ultimately was allowed to train in February of 2019.[160]  First, Reyna fails to connect this with any protected activity.  Second, even if Epiroc denied him training at first, Reyna does not connect the delay in training with any harm.  He completely fails to show that the delay would cause a reasonable employee to refrain from making a charge of discrimination.  For both reasons, his claim based on denial of training opportunities fails.

*Removed from Mentoring.*  As noted above, being removed from mentorship opportunities can be an adverse employment action in the Title VII discrimination context.[161]  But it's a different ballgame in the retaliation context.  In retaliation, unlike in discrimination, plaintiffs must meet a significance test.[162]  An employment action is significantly adverse, or materially adverse, in the retaliation context when

---

[157] Doc. 66 at 22.

[158] Doc. 45-9 at App. 548.

[159] Doc. 66 at 24.

[160] Doc. 66 at 24; Doc. 69 at 15.

[161] *See supra* p. 25.

[162] *See Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 357 (2024) (citing *Burlington*, 548 U.S. at 68).

it "deter[s] a reasonable employee from complaining about discrimination."[163]  And, in particular, the reasonableness test is an objective one, but it is from a reasonable person in the shoes of the employee.  For instance, "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children."[164]

Reyna has failed to show that he faced significant harm as a result of being removed from mentorship opportunities.  All he cites to for his harm is his declaration,[165] which states:

> I began to [lose] job satisfaction, cleaning was not as fulfilling to me nor was it prestigious.  I became discouraged, my interest level declined because I was being punished for my complaints.  I worried that my co-workers and Leadmen would think I was not a good worker and that is why I was cleaning instead of mentoring.[166]

This only shows subjective harm and says nothing about an objective person in Reyna's shoes.  While Reyna may have felt that his job without mentoring was less satisfying, he has not produced any evidence that suggests that removing mentorship opportunities is so significantly worse that it would deter a reasonable person from reporting instances of discrimination.

*Denial of Light Duty Work Accommodations.*  Reyna asserts this claim in a single sentence, with very little detail, followed by five citations.[167]  The only ones that

---

[163] *Burlington*, 548 U.S. at 69.

[164] *Id.* at 69 (cleaned up).

[165] Doc. 66 at 26.

[166] Doc. 68 at App. 685.

[167] Doc. 66 at 37–38.

seemingly have anything to do with light duty work accommodations are Reyna's EEOC charges and Reyna's testimony, where he discusses his light work.[168]   But Reyna never makes an argument as to how Epiroc "refused to accommodate and honor Reyna's light duty work, but accommodated and honored the restrictions of other employees who did not engage in protected activity."[169]   The only other employee Reyna mentions is Eric Griffin, and Reyna never shows anything as to whether Griffin made any complaints or not.[170]

As for the EEOC charges, while at least five of them make at least some passing reference to accommodations and work restrictions, Reyna never frames an argument for the retaliation context on this point.[171]   Rather, he simply says this was an adverse employment decision without further detail.   The Court declines to craft a legal argument where Reyna has not undertaken the effort to supply one himself.

*Other retaliatory actions collectively.*   Reyna asks the Court to view the final six purportedly retaliatory actions together, as a part of a "campaign of retaliatory conduct."[172]   Those final six actions are: Gudgel yelling at, recording, and observing Reyna; Epiroc denying him access to certain areas; Human Resources failing to submit his FMLA application; Epiroc deactivating Reyna's badge; multiple people walking Reyna out of the building twice; and Epiroc failing to provide safe working

---

[168] Doc. 45 at App. 59–60.

[169] Doc. 66 at 37–38.

[170] Doc. 45 at App. 59.

[171] Doc. 68 at App. 538–47.

[172] Doc. 66 at 38.

conditions for Reyna.[173]  These generally occur around the same time period as Reyna's protected activity.

At this juncture, some more context is helpful.  According to Reyna's deposition, Gudgel once yelled at Reyna for trying to get more tickets to the company picnic (and on other occasions)[174], and told him that he could only use one restroom and that if he went to Human Resources, it would "get worse."[175]  Reyna claims that Madison Brotherton (née Farnsworth) did not submit his FMLA paperwork and, as a result he had to do it himself,[176] which apparently resulted in Reyna's pay being delayed for a month.[177]  As for the unsafe work environment, Reyna alleged that he was (1) sent with a crew of three to do a job that required six people[178] and that (2) he was asked to go to the tower department to use a crane.[179]  Additionally, on June 9, 2022, Epiroc deactivated Reyna's badge; on June 10, 2022, the Vice President of Epiroc purportedly told Reyna to stop sending complaints about the company;[180] and at some point, Epiroc posted Reyna's picture in security.[181]

Taken together, Reyna must show that this purported campaign of retaliation would render a reasonable employee dissuaded from filing charges of discrimination.

---

[173] Doc. 66 at 38.

[174] Doc. 68 at App. 548.

[175] Doc. 45 at App. 26.

[176] Doc. 45 at App. 65.

[177] Doc. 45 at App. 62–63; Doc. 66 at 7.

[178] Doc. 68 at App. 547.

[179] Doc. 45 at App. 28.

[180] Doc. 68 at App. 541.

[181] Doc. 68 at App. 685.

"A 'campaign of retaliatory harassment' is actionable only where it constitutes 'a constructive adverse employment action.'"[182] Thus, Reyna must show that the actions constructively hired, fired, reduced compensation, or altered the "terms, conditions, or privileges" of his employment.[183]

To borrow from the constructive discharge line of cases, Reyna would need to show that "working conditions were so intolerable that a reasonable employee" would be deterred from making a charge of discrimination.[184] Whether a reasonable person would be deterred from making a charge of discrimination in light of these actions is a classic jury question. Accordingly, the Court moves to Epiroc's legitimate, non-retaliatory reasons.

Epiroc does not provide any justification for Gudgel's yelling at, observation of, or denying access to Reyna. Instead, Epiroc attacked the severity of those instances, but does not provide reasons for them.[185] The same goes for failing to file FMLA paperwork, where Epiroc never argues why Epiroc failed to file the paperwork, rather it simply said that the allegation is false.[186] On positing Reyna's picture in security, Epiroc failed to provide any justification for that as well.

---

[182] *Mylett v. City of Corpus Christi*, 97 F. App'x 473, 476 (5th Cir. 2004) (quoting *Colson v. Grohman*, 174 F.3d 498, 514 (5th Cir. 1999)).

[183] *Hamilton*, 79 F.4th at 502–03 (quoting 42 U.S.C. § 2000e-2(a)(1) and citing *Hishon v. King & Spalding*, 467 U.S. 69, 77 (1984)).

[184] *Herring v. Buc-ee's Ltd.*, No. 23-20070, 2023 WL 5031491, at *1 (5th Cir. Aug. 7, 2023) (per curiam).

[185] Doc. 69 at 22–23.

[186] Doc. 69 at 23.

As for the two walk-outs, Epiroc again fails to provide any reason at all for why it walked him out or why it let him work a job meant for a six-man crew when he only had two other people working with him.  Rather, Epiroc again attacked whether it is, in fact, retaliatory or unsafe, rather than providing some reason as to why it did what it did.[187]

As for badge deactivation, Epiroc claims this was a policy applied to all employees, but never provides a record cite.[188]  The closest Epiroc comes to describing some sort of policy is from Brotherton's declaration that states that she had deactivated badges in other similar situations to Reyna's when Epiroc could not determine if an employee was safe to return to work.[189]  But even the declaration stops short of classifying it as Epiroc's policy.

Therefore, Epiroc has failed to provide a legitimate, non-retaliatory reason for its actions giving rise to the constructive change in terms, conditions, or privileges of employment.

*Other retaliatory actions individually.*  Reyna presses each of the above claims as independent adverse employment actions as well.  Because the information is coming into trial anyway, the Court only notes that at a minimum he can show that his claim on unsafe working conditions passes muster at the motion for summary judgment stage.

---

[187] Doc. 69 at 23–24.

[188] Doc. 69 at 23.

[189] Doc. 45-9 at App. 537.

Reyna asserts there were two sets of unsafe working conditions. One was when Reyna was asked to use a crane in the Tower Department "[a] couple of times" and he did not feel safe and asked a coworker for assistance.[190] Regardless, this occurred before Reyna ever made any allegations to either Human Resources or the EEOC.[191] Accordingly there is no causation for the Tower Department conditions. The other was when Chung sent Reyna and two of his trainees to do a job Reyna believes is for six experienced employees.[192] This occurred on or around January 30, 2023, putting it within two-and-a-half-months of an EEOC charge.[193] On this there is a fact dispute as to whether three people or six experienced people are needed for the job. Chung says the job can be done with only three,[194] but Reyna says the job needs six experienced employees.[195] Accordingly, this is a proper question for the jury to decide.

*     *     *

Accordingly, the Court **DENIES** summary judgment for the race-and-national-origin-based retaliation claims.

---

[190] Doc. 45 at App. 28.

[191] Doc. 45 at App. 28.

[192] Doc. 68 at App. 547.

[193] This timeframe is right on the bubble. The Fifth Circuit noted that it has gone both ways on a roughly two-and-a-half-month gap. *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948–49 (5th Cir. 2015). In another on-the-bubble case, the Fifth Circuit looked to broader circumstances that indicate a relationship between the protected activity and the adverse action. *Amsel v. Texas Water Dev. Bd.*, 464 F. App'x 395, 402 (5th Cir. 2012) (unpublished). According to Reyna, Chung told him to stop making complaints about Gudgel. Doc. 45-9 at App. 517. This piece of information gives the causation inference the slight push it needs to cross the finish line.

[194] Doc. 45-7 at App. 408.

[195] Doc. 68 at App. 547.

*iii. ADA*

The elements of a Title VII retaliation claim and an ADA retaliation claim are essentially the same, but they protect different activity. To establish unlawful retaliation under the ADA, a plaintiff must establish: (1) he engaged in an activity protected by the ADA, (2) he suffered an adverse employment action, and (3) there is a causal connection between the adverse act and the protected action.[196]

Reyna does not defend this cause of action at this stage of the litigation. As a result, the Court **GRANTS** summary judgment as to this claim.

## C. Failure to Accommodate Disability

Reyna claims that Epiroc failed to accommodate his disability. To succeed on this claim, Reyna needs to show (1) he is a "qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations."[197]

The bulk of the parties' dispute here is whether Reyna was a qualified individual. A qualified individual is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."[198] The definition in the ADA goes on to read:

> For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or

---

[196] *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999).

[197] *Feist v. La., Dep't of Justice, Off. of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (cleaned up).

[198] 42 U.S.C. § 12111(8).

interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.[199]

This is essentially a two-step inquiry: "(1) whether the individual meets the necessary prerequisites for the job, such as education, experience, skills, and the like; and (2) whether the individual can perform the essential job functions, with or without reasonable accommodation."[200]

Reyna's view of the events is that after he became injured, Epiroc allowed him to work for three months as an assembler before removing his mentees, making him clean, and placing him on unpaid medical leave.[201] Reyna bases his argument in part on his declaration that reads: "I was allowed to work as an Assembler using only one hand for more than three months. I performed the duties I could perform with a single hand which included essential duties such as maneuvering cranes and tools, moving heavy hardware[,] hooking up ropes[,] and mentoring new employees, during this time."[202] The timeline is important here: Reyna injured his hand in January of 2022,[203] he was "off for a while, and then came back to work,"[204] and then was put on medical leave in July of 2022.[205] It appears that for some period between January and July, Reyna, in his words, "work[ed] as an Assembler."[206]

---

[199] *Id.*

[200] *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 n.14 (5th Cir. 1997) (citing 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m)(1994)).

[201] Doc. 66 at 48.

[202] Doc. 68 at App. 686.

[203] Doc. 44 at 1.

[204] Doc. 67 at App. 394.

[205] Doc. 66 at 64.

[206] Doc. 68 at App. 686.

Epiroc has a different view. Epiroc argues that Reyna could not perform all the essential job functions without his left hand and that Reyna never identified any accommodation that Epiroc could have used.[207] Epiroc provided a job description that includes such "principal responsibilities" as "install and connect hydraulic controls, pumps, rams, and other system elements;" "[m]ount, hook-up and connect engines, gear boxes, axles and other power components and units;" and "[a]ssemble mounted hydraulic products which includes the installation and tightening of common bolts and hydraulic hosed per process sheets."[208] Under "required physical effort" the job description requires "[m]oderate physical demand in handling materials and tools while performing welding, assembly and related operations. May be required to lift up to 30 lbs. Work also involves climbing or working at elevated heights using ladders, scissor and snorkel lifts."[209] In Madison Brotherton's declaration, she states that: "The Assembler job necessarily requires all Assemblers to use both hands in order to perform the work required, such as installing, assembling, and connecting hydraulic controls, pumps, and other equipment, as indicated on the job description."[210] As a result, Epiroc argues, Reyna is not a qualified individual for these purposes.

So, to create a fact dispute, Reyna needs to present facts as to whether he could perform the essential job functions, with or without an accommodation. He does. He

---

[207] Doc. 69 at 19.

[208] Doc. 45 at App. 97.

[209] Doc. 45 at App. 98.

[210] Doc. 45-9 at App. 536–37.

45

states that he "was allowed to work as an Assembler using only one hand for more than three months."[211]  He goes on to state that he "performed the duties [he] could perform with a single hand which included essential duties such as maneuvering cranes and tools, moving heavy hardware[,] hooking up ropes[,] and mentoring new employees, during this time."[212]  This creates a fact dispute as to whether Reyna could perform the essential duties of an assembler despite his disability: Epiroc argues he could not perform the duties with one hand, and Reyna argues he could.  This gets to the heart of his accommodation claim, because it is essential in determining whether he is qualified or not.[213]

Next, Reyna makes passing references in his brief to the lack of an "interactive process" to find reasonable accommodations.[214]  "An employee who needs an accommodation because of a disability has the responsibility of informing her employer."[215]  Once the employee informs the employer, the employer must "engage in an 'interactive process': a meaningful dialogue with the employee to find the best means of accommodating that disability."[216]  The single piece of evidence to which Reyna cites is the fact that HR Manager "Tyson's investigation found Epiroc failed to engage in the interactive process before sending Reyna on medical leave."[217]  This is

---

[211] Doc. 68 at App. 686.

[212] Doc. 68 at App. 686.

[213] *See Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017) (cleaned up).

[214] *See, e.g.*, Doc. 66 at 47–48.

[215] *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009).

[216] *Id.* (cleaned up).

[217] Doc. 66 at 48.

an admission that Epiroc failed to provide the interactive process Reyna was due. As a result, Epiroc cannot succeed on this point.

Finally, Epiroc notes that, at his deposition, when asked: "At all times Epiroc accommodated your restrictions; correct?" Reyna replied: "Correct."[218] Reyna takes the position in this litigation that Epiroc unjustifiably placed him on leave when he could have been working as an assembler.[219] Being placed on leave can be an accommodation,[220] but it is not necessarily a reasonable accommodation, which is what the test for failure to accommodate requires.

The Court **DENIES** summary judgment as to the failure to accommodate claim.

### D. Disability Discrimination

Reyna claims that Epiroc discriminated against him on the basis of disability. To succeed here on his *prima facie* case Reyna must show "(1) he has a disability; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability."[221]

Reyna asserts that two of Epiroc's actions were adverse actions under the ADA. These are "reassignment to cleaning duties and the two unpaid medical leaves."[222] Importantly, Reyna must show that his disability was a "motivating factor" in the

---

[218] Doc. 45 at App. 45.

[219] *See* Doc. 66 at 48.

[220] *See infra* p. 48.

[221] *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 479 (5th Cir. 2016) (cleaned up).

[222] Doc. 66 at 49.

adverse employment decisions.[223]  "The ADA does not prohibit adverse action due to a consequence of a disability, such as being unable to report to work regularly or to perform essential job duties as a result of an injury or illness."[224]  The plaintiff must show he suffered "*some harm* respecting an identifiable term or condition of employment,"[225] in part because of his disability, at the hands of his employer.

As for Reyna's argument that being placed on unpaid leave is an adverse employment decision, he needs to show that he was placed on leave, at least in part, because he is disabled.  Epiroc placed Reyna on unpaid medical leave.  Reyna seems to take for granted that unpaid medical leave is an adverse employment action in the context of disabilities.   But "[t]ime off, whether paid or unpaid, can be a reasonable accommodation, but an employer is not required to provide a disabled employee with indefinite leave."[226]

Since unpaid leave can be an accommodation or constitute harm to the employee, the burden of production is on the plaintiff to show harm.  The bare fact that the employee is on unpaid leave is not enough to show that it was, in fact, harmful.  Reyna needed to show that he suffered *some harm* from the unpaid medical leave.  He did not make such a showing.  As a result, he has failed to make his *prima facie* case on this theory.

---

[223] *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008).

[224] *E.E.O.C. v. Mod. Grp., Ltd.*, 725 F. Supp. 3d 577, 627 (E.D. Tex. 2024) (collecting cases).

[225] *Muldrow*, 601 U.S. at 355 (emphasis added).

[226] *Moss*, 851 F.3d at 418 (cleaned up).

Reyna also argues that cleaning for light duty is an actionable adverse employment decision.[227] He takes issue specifically with being assigned to clean for light duty, while others got to do desk work.[228] Reyna cites to *Johnson-Lee v. Texas A&M University–Corpus Christi*[229] for the proposition that being assigned "domestic chores" is sufficient to allege an adverse action.[230] But that case is distinguishable, because cleaning was not a part of Johnson-Lee's job duties.[231] Here, "maintain the cleanliness of the assembly area" is not only a job duty, but is listed as one of the "principal responsibilities" of an assembler.[232] Reyna needs to show here that cleaning is objectively worse than desk work—his subjective perception is not enough.[233] But Reyna provides no evidence that cleaning is objectively worse than desk work, especially under the circumstances. Desk work can be monotonous and lacking in prestige.[234] Cleaning can entail being a groundskeeper, taking part in the Notre Dame football experience.[235] The objective delta in quality between desk work at Epiroc and cleaning at Epiroc is an unknown. Reyna needed to provide some evidence on that but failed to do so. As a result, his *prima facie* case fails.

---

[227] Doc. 66 at 26.

[228] Doc. 66 at 27.

[229] 729 F. Supp. 3d 709 (S.D. Tex. 2024).

[230] Doc. 66 at 26.

[231] *Johnson-Lee*, 729 F. Supp. 3d at 718.

[232] Doc. 45 at App. 97.

[233] *Forsyth v. City of Dall., Tex.*, 91 F.3d 769, 774 (5th Cir. 1996) ("a plaintiff's subjective perception that a demotion has occurred is not enough").

[234] *See, e.g.*, Office Space (Twentieth Century Fox, 1999).

[235] *See, e.g.*, Rudy (TriStar Pictures, 1993).

Independent from the reasoning presented above, the Court additionally finds that advancing inadequate accommodation theories in the disability discrimination framework really doesn't work for two reasons. First, in law, the specific governs the general. Here, the more specific claims for failure to accommodate governs the more general claim for disability discrimination.[236] To hold that these accommodation-based theories of disability discrimination belong in the broader framework of disability discrimination (rather than in the more specific framework of failure-to-accommodate) erodes the difference between the two claims. Second, it doesn't really work in practice because accommodations are given precisely *because* an employee is injured and needs some help in one way or another. By fitting the square pegs (accommodation claims) in a round hole (disability discrimination framework), the plaintiff secures the causation element and avoids the reasonableness inquiry merely by a function of pleading.

Therefore, the Court **GRANTS** summary judgment on the disability discrimination claim.

### E. Hostile Work Environment

A hostile work environment claim exists when all the circumstances indicate that "the workplace is permeated with discriminatory intimidation, ridicule, and

---

[236] *See Sambrano v. United Airlines, Inc.*, 707 F. Supp. 3d 652, 670 (N.D. Tex. 2023), *reconsideration denied*, 347 F.R.D. 155 (N.D. Tex. 2024) (discussing this with retaliation and failure to accommodate claims).

insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[237]

For one's hostile work environment claim to succeed at summary judgment, the plaintiff must show five elements:

> (1) the victim belongs to a protected group; (2) the victim was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action.[238]

"For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive."[239]  To determine objective offense, courts consider "the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance."[240]

The only alleged incidents for which there is supporting sworn testimony that concern race are: (1) Reyna would overhear two employees using the word "wetbacks" when he worked on a machine,[241] (2) "Gudgel laughed when two White employees used racially offensive language to refer to Plaintiff's 'tios and tias' when Plaintiff wanted to bring his family to a company picnic," but did not question White employees

---

[237] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (cleaned up).

[238] *WC&M Enters., Inc.*, 496 F.3d at 399.

[239] *Id.* at 399 (citing *Harris Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)).

[240] *Id. (citing Harris)*.

[241] Doc. 45 at App. 27–28.

about their extended families coming to the company picnic,[242] (3) a whole host of yelling and berating, (4) denied Reyna job opportunities,[243] and (5) one instance where Gudgel "grabbed a one (1) inch strap, proceeded to fold it and grabbed it and swung it around while walking around the rig where [Reyna] was work[ing], three (3) times . . . going back and forth all while looking at [Reyna]. [Reyna believed] he was trying to intimidate, and harass [Reyna]. He only did this on the rig where [Reyna] was located, and no one else."[244]

First, it is not clear that the yelling, berating, and intimidation described under point (3) is because of Reyna's protected characteristic. Reyna never shows that the yelling or berating included racial animus, and his failure to promote claim failed. This cannot serve as a basis for a hostile work environment claim, as Reyna never shows this had anything to do with his race or national origin.

The way the objective analysis works here is this: one extremely severe incident may be enough or very many small incidents can be enough.[245] Here, there is more than one, but less than the many sustained racial slights that the Fifth Circuit has considered enough in the past. For instance, "a continuous pattern of much less severe incidents of harassment" can suffice.[246]

---

[242] Doc. 66 at 31.

[243] Doc. 66 at 32.

[244] Doc. 68 at App. 541.

[245] *Melvin v. Barr Roofing Co.*, 806 F. App'x 301, 309 (5th Cir. 2020).

[246] *WC&M Enters., Inc.*, 496 F.3d at 400.

The Fifth Circuit found conduct pervasive when a plaintiff received unwanted phone calls "ten to fifteen times a night for almost four months."[247] The Fifth Circuit also found conduct pervasive when it occurred "two or three times a week."[248] Because the Court needs to assess frequency to assess harassment, failing to "estimate how many times" objectionable conduct occurred weighs against a finding of hostile work environment.[249] As the Supreme Court has advised, "offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."[250] On the continuum between offhand comments and extremely serious incidents, the incidents here are closer to offhand comments. Indeed the Fifth Circuit found that "two instances of racial graffiti and being called 'boy'" were "insufficient to establish a hostile work environment."[251] In another case, *Frazier v. Sabine River Authority*, regretfully similar to the purported facts in this case, a threat, a co-worker's use of the N-word in the plaintiff's presence, using the word "Negreet," and making a noose gesture, the Fifth Circuit affirmed the district court's holding that the incidents were "isolated and not severe or pervasive enough to support a hostile work environment claim."[252]

At this point, all the Court has to go on is an unknown number of times Reyna heard the term "wetback" while on a machine, an alleged instance where his

---

[247] *Lauderdale v. Tex. Dept. of Crim. Just., Institutional Div.*, 512 F.3d 157, 164 (5th Cir. 2007).

[248] *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996)

[249] *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004).

[250] *Faragher*, 524 U.S. at 788 (cleaned up).

[251] *Collier v. Dall. Cnty. Hosp. Dist.*, 827 F. App'x 373, 377–78 (5th Cir. 2020).

[252] 509 F. App'x 370, 374 (5th Cir. 2013).

supervisor laughed when coworkers allegedly referred to Reyna's "tios and tias," and Reyna's supervisor swinging a strap around near him. Because these events are not great in number, they need to be sufficiently severe give rise to a fact dispute on severity and pervasiveness. Considering the events together, they do not rise to the level of a hostile work environment along the lines of *Frazier*. In total, these events are regretfully nearly identical to those described in *Frazier* and the Court sees no reason to depart from the Fifth Circuit's opinion in that case.

Accordingly, the Court **GRANTS** the motion for summary judgment as to Reyna's hostile work environment claim.

## VI. Motion to Stay

Epiroc filed a motion to stay pending a ruling on the motion for summary judgment. Since the Court rules on that motion in this order, the Court **FINDS AS MOOT** the motion to stay.

## VII. Conclusion

Having considered the parties' briefs and the evidence presented, the Court **GRANTS IN PART** and **DENIES IN PART** the motion for summary judgment, **GRANTS IN PART** and **DENIES IN PART** the motion to strike, **DENIES** the motion to exclude, and **FINDS AS MOOT** the motion to stay.

**IT IS SO ORDERED** this 28th day of January, 2025.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE